UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

ELISA ARROYO,

    Plaintiff,

v.

INTERNATIONAL PAPER COMPANY,

    Defendant.

Case No. 17-cv-06211-BLF

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

[Re: ECF 40]

In this putative class action, Plaintiff Elisa Arroyo ("Arroyo") claims that Defendant International Paper Company ("IPC") violates California laws governing wage statements and reimbursement of necessary business expenses. Specifically, she asserts that when employees work overtime, IPC's wage statements do not accurately reflect the overtime rate of pay or the total hours worked. She also contends that IPC requires its employees to wear uniforms, but improperly charges employees for uniform expenses by deducting $7.50 from each paycheck.

Arroyo moves for class certification, which is opposed by IPC. The motion is GRANTED IN PART AND DENIED IN PART for the reasons discussed below.

**I.   BACKGROUND**

Arroyo was employed by IPC from November 22, 1998 through February 22, 2017. IPC manufactures paper, boxes, bags, and other paper-based materials in twenty-six facilities across California. Arroyo worked at the IPC facility located in Salinas, California, for the entirety of her employment. She performed manual labor, working primarily on a "cascader" machine that coated boxes with hot melted wax.

Arroyo filed this action in the Monterey County Superior Court on September 27, 2017, asserting multiple wage and hour violations against IPC on behalf of a putative class of California employees. *See* Notice of Removal, Exh. A, ECF 1. IPC removed the action to federal district court under the Class Action Fairness Act of 2005 ("CAFA"). *See* Notice of Removal, ECF 1. Arroyo immediately filed a first amended complaint as of right. *See* FAC, ECF 9. After two rounds of motion practice, Arroyo filed the operative third amended complaint ("TAC"), containing four claims for relief. *See* TAC, ECF 38.

Claim 1 of the TAC asserts violations of California Labor Code § 2802, which requires an employer to indemnify employees for all necessary expenditures incurred in the employees' discharge of employment duties. Arroyo alleges that:

> As with all other non-exempt manufacturing employees, Plaintiff purchased uniforms from Defendants consisting of a navy blue coverall. Defendant would deduct monies from the wages of Plaintiff and the Class for these uniforms. This item would appear as a deduction for "Uniform Local" on the wage statement and for Plaintiff, she was charged $7.50 on her wage statements for this item. Plaintiff is informed and believes and based thereon alleges that Defendants would continue to deduct $7.50 from Plaintiff's wages even though the uniforms were paid in full by Plaintiff.

TAC ¶ 29, ECF 38. Arroyo claims that IPC is liable under § 2802 "for imposing business expenses upon Plaintiff and Class Members by continuing to charge for uniforms when said uniforms were fully paid off by Plaintiff and Class Members." *Id*.

Claim 2 is for violations of California Labor Code § 226, which governs the contents of wage statements. Arroyo asserts that IPC's wage statements did not accurately reflect the number of hours worked and the applicable hourly rates as required under § 226. Specifically, Arroyo alleges that "when Defendant paid Plaintiff and other employees overtime, Defendant listed the incorrect overtime rate of 1/2 of the regular rate of pay," when "[i]nstead, the overtime rate should have been listed at the correct overtime rate of 1.5x the regular rate." TAC ¶ 34. Arroyo also alleges that IPC violated § 226 "by double-counting the overtime and regular hours worked, resulting in an incorrect listing of total hours worked." *Id*. The record reflects that IPC used several timekeeping systems to create wage statements in California during the proposed class period, including Workbrain, Kronos, Harry Rhodes, and SAP CATS. *See* Scharff Dep. 24:6-11,

Lee Decl. Exh. C, ECF 40-1. Only the Workbrain system was used at IPC's Salinas facility, where Arroyo worked. *Id*. 56:6-14.

Claims 3 and 4, brought under California's Private Attorney General Act ("PAGA"), Cal. Lab. Code § 2698, and California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, respectively, are based on the alleged wage and hour violations set forth in Claims 1 and 2.

Arroyo now seeks an order certifying the following classes:

a. All non-exempt manufacturing employees who were employed by Defendants in the State of California at any time from September 27, 2013, through the present, and who paid for uniform expenses (the "Expense Reimbursement Class");

b. All non-exempt employees who were employed by Defendants in the State of California and who were paid overtime wages at any time from January 27, 2017, through the present (the "Wage Statement Class"); and

c. All non-exempt employees who were employed by Defendants in the State of California and who were provided wage statements containing payment for overtime wages and were created from data from the Workbrain system at any time from January 27, 2017, through the present (the "Workbrain Wage Statement Sub-Class").

Pl.'s Motion for Class Cert. at 3, ECF 40.

## II. LEGAL STANDARD

A class action is maintainable only if it meets the four threshold requirements of Rule 23(a): (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a); *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 613 (1997).

"In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem*, 521 U.S. at 614. Kang seeks certification under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members," and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

"A party seeking class certification must affirmatively demonstrate his compliance with

3

1  the Rule – that is, he must be prepared to prove that there are in fact sufficiently numerous parties,
2  common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

**III. DISCUSSION**

    **A.    Rule 23(a)**

        **1.    Numerosity**

Rule 23(a)(1) requires that the size of the proposed class be "so numerous that joinder of all the class members is impracticable." Fed. R. Civ. P. 23(a)(1). "No exact numerical cut-off is required; rather, the specific facts of each case must be considered." *Litty v. Merrill Lynch & Co.*, No. CV 14-0425 PA (PJWx), 2015 WL 4698475, at *3 (C.D. Cal. Apr. 27, 2015). "[N]umerosity is presumed where the plaintiff class contains forty or more members." *Id.* However, a class as small as twenty properly may be certified when the other Rule 23 factors are satisfied. *See Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010) (affirming district court's certification of 20-member class).

With respect to the Expense Reimbursement Class, Arroyo submits IPC's response to Interrogatory No. 5, stating that from September 27, 2013 through the present, approximately 500 non-exempt manufacturing employees in California had wage statements showing a deduction for "Uniform Local." *See* Lee Decl. Exh B, ECF 40-1.

With respect to the Wage Statement Class, Arroyo submits IPC's response to Interrogatory No. 4, in which IPC stated that approximately 2,475 non-exempt manufacturing employees in California were paid overtime wages from September 27, 2016 through the present. *See* Lee Decl. Exh B, ECF 40-1. That evidence is not precisely on point, as the proposed class period for the wage statement claim is *January 27, 2017* through the present. However, the Court reasonably may infer from IPC's response that hundreds of non-exempt manufacturing employees in California were paid overtime wages during the proposed class period.

Finally, with respect to the Workbrain Wage Statement Subclass, Arroyo submits that the testimony of IPC's Rule 30(b)(6) witness, Jan Scharff, that all hourly employees at IPC's Salinas facility were paid through the Workbrain system. *See* Scharff Dep. 56:6-14, Lee Decl. Exh. C, ECF 40-1. Arroyo states in her declaration that at least twenty hourly employees who worked at

the Salinas facility also worked overtime. Arroyo Decl. ¶ 2, ECF 40-2. Accordingly, the proposed Workbrain subclass would contain at least twenty employees, and likely more if Workbrain was used at any of IPC's other facilities.

The Court concludes that the numerosity requirement is satisfied for all three proposed classes. IPC does not challenge Arroyo's showing on numerosity.

### 2. Commonality

"The requirement of 'commonality' means that the class members' claims 'must depend upon a common contention' and that the 'common contention, moreover, must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1153 (9th Cir. 2016) (quoting *Dukes*, 564 U.S. at 350).

#### a. Claim 1 – Business Expenses

Claim 1 is asserted under California Labor Code § 2802, which provides in relevant part that "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties" Cal. Lab. Code § 2802(a). In her briefing on the class certification motion, Arroyo also cites to Wage Order 1-2001(9)(A), providing that "[w]hen uniforms are required by the employer to be worn by the employee as a condition of employment, such uniforms shall be provided and maintained by the employer." 8 Cal. Code Regs. § 11010(9)(A).

As set forth above, in Claim 1 of the operative TAC Arroyo alleges that IPC violated California Labor Code § 2802 by selling uniforms to employees via a wage deduction of $7.50 per paycheck, and continuing to deduct the $7.50 even once the purchase price of the uniform had been paid in full. *See* TAC ¶ 29, ECF 38. Arroyo alleges that "Defendant had a uniform corporate pattern and practice and procedure regarding the above practices in violation of Labor Code § 2802." *Id*. ¶ 30. She requests certification of "[a]ll non-exempt manufacturing employees who were employed by Defendants in the State of California at any time from September 27, 2013, through the present, and who paid for uniform expenses (the "Expense Reimbursement

Class").

Based on the above, the Court understands Arroyo to be asserting that IPC: requires employees to wear a uniform; requires employees to pay for the uniform by means of a $7.50 paycheck deduction in violation of California Labor Code § 2802(a) and Wage Order 1-2001(9)(A); and continues deducting $7.50 from employees' paychecks even after the cost of the uniform has been paid in full.

It appears from the record before the Court that Arroyo's allegations regarding IPC's uniform requirements and the purpose of the $7.50 deduction are entirely inaccurate. IPC offers the declaration of Derrick Bates, its Regional Human Resources Manager for the Northern Region of California. *See* Bates Decl. ¶ 2, Def.'s Compendium Exh. 9, ECF 42-2. Bates explains that IPC does *not* sell uniforms to its employees as alleged in the TAC, but rather it pays a third-party rental service to provide, launder, and maintain uniforms for workplace use. *See* Bates Decl. ¶¶ 13-14. Moreover, not all employees are required to wear uniforms, as suggested by Arroyo. *Id*. ¶ 6. The policies as to which employees must wear uniforms differ from facility to facility, and depend in part on the employee's job position. *Id*. ¶¶ 6-7, 12-13. Bates states that when IPC does require an employee to wear a uniform, IPC pays for the cost of the uniform and maintenance. *Id*. ¶ 13. Employees who are not required to wear a uniform may work in their street clothes, or may voluntarily rent a uniform from the third-party vendor and have that cost deducted from their paychecks. *Id*. ¶¶ 6, 13-14. Voluntary rental, and the corresponding deduction of the rental cost from the employee's paycheck, may be canceled at any time. *Id*. ¶ 14. Bates' declaration is bolstered by the declarations of numerous IPC employees, some stating that they are required to wear uniforms and IPC pays for them, some stating that they are not required to wear uniforms but voluntarily rent uniforms from the third-party vendor via paycheck deduction, and some stating that they wear their street clothes. *See* Def.'s Compendium Exhs. 11-64.

If IPC's version of events is accurate, then Arroyo's § 2802 claim simply makes no sense. Arroyo does not suggest that § 2802 is violated when an employee voluntarily decides to rent a uniform which is not required as a condition of employment. Nor does she address in any meaningful way IPC's substantial evidence that IPC pays for uniforms when they are required,

6

and that the $7.50 deduction reflects only voluntary uniform rental costs.

Arroyo argues in her reply brief that "[t]his Court can easily adjudicate whether Defendant's uniform deduction is mandatory." Pl.'s Reply at 17, ECF 43. The Court is not quite sure what Arroyo means by this statement. The issue raised by Arroyo's § 2802 claim is whether IPC violated its obligation to indemnify employees for costs of required uniforms. Arroyo has not presented any evidence suggesting that issue can be adjudicated on a classwide basis. To the contrary, for *each* individual who falls within the proposed class definition – "[a]ll non-exempt manufacturing employees who were employed by Defendants in the State of California at any time from September 27, 2013, through the present, and who paid for uniform expenses" – the trier of fact would have to determine (a) whether a uniform was required and (b) whether IPC improperly charged the employee for uniform expenses via the $7.50 deduction. Those determinations would require an individualized factual inquiry, because the policies regarding uniforms varied by facility and by the employee's particular job duties. It is not even clear whether Arroyo herself was required to wear a uniform. She did not state as much in her declaration, and at her deposition she testified that she understood that she could wear street clothes to work if she wanted to, and that she saw other manufacturing employees work in street clothes. Arroyo Decl., ECF 40-2; Arroyo Dep. 23:5-10, Def.'s Compendium Exh. 7, ECF 42-2.

Accordingly, the Court concludes that Arroyo has not satisfied the commonality requirement as to Claim 1.

### b. Claim 2 – Wage Statements

Claim 2 is asserted under California Labor Code § 226, which provides in relevant part that: "An employer, semimonthly or at the time of each payment of wages, shall furnish to his or her employee, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately if wages are paid by personal check or cash, an accurate itemized statement in writing showing . . . (2) total hours worked by the employee, . . . and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee." Cal. Lab. Code § 226(a). "An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to

recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees." Cal. Lab. Code § 226(e).

In Claim 2, Arroyo asserts that IPC's wage statements listed the overtime rate as .5, rather than 1.5, times the regular rate of pay. *See* TAC ¶ 34. She also asserts that IPC's wage statements double-counted the overtime hours worked, resulting in an incorrect listing of the total hours worked. *Id*. Arroyo relies on exemplars of wage statements generated by the Workbrain system, the system used at the Salinas facility where she worked. The relevant portion of such a statement reads as follows:

| EARNINGS | RATE | HRS. CURR | CURR |
|---|---|---|---|
| Regular Hours | 20.3700 | 48.41 | 986.16 |
| Overtime Premium | 10.1850 | 0.53 | 5.41 |
| Holiday | 20.3700 | 8.00 | 162.96 |
| Paid Sick Hrs Taken-Hrly | 0.0000 | 0.00 | 0.00 |
| LumpSumPay-NonGrUpNonPen | 0.0000 | 0.00 | 0.00 |
| TOTAL | | | 1,154.53 |

Scharff Dep. Exh. 2, Lee Decl. Exh. C, ECF 40-1. The exemplar does list an "Overtime Premium" rate of .5 of the regular rate, and it does list overtime hours worked in both the Regular Hours row and the Overtime Premium row. Arguably, the inclusion of the overtime hours in both rows makes it unclear how many total hours the employee worked. It appears that all of the Workbrain wage statements list the overtime rate and hours worked in this manner.

IPC argues that its Workbrain wage statements comply with § 226(a), because it is clear that the "Overtime Premium" is .5 *above* the regular hourly rate. IPC argues that multiplying the total hours worked (including overtime) by the regular rate, then multiplying the overtime hours worked by the .5 rate, results in an accurate total for pay earned. IPC contends that Arroyo's preference for the calculation to be done a different way – multiplying the regular hours worked by the regular rate, then multiplying the overtime hours worked by a 1.5 rate – does not establish a violation of § 226(a). Moreover, IPC argues, Arroyo cannot establish an injury flowing from the Workbrain wage statements as required under § 226(e), because simple arithmetic allows the

8

employee to ascertain all of the information required under § 226(a). *See Raines v. Coastal Pac. Food Distributors, Inc.*, 23 Cal. App. 5th 667, 676 (2018) ("[W]here the deficiency in the wage statement could be corrected by 'simple math,' there is no actual injury.").

While IPC may well be correct that the Workbrain wage statements comply with § 226(a), that is a merits question. The Court's task at the class certification stage is to determine whether Arroyo has presented a claim which is dependent on a common contention which is capable of classwide resolution *See Dukes*, 564 U.S. at 350. Arroyo has done so, at least with respect to her § 226 claim based on the Workbrain wage statements. Because all wage statements generated by the Workbrain system listed the "Overtime Premium" as .5, and included overtime hours in both the "Regular Hours" and "Overtime Premium" hours, it may be determined on a classwide basis whether those practices did or did not comply with § 226(a). If IPC is correct that the Workbrain wage statements are compliant with § 226(a) as a matter of law, IPC may bring an appropriate summary judgment motion. *See McKenzie v. Fed. Exp. Corp.,* 765 F. Supp. 2d 1222, 1229 (C.D. Cal. 2011) (adjudicating § 226(a) claim on cross-motions for summary judgment). If IPC were to prevail on such a motion, it would obtain final adjudication of the § 226 claim on a classwide basis. Accordingly, the Court concludes that Arroyo has satisfied the commonality requirement with respect to her § 226 claim based on the Workbrain wage statements.

However, it appears that the alleged inaccuracies Arroyo describes in her § 226 claim are limited to the Workbrain wage statements. IPC has submitted exemplars of wage statements generated by the Kronos and Harry Rhodes systems, which list the overtime rate as 1.5 of the regular rate, and list how many hours were worked at each rate. *See* Def.'s Compendium Exh. 64. The SAP CATS system is a manual entry system, and Arroyo does not assert any common practice of misstating the overtime rate or total hours worked with respect to the SAP CATS system. *See* Sharff Dep. 24:25-25:2; 54:8-15, Def.'s Compendium Exh. 8, ECF 42-2. Consequently, the issues presented by the Workbrain wage statements are not common to any issues presented by the wage statements generated by the other systems.

Arroyo objects to IPC's submission of evidence regarding wage statements generated by the Kronos, Harry Rhodes, and SAP CATS systems. Arroyo's objections to IPC's evidence

regarding the other systems were presented both in the body of her reply brief and in a separate document titled "Objections to Defendant's Evidence." *See* ECF 43. The Court STRIKES Arroyo's separate Objections, as non-compliant with the Court's Civil Local Rules. *See* Civ. L.R. 7-3(c)("Any evidentiary and procedural objections to the opposition must be contained within the reply brief or memorandum."). The Court has considered Arroyo's objections set forth in the reply brief, and OVERRULES them. Arroyo submits the supplemental declaration of her counsel, who states that IPC never produced wage statements generated by the Kronos or Harry Rhodes systems prior to filing its opposition to the class certification motion. Suppl. Lee Decl. ¶ 4, ECF 43-1. However, counsel's declaration does not establish that the wage statements were responsive to discovery requests propounded by Arroyo. Counsel asserts that Arroyo sought "Defendant's wage statement policies and practices," but he does not indicate that Arroyo sought exemplars of the wage statements themselves. *Id.* ¶ 3. IPC's Rule 30(b)(6) witness, Jan Scharff, testified regarding all of the systems used by IPC at her deposition on January 7, 2019. *See* Scharff Dep. 24:6-11, Lee Decl. Exh. C, ECF 40-1. If Arroyo felt that IPC was hiding the ball, she could have sought recourse from the magistrate judge assigned to the case and/or requested a continuance of the class certification motion. Moreover, Arroyo had an obligation to investigate the contents of wage statements generated by the Kronos, Harry Rhodes, and SAP CATS systems *before* seeking class certification of claims based on those wages statements' alleged violation of § 226.

In summary, the Court finds the commonality requirement to be met only with respect to the Workbrain wage statements.

### C. Claims 3 and 4

Arroyo's remaining claims are asserted under PAGA (Claim 3) and the UCL (Claim 4). The PAGA claim is not subject to Rule 23 requirements for class certification. *See Baumann v. Chase Inv. Servs. Corp.*, 747 F.3d 1117, 1122 (9th Cir. 2014) ("In a PAGA action, the court does not inquire into the named plaintiff's and class counsel's ability to fairly and adequately represent unnamed employees—critical requirements in federal class actions under Rules 23(a)(4) and (g)."). The UCL claim is derivative of Claims 1 and 2 and thus, to the extent that Claim 2 satisfies the commonality requirement, so too does Claim 4. *See DeLuca v. Farmers Ins. Exch.*, No. 17-

CV-00034-EDL, 2018 WL 1981393, at *11 (N.D. Cal. Feb. 27, 2018) ("Because the Court has concluded that the overtime claims meet the commonality and predominance requirements of Rule 23, the derivative state law claims meet these requirements as well.").

### 3. Typicality

Rule 23(a)(3) requires that "the [legal] claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendants' liability." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (internal quotation marks and citation omitted). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1030 (9th Cir. 2012) (internal quotation marks and citation omitted). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). Class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation. *See Hanon v. Dataprods. Corp.*, 976 F.2d 497, 509 (9th Cir. 1992).

The Court concludes that Arroyo has satisfied the typicality requirement with respect to Claims 2 and 4, to the extent based on wages statements generated through Workbrain. Arroyo's contention that those wage statements violate § 226(a) is typical of the claims of all potential class members.

### 4. Adequacy

To determine Arroyo's adequacy as a class representative, the Court "must resolve two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (internal quotation marks and citation omitted). The record discloses no conflict of interest which

11

would preclude Arroyo from acting as class representative with respect to Claim 2, as limited to Workbrain, and Class Counsel are able attorneys who have litigated this action vigorously on behalf of the class.

Arroyo satisfies the adequacy requirement with respect to Claims 2 and 4, to the extent based on wage statements generated through Workbrain.

### B. Rule 23(b)(3)

Arroyo seeks certification under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members," and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. For the same reasons discussed above under the Rule 23(a) commonality requirement, Arroyo's claims based on the wage statements generated by Workbrain satisfy this requirement.

## IV. ORDER

The motion for class certification is GRANTED IN PART AND DENIED IN PART, as set forth herein. Class certification is GRANTED as to Claims 2 and 4, to the extent those claims are based on wage statements generated by the Workbrain system, and otherwise is DENIED.

Accordingly, the following class is certified:

> All non-exempt employees who were employed by International Paper Company, a New York corporation, in the State of California and who were provided wage statements containing payment for overtime wages which were created from data from the Workbrain system at any time from January 27, 2017, through the present.

Dated: April 4, 2019

BETH LABSON FREEMAN
United States District Judge