Danielle Hultenius Moore (CA SBN 232480)
dmoore@fisherphillps.com
Aaron F. Olsen (CA SBN 224947)
aolsen@fisherphillips.com
Megan E. Walker (CA SBN 299834)
mewalker@fisherphillips.com
**FISHER & PHILLIPS LLP**
4747 Executive Drive, Suite 1000
San Diego, California  92121
Telephone: (858) 597-9616
Facsimile: (858) 597-9601

Attorneys for Defendant,
International Paper Company

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION**

| | |
|---|---|
| ELISA ARROYO, as an individual and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br>    v.<br><br>INTERNATIONAL PAPER COMPANY, a New York corporation; and DOES 1 through 50, inclusive,<br><br>          Defendants. | Case No.: 5:17-cv-06211-BLF<br><br>*[Removed from Monterey County Superior Court, before the Honorable Susan J. Matcham, Department 15]*<br><br>**DEFENDANT INTERNATIONAL PAPER COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT PURSUANT TO FRCP 56; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:     November 7, 2019<br>Time:    9:00 a.m.<br>Ctrm:   3<br><br>Complaint Filed:  September 27, 2017<br>Action Removed:  October 27, 2017<br>Trial Date:  November 29, 2021 |

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................6

II.     PROCEDURAL BACKGROUND.......................................................................8

III.    SUMMARY OF UNDISPUTED FACTS ............................................................9

    A.      Plaintiff Is a Former Employee of International Paper .........................9
    B.      Plaintiff's Wage Statements Display the Total Hours Worked and Applicable Hourly Wage Rates ................................................................9
    C.      IP's Payroll Compliance Team Consulted Labor Code Section 226 and Payroll Treatises to Ensure Legal Compliance.....................................10
    D.      The Class Members Understood Their Wage Statements ...................11
    E.      Plaintiff Authorized a Uniform Maintenance Deduction.....................11

IV.     LEGAL STANDARD............................................................................................12

V.      PLAINTIFF'S CLASS CLAIM FOR VIOLATIONS OF LABOR CODE SECTION 226 FAILS AS A MATTER OF LAW .........................................12

    A.      IP's Wage Statements Showed How Many Hours an Employee Worked and the Applicable Hourly Rates ............................................13
        1.      The wage statements "show" the total hours worked. ...........................15
        2.      The wage statements reflect the correct overtime premium rate. ..........17
    B.      Plaintiff and the Class Are Not Entitled to Penalties Under Labor Code Section 226 Because a Good Faith Dispute Exists as to Whether the Wage Statements Meet the Statutory Requirements................................20
    C.      Plaintiff and the Class Did Not Suffer Any Injury Under Section 226 .............21

VI.     PLAINTIFF'S FIRST CAUSE OF ACTION FOR EXPENSE REIMBURSEMENT FAILS AS A MATTER OF LAW ...............................23

VII.    PLAINTIFF'S UNFAIR COMPETITION CLAIM IS IMPROPER............................24

    A.      Plaintiff's Unfair Competition Claim Fails Because It Is Derivative ................24
    B.      The Class Cannot Recover Section 226 Penalties Under the UCL ...................25

VIII.   PLAINTIFF'S PAGA CLAIM FAILS. ...............................................................26

    A.      Plaintiff's PAGA Claim Fails Because It Is a Derivative Claim........................26
    B.      There Is No Evidence of a Defined Group of Aggrieved Employees ...............26
    C.      A Reimbursement PAGA "Class" Does Not Exist and Would Be Unmanageable.................................................................................................27

IX.     CONCLUSION.....................................................................................................29

MEMO OF P. & A. ISO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Amiri v. Cox Commc'ns California, LLC*,
   272 F. Supp. 3d 1187 (C.D. Cal. 2017) ............................................................. 28

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)............................................................................................ 12

*Apodaca v. Costco Wholesale Corp.*,
   675 Fed.App'x 663 (9th Cir. 2017) .................................................................... 14

*Boyd v. Bank of Am. Corp.*,
   109 F. Supp. 3d 1273 (C.D. Cal. 2015) ............................................................. 20

*Campbell v. PricewaterhouseCoopers*,
   No. CIV S-06-2376,
   2008 WL 3836972 (E.D. Cal. Aug. 14, 2008) ................................................... 25

*Guerrero v. Halliburton Energy Servs., Inc.*,
   231 F. Supp. 3d 797 (E.D. Cal. 2017)................................................................. 25

*Gunawan v. Howroyd-Wright Employment Agency*,
   997 F. Supp. 2d 1058 (C.D. Cal. 2014) ............................................................. 25

*Hernandez v. BCI Coca-Cola Bottling Co.*,
   No. CV 11-9484 SVW SSX,
   2012 WL 12272348 (C.D. Cal. Apr. 12, 2012),
   *aff'd*, 554 F. App'x 661 (9th Cir. 2014)............................................................. 19

*Hoffman v. Constr. Protective Servs., Inc.*,
   293 F. App'x 462 (9th Cir. 2008) ....................................................................... 20

*Johnson v. Hewlett-Packard Co.*,
   809 F. Supp. 2d 1114 (N.D. Cal. 2011),
   *aff'd*, 546 F. App'x 613 (9th Cir. 2013)............................................................. 26

*Loud v. Eden Med. Ctr.*,
   2013 WL 4605856 (N.D. Cal. Aug. 28, 2013) ................................................... 22

*McKenzie v. Fed. Exp. Corp.*,
   765 F. Supp. 2d 1222 (C.D. Cal. 2011) ................................................. 15, 16, 19

*Milligan v. Am. Airlines, Inc.*,
   577 F. App'x 718 (9th Cir. 2014) ....................................................................... 22

*Novak v. Boeing Co.*,
   No. SACV 09-01011, 2011 WL 9160940 (C.D. Cal. July 20, 2011) .................. 23

*Ortiz v. CVS Caremark Corp.*,
   No. C-12-05859, 2014 WL 1117614 (N.D. Cal. March, 18, 2014)...................... 28

*Salazar v. McDonald's Corp.,*
　　No. 14-CV-02096, 2017 WL 88999 (N.D. Cal. Jan. 5, 2017) ............................................. 28

*Sanders v. Old Dominion Freight Line, Inc.,*
　　No. CV 18-688, 2018 WL 6321631 (C.D. Cal. Sept. 13, 2018) ......................................... 25

*Tomco v. Prada USA Corp.,*
　　484 F. App'x 99 (9th Cir. 2012) ....................................................................................... 26

*Utne v. Home Depot U.S.A., Inc.,*
　　No. 16-CV-01854-RS, 2019 WL 3037514 (N.D. Cal. July 11, 2019) ............................... 21

*Watterson v. Garfield Beach CVS LLC,*
　　120 F. Supp. 3d 1003 (N.D. Cal. 2015),
　　*aff'd*, 694 F. App'x 596 (9th Cir. 2017) ............................................................................ 23

**State Cases**

*Aleksick v. 7-Eleven, Inc.,*
　　205 Cal.App.4th 1176 (2012) ........................................................................................... 25

*Amaral v. Cintas Corp. No. 2,*
　　163 Cal. App. 4th 1157 (2008) .................................................................................... 20, 21

*Canales v. Wells Fargo Bank, N.A.,*
　　23 Cal.App.5th 1262 (2018) .............................................................................................. 14

*Cassady v. Morgan, Lewis & Bockius LLP,*
　　145 Cal.App.4th 220 (2006) .............................................................................................. 23

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,*
　　20 Cal.4th 163 (1999) ....................................................................................................... 25

*Gattuso v. Harte-Hanks Shoppers, Inc.,*
　　42 Cal.4th 554 (2007) ....................................................................................................... 13

*Maldonado v. Epsilon Plastics, Inc.,*
　　22 Cal.App.5th 1308 (2018) ........................................................................................ 19, 22

*Morgan v. United Retail, Inc.,*
　　186 Cal.App.4th 1136 (2010) ....................................................................... 14, 15, 16, 19

*Noe v. Superior Court,*
　　237 Cal.App.4th 316 (2015) ............................................................................................. 25

*Pineda v. Bank of Am., N.A.,*
　　50 Cal.4th 1389 (2010) ..................................................................................................... 25

*Prakashpalan v. Engstrom, Lipscomb & Lack,*
　　223 Cal.App.4th 1105 (2014), *as modified on denial of reh'g* (Feb. 27, 2014) ................. 25

*Raines v. Coastal Pac. Food Distributors, Inc.,*
　　23 Cal.App.5th 667 (2018) ............................................................................................... 21

MEMO OF P. & A. ISO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

*Savea v. YRC Inc.*,
  34 Cal.App.5th 173 (2019) ........................................................................ 14

*Soto v. Motel 6 Operating, L.P.*,
  4 Cal.App.5th 385 (2016) ........................................................... 13, 17, 20

*USS-POSCO Indus. v. Case*,
  244 Cal.App.4th 197 (2016) ...................................................................... 23

**State Statutes**

California Business and Professions Code § 17200, *et seq.* (California's Unfair
  Competition Law) ....................................................................... 7, 8, 25, 26

California Code of Regulations, Title 8 § 13520 ...................................... 20

California Labor Code § 203 ...................................................................... 25

California Labor Code § 212 ...................................................................... 25

California Labor Code § 213 ...................................................................... 25

California Labor Code § 221 ...................................................................... 25

California Labor Code § 223 ...................................................................... 25

California Labor Code § 226 .................................................................. *passim*

California Labor Code § 2698 ...................................................................... 8

California Labor Code § 2699(a) ............................................................... 26

California Labor Code § 2802 ............................................... 8, 23, 24, 27, 28

California Private Attorneys General Act ............................. 7, 8, 26, 27, 28, 29

**Rules**

Federal Rule of Civil Procedure, Rule 56(a) ............................................ 12

CASE NO. 5:17-CV-06211-BLF
MEMO OF P. & A. ISO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## NOTICE

Please take notice that on November 7, 2019 at 9:00 a.m. in the San Jose Division of the Northern District of California before the Honorable Beth L. Freeman, Defendant International Paper Company ("Defendant" or "IP") will and hereby does move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Defendant makes the present Motion pursuant to Rule 56 on the grounds that the material facts are undisputed, and each and every cause of action fails as a matter of law.

This Motion will be based upon this Notice of Motion; Defendant's Memorandum of Points and Authorities; Defendant's Request for Judicial Notice; the Compendium of Evidence and all exhibits thereto filed concurrently herewith; all pleadings on file in this action; and upon such other matter as may be presented to the Court at the time of the hearing.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

The sole class claim in this case is whether Defendant's wage statements comply with Labor Code § 226. This claim fails for numerous reasons. For the Class to prevail in this lawsuit, this court would first have to interpret Labor Code section 226 to require more than has ever been required by the California courts, then find that this violation was a knowing and intentional violation by IP, and then find class members suffered a harm. Plaintiff fails on all three prongs. Nothing in the California statute, wage orders, or administrative guidance require the level of specificity Plaintiff is asking this Court to require. Indeed, the undisputed evidence shows that IP retained experienced professionals, led by their internal payroll consultant (Jan Scharff), who carefully examined the requirements of Labor Code section 226 to ensure that IP was in compliance. Through this thorough review (which occurred over eight years ago), Ms. Scharff checked off each of the requirements in section 226, one by one, to confirm that they were met. Upon confirming that each requirement was met, Ms. Scharff kept up to date with California's payroll requirements through discussions with the company's payroll servicer, membership in the American Payroll Association (APA), and references to topical treatises, including the APA's Guide to State Payroll Laws.

There was nothing in the law, the guidance, or the major payroll resources that would lead Ms. Scharff or her colleagues who ensured IP's payroll compliance to believe that there was any issue at all.  Thus, even if the Court were to conclude that it is somehow improper to list the overtime premium as the extra one-half rate on top of the regular rate for regular hours worked as Plaintiff requests, Plaintiff cannot show a knowing and intentional violation.  IP has a good faith basis for believing that it has complied with Labor Code section 226.  What's more, there can be no presumption of injury on this type of section 226 claim because none of the data an employee would need to determine her pay is missing from Plaintiff's wage statements. Accordingly, the Class claim for failure to comply with Labor Code section 226 and the derivative class claim under California's Unfair Competition Law fail as a matter of law.

Additionally, Plaintiff's individual claim for a failure to reimburse business expenses fails as a matter of law because she was not required to incur the expense she seeks reimbursement for.  To the extent she maintains an individual Unfair Competition claim derivative of this cause of action, it also fails.  Similarly, her claim under the California Private Attorneys General Act (PAGA) fails as a matter of law, both because it is derivative of her other claims, which fail, and because a PAGA "class" would not be manageable.

In sum, each cause of action fails as a matter of law.  Specifically,

- Plaintiff's First Cause of Action for Failure to Reimburse Required Business Expenses (Individual) fails as a matter of law because:
  - Plaintiff was not required to incur the uniform expenses because she was not required to wear a uniform.
- Plaintiff's Second Cause of Action for Wage Statement Violations (Class) fails as a matter of law because:
  - The wage statements include the required information under California Labor Code Section 226(a), including the total hours worked and the applicable hourly rates with the corresponding hours at each rate;

///

///

- **Alternatively**, IP did not knowingly and intentionally fail to comply with section 226 because there is a good faith dispute that the wage statements comply with section 226; and/or

- **Alternatively**, Plaintiff and the class were not harmed by any purported violation of Labor Code section 226.

- Plaintiff's Third Cause of Action for penalties under the Private Attorneys General Act (PAGA) fails as a matter of law because:

  - It is derivative of her first two causes of action, which also fail; and/or

  - **Alternatively**, a representative PAGA Group would not be manageable.

- Plaintiff's Fourth Cause of Action for Unfair Competition (Class and Individual) fails as a matter of law because:

  - It is derivative of her first two causes of action, which also fail; and/or

  - **Alternatively as to the Class Claims**, the Class cannot recover section 226 penalties as restitution.

Accordingly, Defendant respectfully requests the Court grant its Motion for Summary Judgment on each and every cause of action in Plaintiff's Third Amended Complaint.

## II.    PROCEDURAL BACKGROUND

Plaintiff filed her Third Amended Complaint (the operative complaint) on October 23, 2018, alleging four causes of action (1) violation of California Labor Code § 2802 (failure to reimburse); (2) violation of California Labor Code § 226(a) (wage statement violations); (3) violation of California Labor Code § 2698, *et seq.* ("PAGA"); and (4) violation of California Business and Professions Code § 17200, *et seq*. ("UCL").  (Third Am. Compl. ("TAC"), ECF No. 38.)  On January 10, 2019, Plaintiff filed a Motion for Class Certification.  (Mot. Class Cert., ECF No. 40.)  On April 4, 2019, the Court granted Plaintiff's Motion for Class Certification in part—only as to Plaintiff's second and fourth causes of action, and only "to the extent those claims are based on wage statements generated by the Workbrain system," denying class certification otherwise.  (Order re Class Cert., ECF No. 48.)

/ / /

### III.   SUMMARY OF UNDISPUTED FACTS

#### A.   Plaintiff Is a Former Employee of International Paper

During the applicable period, IP has owned 26 facilities across California that each manufacture either paper, boxes, bags, or other paper-based materials. (Compendium of Evidence ("COE") Ex. 11, Declaration of Derrick Bates ("Bates Decl.") ¶¶ 4, 6.) The various IP facilities were previously owned by a number of different companies, with different policies, practices, and cultures. (*Id.* ¶ 4.) As a result, different facilities utilize different time-keeping systems, depending on when they were acquired and which time clocks the facilities already used at the time of their acquisitions. (*Id.* ¶¶ 3–4.)

Plaintiff worked at the IP facility in Salinas, California from November 1998 to February 2017. (Pl. Decl. ¶ 2, ECF No. 40-2.)  When she first started working at the facility, it was owned and operated by Weyerhaeuser.  (COE Ex. 8, Pl. Tr. 22:3–7; COE Ex. 11, Bates Decl. ¶ 8.)  In 2008, IP took over ownership of the Salinas facility and all other Weyerhaeuser packaging facilities in North America.  (COE Ex. 8, Pl. Tr. 22:8–13; COE Ex. 11, Bates Decl. ¶ 8.)  During the class period, Plaintiff worked on two different machines: one called a cascader and another called a unitizer. (COE Ex. 8, Pl. Tr. 18:16–19:3.) She has not worked at any other IP facility. (COE Ex. 8 Pl. Tr. 15:19–16:3.)

#### B.   Plaintiff's Wage Statements Display the Total Hours Worked and Applicable Hourly Wage Rates

Plaintiff and the Class work or worked at facilities in California that use the Workbrain time system.  (Order re Class Cert. 12:20–23, ECF No. 48.)  Below is an exemplar of the relevant portions of Plaintiff's wage statement:

| EARNINGS | RATE | HRS. CURR | CURR | YTD |
|---|---|---|---|---|
| Regular Hours | 20.3700 | 64.70 | 1,318.01 | 4,149.77 |
| Overtime Premium | 10.1850 | 0.75 | 7.64 | 8.68 |
| Holiday | 20.3700 | 8.00 | 162.96 | 162.96 |
| Paid Sick Hrs Taken-Hrly | 20.8700 | 8.00 | 166.96 | 500.88 |
| LumpSumPay-NonGrUpNonPen | 0.0000 | 0.00 | 0.00 | 744.00 |
| TOTAL | | | 1,655.57 | 5,566.29 |

(COE Ex. 8, Pl. Dep. Ex. 1; COE Ex. 7, Olsen Decl. ¶ 2.) This wage statement shows that Plaintiff worked 64.7 hours in the pay period; her regular rate of pay was $20.37/hr.; and, of the 64.7 hours Plaintiff worked in the pay period, 0.75 were overtime hours. So, the wage statement shows Plaintiff received an additional overtime premium at the rate of $10.185/hr. for 0.75 hours.  (*Id.*)

### C.   IP's Payroll Compliance Team Consulted Labor Code Section 226 and Payroll Treatises to Ensure Legal Compliance

For over a decade until her retirement in late 2018, Ms. Scharff worked in various roles related to payroll out of IP's corporate office in Memphis, Tennessee.  (COE Ex. 9, Declaration of Jan Scharff ("Scharff Decl.") ¶¶ 2, 3.)  As part of her role, she kept track of national wage statement requirements by subscribing to trade journals, following updates from the American Payroll Association, and referencing the APA's source book.  (COE Ex. 9, Scharff Decl. ¶ 4.)

In 2011, Ms. Scharff participated in a complete audit of California's wage statements.  (COE Ex. 9, Scharff Decl. ¶¶ 7–11.)  She reviewed all of the wage statement requirements in Labor Code sections 212 and 226, pulling samples from various facilities (including facilities that use the Workbrain timekeeping system).  (COE Ex. 9, Scharff Decl. ¶ 7–8.)  Upon her review, Ms. Scharff took handwritten notes wherein she checked off compliance with each subsection of Labor Code section 226(a), with two exceptions: (1) the piece rate requirement (which did not apply), and (2) the pay period dates requirement, which she circled because it was missing.  (COE Ex. 9, Scharff Decl. ¶¶ 8–11; COE Ex. 10, Scharff Notes.)  Ms. Scharff raised this issue and helped to see that it was corrected.  (COE Ex. 9, Scharff Decl. ¶ 8.)

During the audit and thereafter, Ms. Scharff worked with IP's payroll servicer to see that IP complied with California law.  In fact, before returning to IP in 2007, Ms. Scharff had worked for IP's outside service provider.  (COE Ex. 9, Scharff Decl. ¶ 2.)  At no point did anyone inform Ms. Scharff or others at IP that there was only one way to comply with section 226.  (COE Ex. 9, Scharff Decl. ¶ 12–13.)  IP's payroll servicer never raised any red flags about the issues raised by the Class here, nor did the APA source book contain specific instructions that California requires overtime to only be presented as 1.5 times the employee's hourly rate on the wage statement.  (COE Ex. 9, Scharff Decl. ¶¶ 12–13.)

In short, Ms. Scharff exercised diligence in determining the wage statements complied with California law.

### D.     The Class Members Understood Their Wage Statements

Class members who worked at the 15 IP facilities in California that utilize or utilized the Workbrain timekeeping system could understand their wage statements.  These facilities are: (1) Anaheim Box; (2) Buena Park Bag; (3) Camarillo Box; (4) Carson Container; (5) Compton Box;  (6) Irvine  Produce;  (7) Elk  Grove  Box;  (8) Exeter  Bulk;  (9) Modesto  Container; (10) Salinas Box; (11) San Leandro Container; (12) Sanger Box; (13) Santa Fe Springs Central; (14) Stockton Container; and (15) Visalia Food Service.  (COE Ex. 11, Bates Decl. ¶ 3.)  Various class members at these facilities signed declarations confirming that they were able to read and understand their wage statements.  (*See, e.g.*, COE Ex. 15, T. Cruz Decl. ¶¶ 2, 24 (Salinas); COE Ex. 21, Caputol Decl. ¶¶ 2, 18–19 (Anaheim); COE Ex. 30, R. Gutierrez Decl. ¶¶ 2, 10–11 (Carson); COE Ex. 39, Mondragon Decl. ¶¶ 2, 13–14 (Santa Fe Springs Central).)

Plaintiff also initially testified that she understood her wage statements.  During her deposition, Plaintiff was questioned about her paystub shown in section III.B above. Plaintiff confirmed that during her employment with IP, she understood that the 64.7 hours showed the total number of hours worked during the pay period. (COE Ex. 8, Pl. Tr. 39:2–40:25.) Curiously, however, after a break in the deposition when Plaintiff was asked about the same paystub from her attorney, she was suddenly confused by her paystub and changed her testimony to state that the total hours worked was actually 64.7 plus 0.75 plus 8 hours of holiday plus 8 hours of sick leave (i.e. a total of 81.45)—not the 64.7 hours that she had testified to before taking a break and speaking with her lawyer. (COE Ex. 8, Pl. Tr. 56:4, 58:7–59:13, 60:15–17.)

### E.     Plaintiff Authorized a Uniform Maintenance Deduction

Plaintiff voluntarily utilized a uniform during her employment.  Plaintiff first got a uniform when she started her job at the Salinas facility, which was operated by Weyerhaeuser at the time.  (COE Ex. 8, Pl. Tr. 21:24–22:7.)  She was fitted for her uniform by the third-party vendor, Cintas.  (COE Ex. 8, Pl. Tr. 23: 11–14.)  When IP took over the Salinas facility, Plaintiff kept the same uniform (still through Cintas) and would receive a new uniform when the previous

one would wear out.  (COE Ex. 8, Pl. Tr. 22:8–22.)  About once per week during her employment, Plaintiff left her uniform in a barrel for Cintas to pick up, wash, and return.  (COE Ex. 8, Pl. Tr. 23:17–24:5.)  On November 11, 2002, Plaintiff signed a payroll deduction authorization form for "continuing uniform service deduction."  (COE Ex. 8, Pl. Tr. 51:5–52:6, Dep. Ex. 8; COE Ex. 11, Bates Decl. ¶ 15.)  This deduction paid for the uniform maintenance service provided by Cintas, which included laundering, tailoring and replacement services.  (COE Ex. 11, Bates Decl. ¶ 14.)  Plaintiff understood that she could cancel the uniform service at any time, but she never chose to do so.  (COE Ex. 8, Pl. Tr. 31:20–22, 34:21–24.)

Plaintiff was not always required to wear a uniform.  While Plaintiff testified that she was required to wear a uniform while working on the cascader machine, she also testified that her coworker, Miguel Flores, did not wear a uniform when he worked on the cascader machine. (COE Ex. 8, Pl. Tr. 31:23–32:6, 33:1–34:1.)  Additionally, Plaintiff was not required to wear her uniform when she transferred to work on the unitizer machine; she still simply preferred to wear the uniform. (COE Ex. 8, Pl. Tr. 30:10–31:19, 34:2–20; COE Ex. 17, M. Flores Decl. ¶¶ 2, 6.)

## IV.   LEGAL STANDARD

The court must grant summary judgment when there is no genuine issue of material fact "and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  When the moving party makes a properly supported summary judgment motion, the nonmoving party "must present affirmative evidence in order to defeat [it]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Id.* at 252.

## V.   PLAINTIFF'S CLASS CLAIM FOR VIOLATIONS OF LABOR CODE SECTION 226 FAILS AS A MATTER OF LAW

The wage statements provided by IP to Plaintiff contained the total hours worked and the rates paid for different hours of work, with the good faith intent to comply with California law. Plaintiff's class claims hinge on her hyper-technical argument concerning the *format*, not the content, in which the wage statements showed the overtime premium and the total hours worked.

Plaintiff's preference that her wage statements show the same information in a different way does not rise to a claim.

The California Court of Appeal decision in *Soto v. Motel 6 Operating, L.P.*, 4 Cal.App.5th 385, 390 (2016) is instructive on this point.  The *Soto* court explained, "[t]he Legislature enacted section 226 to ensure an employer 'document[s] the basis of the employee compensation payments' to assist the employee in determining whether he or she has been compensated properly." *Id.* (citing *Gattuso v. Harte-Hanks Shoppers, Inc.*, 42 Cal.4th 554, 574 (2007)). Importantly, while there are requirements about what information must be shown, there is no mandate on exactly *how* the information must be shown.  In other words, there is no "one-size-fits-all" standard for wage statements.  Plaintiff may argue that it would be "better" if the information was described differently and feign confusion about her wage statements.  However, it would be improper for the court to determine the "best" way to provide information on a wage statement and find that any other format is unlawful.  This would add a labeling requirement that simply does not exist in Labor Code § 226.  *See Soto*, 4 Cal.App.5th at 391 ("When a statute omits a particular category from a more generalized list, a court can reasonably infer a specific legislative intent not to include that category within the statute's mandate.").

Of course, as set forth below, there can be more than one way to show the same information on a wage statement.  Thus, as a matter of law, IP cannot be held liable for multiple reasons: First, there is no violation; second, the decision-makers in IP's payroll department acted in good faith to comply with the law in allowing the payroll display; and third, Plaintiff and the class did not suffer injury as a result of any purported violation of Labor Code section 226. Accordingly, the class claim should be dismissed.

### A.    IP's Wage Statements Showed How Many Hours an Employee Worked and the Applicable Hourly Rates

Wage statements for employees at IP's facilities that use the Workbrain timekeeping system comply with California law because they display the employees' base rate next to their total hours worked and then their overtime premium rate next to their overtime hours worked. California Labor Code section 226 requires that wage statements include "an itemized statement

1   in writing showing . . . (2) total hours worked by the employee . . . and (9) all applicable hourly

2   rates in effect during the pay period and the corresponding number of hours worked at each

3   hourly rate by the employee . . . ." Cal. Lab. Code § 226(a). Plaintiff's allegation that IP violated

4   section 226 because it "listed the incorrect overtime rate of pay at ½ of the regular rate of pay"

5   and "double-count[ed] the overtime and regular hours worked, resulting in an incorrect listing of

6   total hours worked" (TAC ¶ 34, ECF No. 38) is an unsupported and unjustified extension of the

7   statute's requirements.

8        An employer has met its obligation under subdivision (a) of Labor Code section 226 if an

9   employee can easily identify from the face of the wage statement the required information. *See*

10  *generally*, *Morgan v. United Retail, Inc.*, 186 Cal.App.4th 1136 (2010) (holding that wage

11  statements that list regular hours and overtime hours worked but do not include a separate line

12  adding the two are nevertheless compliant with Labor Code section 226); *cf. Apodaca v. Costco*

13  *Wholesale Corp.*, 675 Fed.App'x 663, 665 (9th Cir. 2017) ("Costco's wage statements satisfy

14  the requirements of section 226(a) because they list the total hours worked and the corresponding

15  hourly rates. . . . [and] [b]ecause the hours worked and hourly rate can be 'promptly and easily

16  determine[d] from the wage statement alone' . . . ."); *Canales v. Wells Fargo Bank, N.A.*, 23

17  Cal.App.5th 1262 (2018) (affirming summary judgment that held the employer was not required

18  under 226(a)(9) to list the hours next to additional overtime owed because a bonus increased the

19  regular rate for hours worked in previous pay periods).

20       When given the opportunity to interpret section 226 more strictly than the plain language

21  dictates, the California Court of Appeal has declined to do so. For example, in *Savea v. YRC*

22  *Inc.*, 34 Cal.App.5th 173, 179, 181 (2019), the plaintiff argued that the only proper way to show

23  the employer's "name" was to list the name registered with the California Secretary of State (as

24  opposed to the employer's registered fictitious business name.) The Court of Appeal rejected

25  Plaintiff's argument that there was only one correct way to meet the requirement of showing the

26  employer's "name." *Id.*; s*ee also, Morgan*, *supra*, 186 Cal.App.4th at 1149 (declining to interpret

27  "total hours worked" to require a separate line item expressly identifying the total hours worked

28  when all of the data related to hours was otherwise on the wage statement); *Canales*, *supra*, 23

1   Cal.App.5th at 1271–72 (declining to enforce the DLSE's interpretation that would require a

2   wage statement be furnished immediately to a terminated employee).

3         The Class's wage statements contain all of the information required by Labor Code

4   section 226(a) and specifically include all hours worked and the applicable rates for different

5   hours worked.

6              1.      The wage statements "show" the total hours worked.

7         An employer has complied with Labor Code section 226(a)(2) to "show" all hours worked

8   when the employee can tell by looking at the face of his or her wage statement the total hours

9   worked during the pay period.  There is no requirement that an employer explicitly add up the

10  number of each type of hours for the employee into one combined total amount. For instance, in

11  *Morgan*, *supra*, 186 Cal. App. 4th at 1148, the Court explained that Labor Code section 226 does

12  not require employers to expressly include a line item that says "total hours worked":

13         We do not, however, read this amendment as signifying that an employer could

14         now only comply with section 226 by first listing the total regular hours and the

15         total overtime hours worked during the pay period, and then adding those two

16         figures together in a separate line listing the sum of all hours worked. There is

17         nothing in the legislative history cited by the parties to demonstrate that the

18         Legislature had such an intent.

19  *Id.*

20         The mere absence of a "total hours worked" line is not a violation of Labor Code section

21  226. *Morgan*, 186 Cal. App. 4th at 1145–46, 1149 (affirming summary judgment on wage

22  statement claim in which employer did not provide a final sum totaling the itemized hours

23  worked.) In fact, the exemplar provided by the California Division of Labor Standards

24  Enforcement (DLSE) on its own website does not list the total hours worked as a separate sum.

25  (COE Ex. 2, Sample Hourly Paystub.)

26         While one decision from the Central District, *McKenzie v. Fed. Ex. Corp.*, 765 F. Supp.

27  2d 1222 (C.D. Cal. 2011), found a violation where there was not a "total hours" line item, that

28  case is distinguishable from the present case (and is not binding authority).  In *McKenzie*, the

wage statements separated out the base wages for overtime from the base wages for non-overtime pay in such a manner that the overtime hours were listed twice and the employer provided a separate document explaining the calculation. *Id.* at 1229.  In addition, in *McKenzie,* the wage statements also failed to include the beginning date for the pay period as required by Labor Code § 226(a)(6). *McKenzie*, 765 F. Supp. 2d at 1230–31. The court noted that an employee would have to "know beforehand that the corporate pay week is Sunday through Saturday, and either consult their work schedule or a calendar to determine the date range for the pay period." *Id.* at 1226*.*  The *McKenzie* court found that the wage statements did not comply with 226 under *Morgan* in part because they required reference to an outside document.  *Id.* at 1229.

In contrast to *McKenzie*, Plaintiff's wage statement shows the total hours worked as well as the applicable rates of pay with no need to do any calculations. (Plus, unlike *McKenzie*, there is no dispute that Plaintiff's wage statements included the start date and end date of the period.) The total hours worked are shown in the cell where the "Regular Hours" row intersects with the "HRS. CURR" column, so each and every hour worked will always be part of the "Regular Hours."  This line shows Plaintiff what she would have earned for all hours worked had she not received any overtime premium for her hours worked (or received holiday pay or paid sick leave). When Plaintiff worked overtime, the extra amount that she was paid for those hours is shown in the cell where the "Overtime Premium" row intersects with the "HRS. CURR" column.

Furthermore, even if there was a requirement to list the overall total number of hours worked, Arroyo's wage statements would still be in compliance. Here, Plaintiff could easily look at the four corners of her wage statement and determine: (1) how many hours she worked; (2) her rate of pay for each hour worked at her regular rate; and (3) the premium she received for each hour worked at the overtime rate. The amount of "regular hours" shows the total hours Plaintiff worked, so there is no need for math or reference to another document. (COE Ex. 8 Pl. Dep. Ex. 1.)  When Plaintiff worked overtime, the "overtime premium" shows how many of those total hours she worked at the overtime premium rate. In the example in section III.B, Plaintiff worked 64.7 total hours during the pay period, 0.75 hours of which were considered overtime. No calculations are necessary. The wage statements indisputably "document the basis of the

1    employee compensation payments." *Soto*, 4 Cal.App.5th at 391.   Thus, Plaintiff's wage

2    statement claim fails to show a violation.

3        Plaintiff would presumably concede that if IP's wage statement were as follows, that it

4    would comply with Labor Code 226(a)(2):

| EARNINGS | RATE | HRS. CURR | CURR | YTD |
|---|---|---|---|---|
| Regular Hours | 20.3700 | 64.70 | 1,318.01 | 4,149.77 |
| Overtime Premium | 10.1850 | 0.75 | 7.64 | 8.68 |
| Holiday | 20.3700 | 8.00 | 162.96 | 162.96 |
| Paid Sick Hrs Taken-Hrly | 20.3700 | 8.00 | 166.96 | 500.88 |
| LumpSumPay-NonGrUpNonPen | 20.8700 | 0.00 | 0.00 | 744.00 |
| **TOTAL** | | 64.70 | 1,655.57 | 5,566.29 |

12      The only difference between this hypothetical wage statement and Plaintiff's actual wage

13   statement is highlighted in yellow.  Obviously, the 64.70 data point is already shown in the cell

14   where Regular Hours intersects HRS CURR.  Plaintiff is just arguing for a different method of

15   how to label the same data point.  However, there is no requirement that the total hours worked

16   be labeled a specific way.  Thus, Plaintiff's claim fails.

17              2.    *The wage statements reflect the correct overtime premium rate.*

18      Plaintiff also alleges that IP's wage statements fail to show the "correct" overtime rate

19   because the wage statements display the overtime premium rate, not the "time and a half" rate

20   for overtime.  (TAC ¶ 34, ECF No. 38.) Plaintiff does not allege that IP only *paid* her at half the

21   regular rate of pay for her overtime wages. Rather, Plaintiff takes issue with having her wage

22   statement showing that her overtime hours were paid as regular hours plus an added ½ overtime

23   premium.  (TAC ¶ 34, ECF No. 38.) In other words, in the example above, Plaintiff worked 64.7

24   total hours during the pay period, 0.75 hours of which were considered overtime. Her wage

25   statement shows she was paid 64.7 hours at her regular rate of pay plus the extra premium of ½

26   of her regular rate of pay for 0.75 hours. Plaintiff contends that this must give rise to a wage

27   statement claim because ½ her regular rate of pay is the "incorrect" overtime rate.

28   ///

These allegations are still insufficient for a stand-alone wage statement claim. As a threshold matter, there can be no violation for accurately describing that an employee who works 64.7 hours in a pay period, 0.75 of which are overtime hours, is properly compensated by receiving 64.7 hours at her regular rate plus 0.75 hours with an overtime premium of 0.5 times her regular rate. This is the equivalent of receiving 63.95 hours at her regular rate plus 0.75 hours at 1.5 time her regular rate. Thus, Plaintiff has failed to proffer any evidence that Defendant showed the "incorrect" overtime rate on any of its wage statements.

It is not uncommon for lawmakers and regulators to conceptualize overtime pay as having a base amount (the regular rate) and a premium amount (half the regular rate). Indeed, federal and state regulators often describe the overtime premium as being 0.5 the regular rate of pay in various contexts. For instance, the DLSE Policies and Interpretations Manual includes an example explaining that the overtime premium is 0.5 the regular rate of pay. (COE Ex. 4, DLSE Manual 49.2.1.5.) In addition, the U.S. Department of Labor provides an example explaining, "The employee is then due additional overtime computed by multiplying the [] overtime hours by *one-half* the regular rate of pay . . . ." (COE Ex. 5 at 2 (emphasis added).)  Likewise, in an exemplar wage statement provided by the DLSE in May 2019, the overtime premium is broken out separately from the regular rate.  *See* California Department of Industrial Relations: Division of Labor Standards Enforcement, *Example Itemized Wage Statement For A Worker Paid Piece-Rate, as Required By Labor Code section 226(a)* (May 2019), *available at* https://www.dir.ca.gov/dlse/PayStubForPieceRate.pdf. (COE Ex. 3, Sample Piece Rate Wage Statement.) In the commentary, the DLSE explains, "Because all hours have been paid at their respective rates, the overtime premium portion of those hours is computed at a factor of either .5 (overtime) or 1 (double time)."  (COE Ex. 3, Sample Piece Rate Wage Statement.)

It would be incongruent for regulators to describe the overtime premium as being the extra "0.5" in these scenarios but hold that it is a violation for IP to display it in the same way on its wage statements.  The May 2019 exemplar wage statement demonstrates that the DLSE views it as equally correct to describe overtime as being the extra 0.5 premium paid on top of the regular rate of pay where the base pay is displayed elsewhere, as it is to describe overtime as being 1.5

times the regular rate of pay.  At the risk of stating the obvious: 1 plus 0.5 is equal to 1.5.

Whereas the *McKenzie* court concluded the wage statements in that case amounted to a violation of section 226(a)(9) "because instead of multiplying the regular rate of pay by one and one-half, the pay stubs provide two overtime rate categories and they each provide corresponding rates that are either the same or half of the regular rate," *McKenzie*, 765 F. Supp. 2d at 1231, the mere display of the overtime *premium* rate on the wage statement is not a violation of California law.  *Hernandez v. BCI Coca-Cola Bottling Co.*, No. CV 11-9484 SVW SSX, 2012 WL 12272348, at *5 (C.D. Cal. Apr. 12, 2012), *aff'd*, 554 F. App'x 661 (9th Cir. 2014) (expressly declining to interpret *McKenzie* to require a 226 violation every time the overtime premium is broken out because to do so would be inconsistent with California authority under *Morgan*).

Moreover, assuming *arguendo*, that Defendant did list the "incorrect" overtime rate, a recent California Court of Appeal decision shows that merely listing the "incorrect" rate is not sufficient to make a claim under Labor Code § 226—regardless of whether it is a derivative or stand-alone claim. In *Maldonado v. Epsilon Plastics, Inc.*, 22 Cal.App.5th 1308, 1320 (2018), the trial court had concluded that the employer had improperly calculated its overtime rate, so it also found Defendant's wage statements violated Labor Code §226(a). *Id.* at 1326. The California Court of Appeal overturned the trial court, stating that "[t]he purpose of requiring greater wage stub information is to insure that employees are adequately informed of compensation received and are not shortchanged by their employers." *Id.* at 1336–37. The court found that the wage statements were accurate in that they correctly reflected the number of hours that were worked at each rate and the corresponding pay received at that rate. *Id.* Whether or not the rate turned out to be the proper rate the employee should have been paid is irrelevant for the purposes of alleging a Labor Code 226 violation. *Id.*

Indeed, IP's method for showing the overtime premium allows employees to easily see exactly how much extra compensation they received for working overtime.  For instance, assume an employee whose regular rate is $20 / hr. works four 10-hour shifts (giving rise to 2 hours of daily overtime on each of the 4 days) in one pay period and then five 8-hour shifts in the following pay period.  That employee would see that she was compensated for 40 "regular hours" in both

pay periods. In other words, she spent the same amount of time working in both pay periods. However, when she worked the 10-hour shifts, she would see that she received an additional "overtime premium" of $80 for the 8 overtime hours.

Plaintiff's wage statements simply display one of at least two lawful ways to calculate and show overtime, not a violation of Labor Code section 226. Once again, both methods would "document the basis of the employee compensation payments." *Soto*, 4 Cal.App.5th at 391. Thus, Plaintiff's wage statement claim fails as a matter of law.

**B.** **Plaintiff and the Class Are Not Entitled to Penalties Under Labor Code Section 226 Because a Good Faith Dispute Exists as to Whether the Wage Statements Meet the Statutory Requirements**

IP is not liable under section 226 under the good faith defense because it has presented why, in good faith, its wage statements were not a violation of section 226. Penalties are only permitted under section 226 when there is a "knowing and intentional" failure to provide accurate wage statements. Cal. Lab. Code § 226(e); *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1195 (2008) (noting that section 226 penalties "are imposed only if an employers' violation was 'willful' or 'knowing'"); *see also*, *Hoffman v. Constr. Protective Servs., Inc.*, 293 F. App'x 462, 463 (9th Cir. 2008) (affirming judgment as a matter of law where the "record contain[ed] no evidence that any violation of § 226 was knowing and intentional"). A defendant employer that presents a legitimate good faith defense has therefore not willfully or knowingly violated section 226 and therefore is not subject to penalties. *See, e.g.*, *Boyd v. Bank of Am. Corp.*, 109 F. Supp. 3d 1273, 1308 (C.D. Cal. 2015) ("[A] good faith defense precludes liability under the 'knowing and intentional' standard [of California Labor Code section 226] because the defendant arguably had no way of knowing that its conduct was unlawful.").

A "good faith dispute" exists under the California Labor Code where, as here, the employer "presents a defense, based in law or fact which, if successful, would preclude any recovery on the part of the employee." 8 Cal. Code Regs. § 13520; *see also Amaral*, *supra*, 163 Cal.App.4th at 1201–03 (analyzing the good faith defense as it relates to various alleged labor code violations). The good faith defense can arise when the law at the time of the alleged

violation was unclear.  *See Amaral*, *supra*, 163 Cal.App.4th at 1202 (applying the good faith defense where the employer was unaware a living wage ordinance applied and the California Court of Appeal had never interpreted a municipal living wage ordinance); *see also*, *Utne v. Home Depot U.S.A., Inc.*, No. 16-CV-01854-RS, 2019 WL 3037514, at *6 (N.D. Cal. July 11, 2019) (granting the employer's summary judgment motion on the section 226 claim where the employer had presented a good faith defense as to the alleged violation).

Many years before this lawsuit was filed, IP—and Ms. Scharff in particular—took care to ensure compliance with Labor Code § 226.  Ms. Scharff reviewed the legal requirements along with her team, stayed up to date through her membership with the American Payroll Association (APA), maintained and referenced payroll treatises, and conducted an internal audit.  (COE Ex. 9, Scharff Decl. ¶¶ 7–11.)  In reviewing compliance with section 226, Ms. Scharff—who worked for IP's outside payroll company for several years before returning to IP and conducting the audit—even hand-checked each of the nine requirements under subdivision (a) of Labor Code section 226 with which she and her team understood IP to be compliant in her review of California paystubs, including (a)(2) and (a)(9).  (COE Ex. 9, Scharff Decl. ¶¶ 8, 11; COE Ex. 10, Scharff Notes.)  And, as analyzed in V.A., *supra*, there is a legal, factual, and common sense basis as to why the Class's wage statements were compliant with section 226.  Indeed, there is no mandatory authority supporting Plaintiff's argument that the Class's wage statements are violations of section 226—no statutory language, no opinion from the California Court of Appeal or California Supreme Court, and no regulation or wage order.  In short, IP neither knowingly nor intentionally failed to comply with section 226.

Due to the lack of clarity in Plaintiff's interpretation of the law as well as IP's efforts to comply with the law, the good faith defense applies.  Because a plaintiff cannot recover penalties under section 226 where a good faith dispute precludes a knowing and willing violation of the law, summary judgment is proper.

### C.   Plaintiff and the Class Did Not Suffer Any Injury Under Section 226

There can be no injury to claim penalties under section 226 when simple arithmetic allows the employee to ascertain the necessary information required in section 226(a). *Raines v. Coastal*

*Pac. Food Distributors, Inc.*, 23 Cal.App.5th 667, 675–76 (2018); *see also*, *Milligan v. Am. Airlines, Inc.*, 577 F. App'x 718, 719 (9th Cir. 2014) (finding no injury where the employee did not show that "she had to consult extrinsic sources to determine [the missing data]").  In other words, for Plaintiff to prevail on her wage statement claim, she must not only show that the required information is missing from her wage statement, she must also show she suffered an injury. Labor Code 226 was amended in 2013 to clarify that the injury requirement is presumed if the required information is not provided and "the employee cannot promptly and easily determine from the wage statement alone" the information that was missing. Lab. Code § 226(e).

A reasonable person would be able to readily read Plaintiff's wage statements and efficiently locate the requisite information.  Whether or not an employee can "promptly and easily determine" the information required under section 226(a) is evaluated under an objective standard.  Lab. Code § 226(e)(2)(C).  "[I]njury [under 226(e)] is only presumed . . . if a reasonable person would be unable to readily ascertain the missing information without reference to other documents or information." *Maldonado*, *supra*, 22 Cal. App. 5th at 1335.  For instance, there was no injury in *Loud v. Eden Med. Ctr.*, 2013 WL 4605856, at *12–*13 (N.D. Cal. Aug. 28, 2013), because, despite the employee's own purported confusion, the mere need to perform division did not rise to the level of "injury" for the purposes of Labor Code § 226. *Id.* ("Plaintiff would not be considered to have suffered an injury, within the meaning of section 226(e), simply because she had to perform basic math by adding the overtime and regular hours together, ensure that her overtime rate of pay was correct, and speculate on the possibility that she may have been underpaid.").

Plaintiff and the class did not suffer injury and cannot rely on the presumption of injury under section 226 because a reasonable person could promptly determine all of the requisite information from the four corners of the wage statement.  Plaintiff and the class are not required to perform *any* math to calculate how many hours they worked. In the example provided above, the wage statement shows that Plaintiff was paid for a total of 64.7 hours. At best, Plaintiff quibbles with how the information was labeled. But Labor Code 226 does not require that the wage statements label the information in any specific manner, and California courts routinely

1    decline to read section 226 to require more than the text already states.  Plaintiff and the Class

2    can also review their wage statement and see that overtime hours receive a 0.5x premium on top

3    of the regular rate.

4            Plaintiff and the Class have not suffered injury under section 226.  Thus, this claim fails.

5    **VI.     PLAINTIFF'S FIRST CAUSE OF ACTION FOR EXPENSE REIMBURSEMENT**

6    **         FAILS AS A MATTER OF LAW**

7            While section 2802 of California's Labor Code requires reimbursement of *necessary*

8    expenditures, Plaintiff's own testimony confirms that the expense she alleges she should have

9    been reimbursed for was voluntary.  In order to maintain claim under section 2802, a plaintiff

10   must allege not only that she incurred expenditures but also that "(2) the expenditures or losses

11   were incurred in direct consequence of [her] discharge of [her] duties, or obedience to the

12   directions of the employer; and (3) the expenditures or losses were necessary."  *USS-POSCO*

13   *Indus. v. Case*, 244 Cal.App.4th 197, 205 (2016) (quoting *Cassady v. Morgan, Lewis & Bockius*

14   *LLP*, 145 Cal.App.4th 220, 230 (2006)), *reh'g denied* (Feb. 19, 2016), *review denied* (Apr. 20,

15   2016); *see also*, *Watterson v. Garfield Beach CVS LLC*, 120 F. Supp. 3d 1003, 1010 (N.D. Cal.

16   2015), *aff'd*, 694 F. App'x 596 (9th Cir. 2017) (granting summary judgment on Labor Code 2802

17   claim as to employee's wellness program expenditures because the employer did not "direct" the

18   plaintiff to complete the annual health screenings or wellness reviews); *Novak v. Boeing Co.*, No.

19   SACV 09-01011, 2011 WL 9160940, at *3 (C.D. Cal. July 20, 2011) (granting partial summary

20   judgment on section 2802 claim where expenses were voluntary).

21           Plaintiff's alleged expense reimbursement claim fails as a matter of law because it was

22   neither required nor necessary.  While Plaintiff alleges that Defendant made deductions from her

23   wages for a uniform that she had already purchased, the undisputed facts show that the deductions

24   were approved deductions for Plaintiff's voluntary uniform maintenance.  (COE Ex. 8, Pl. Tr.

25   51:5–52:6, Pl. Dep. Ex. 8; COE Ex. 11, Bates Decl., ¶¶ 14–15.)  Plaintiff authorized her employer

26   to deduct a payment to the vendor Cintas for "continuing uniform service deduction."  (COE Ex.

27   8, Pl. Tr. 51:5–52:6, Pl. Dep. Ex. 8; COE Ex. 11, Bates Decl., ¶¶ 14–15.)  This deduction paid

28   for the uniform maintenance service provided by Cintas, including laundry, maintenance, and

1    tailoring service to the garments.  (COE Ex. 11, Bates Decl., ¶ 14.)

2          Plaintiff was not required to use the uniform service offered by Cintas.  Plaintiff

3    understood that she could cancel the uniform service at any time.  (COE Ex. 8, Pl. Tr. 31:20–22.)

4    Despite this, she never told anyone at IP that she wanted to cancel her uniform service.  (COE

5    Ex. 8, Pl. Tr. 34:21–24.)  Thus, her continued expenditures—for which she received the services

6    from Cintas in exchange (COE Ex. 8, Pl. Tr. 51:5–52:6, Pl. Dep. Ex. 8; COE Ex. 11, Bates Decl.,

7    ¶¶ 14–15)—were voluntary.

8          Moreover, Plaintiff was not required to wear a uniform for her job; she simply preferred

9    it.  (COE Ex. 8, Pl. Tr. 30:10–31:19, 34:2–20.)  Several of Plaintiff's manufacturing co-workers

10   at the Salinas location confirmed that they were not required to wear a uniform for work and thus

11   either wore their own clothes or paid to rent from Cintas.  (COE Ex. 13, Barragan Decl., ¶ 6;

12   COE Ex. 14, A. Cruz Decl., ¶¶ 7–9; COE Ex. 15, T. Cruz Decl., ¶¶ 8–14; COE Ex. 16, O. Estrada

13   Decl., ¶ 6; COE Ex. 17, M. Flores Decl., ¶ 6; COE Ex. 18, Levano Decl., ¶ 6; COE Ex. 19, A.

14   Ortiz Decl., ¶ 6; COE Ex. 20, Salinas Decl., ¶ 9.)  Indeed, despite testifying that she was required

15   to wear her uniform on the cascader machine, Plaintiff acknowledged that another coworker of

16   hers did not wear a uniform when he worked on the same machine.  (COE Ex. 8, Pl. Tr. 31:23–

17   32:6, 33:1–34:1; COE Ex. 17, M. Flores Decl. ¶¶ 2, 6.)

18         Plaintiff's "uniform" expense was neither necessary nor required.  Because Plaintiff was

19   not required to wear the uniform or get it laundered through Cintas but chose to wear it and

20   continue the uniform maintenance service anyway, her first cause of action for failure to

21   reimburse business expenses pursuant to Labor Code section 2802 fails as a matter of law.

22   **VII.   PLAINTIFF'S UNFAIR COMPETITION CLAIM IS IMPROPER**

23         Plaintiff's Fourth Cause of Action for Unfair Competition is not only derivative of

24   Plaintiff's and the Class's deficient claims, but it also fails as a matter of law as to the class

25   because it is not a vehicle through which the class can recover penalties.

26         **A.     Plaintiff's Unfair Competition Claim Fails Because It Is Derivative**

27         Plaintiff's Fourth Cause of Action for Unfair Competition is derivative of her other

28   claims, which fail.  (TAC ¶ 41, ECF No. 38.)  Because Plaintiff's class claim for violation of

1   Labor Code 226 and her individual claim for failure to reimburse both fail as a matter of law, so

2   too must her fourth cause of action. *Aleksick v. 7-Eleven, Inc.*, 205 Cal.App.4th 1176, 1185

3   (2012) (citing *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 182

4   (1999)) ("When a statutory claim fails, a derivative UCL claim also fails.").  Additionally, while

5   this court granted class certification for this claim, it only did so "to the extent [it is] based on

6   wage statements generated by the Workbrain system . . . ."  (Order re Class Cert. 12:17–18, ECF

7   No. 48.)  Accordingly, even if Plaintiff's reimbursement claim survives summary judgment, the

8   UCL class claims fail because the class wage statement claim fails.

9   **B.      The Class Cannot Recover Section 226 Penalties Under the UCL**

10        A cause of action under California Business & Professions Code section 17200, *et seq.* is

11   a claim in equity and therefore does not allow the recovery of damages or penalties.

12   *Prakashpalan v. Engstrom, Lipscomb & Lack*, 223 Cal.App.4th 1105, 1133 (2014), *as modified

13   on denial of reh'g* (Feb. 27, 2014) (citing *Cel–Tech Commc'ns, Inc.*, 20 Cal.4th at 179) ("A

14   distinguishing feature of the UCL is that it does not provide a private action for damages or other

15   legal remedies. Instead, the UCL provides an equitable means to prevent unfair practices in the

16   future and restore money or property to victims of those practices.").  In the employment context,

17   a plaintiff may bring a claim under the UCL for injunctive relief and restitution; however,

18   penalties are not recoverable.  *Pineda v. Bank of Am., N.A.*, 50 Cal.4th 1389, 1401 (2010) (Labor

19   Code § 203 waiting time penalties); *Noe v. Superior Court*, 237 Cal.App.4th 316, 326 (2015)

20   (Labor Code § 226.8 misclassification penalties); *Sanders v. Old Dominion Freight Line, Inc.*,

21   No. CV 18-688, 2018 WL 6321631, at *3 (C.D. Cal. Sept. 13, 2018) (Labor Code § 226.7 meal

22   and rest penalties); *Gunawan v. Howroyd-Wright Employment Agency*, 997 F. Supp. 2d 1058,

23   1070 (C.D. Cal. 2014) (penalties under Labor Code §§ 203, 212, 213, 221, 223, 226).

24   Specifically, a plaintiff cannot recover restitution under the UCL for wage statement violations

25   under Labor Code section 226.  *Gunawan*, 997 F. Supp. 2d at 1070; *see also*, *Guerrero v.

26   Halliburton Energy Servs., Inc.*, 231 F. Supp. 3d 797, 808 (E.D. Cal. 2017) (*citing Campbell v.

27   PricewaterhouseCoopers*, No. CIV S-06-2376, 2008 WL 3836972 at *6 (E.D. Cal. Aug. 14,

28   2008)).

1     Because the UCL class claim is certified only as to Plaintiff's 226 claim, it fails as a

2     matter of law.  As noted above, Plaintiff's fourth cause of action is only certified "to the extent

3     [it is] based on wage statements generated by the Workbrain system . . . ."  (Order re Class Cert.

4     12:17–18, ECF No. 48.)  Plaintiff seeks only penalties under section 226 and restitution under

5     the UCL.  (TAC ¶¶ 35, 43, *Prayer* ¶¶ 5, 7, ECF No. 38.)  Because the Class cannot recover

6     section 226 penalties under the UCL—even if the second cause of action survives summary

7     judgment—the class claims under the fourth cause of action fail as a matter of law.

8     **VIII.   PLAINTIFF'S PAGA CLAIM FAILS.**

9         The California Private Attorneys General Act (PAGA) allows purported aggrieved

10    employees to bring a private right of action on behalf of themselves and other aggrieved

11    employees for alleged violations of the California Labor Code.  Cal. Lab. Code § 2699(a).  As

12    set forth below, Plaintiff's PAGA claim fails because it is a derivative cause of action of claims

13    that also fail, there is no evidence of a defined group of "aggrieved employees," and it would be

14    unmanageable to proceed on an individualized basis.

15        **A.      Plaintiff's PAGA Claim Fails Because It Is a Derivative Claim**

16        Plaintiff's Third Cause of Action for Violations of the PAGA is derivative of her first two

17    causes of action. (TAC ¶ 37, ECF No. 38.)  Because Plaintiff fails to show evidence to survive

18    summary judgment with respect to her first two causes of action, her third cause of action must

19    also be dismissed.  *See generally*, *Tomco v. Prada USA Corp.*, 484 F. App'x 99, 100 (9th Cir.

20    2012) (affirming summary judgment in favor of the defendant employer on derivative PAGA

21    claim); *Johnson v. Hewlett-Packard Co.*, 809 F. Supp. 2d 1114, 1137 (N.D. Cal. 2011), *aff'd*,

22    546 F. App'x 613 (9th Cir. 2013).

23        **B.      There Is No Evidence of a Defined Group of Aggrieved Employees**

24        Furthermore, with respect to Plaintiff's argument that there was some systemic policy to

25    require employees to pay for uniforms, the Court has already found this to be meritless.  Thus,

26    Plaintiff has failed to show there is a group of "aggrieved employees." In the Class Certification

27    order, the Court stated:

28    / / /

1   IPC offers the declaration of Derrick Bates, its Regional Human Resources

2   Manager for the Northern Region of California. See Bates Decl. ¶ 2, Def.'s

3   Compendium Exh. 9, ECF 42-2. Bates explains that IPC does not sell uniforms to

4   its employees as alleged in the TAC, but rather it pays a third-party rental service

5   to provide, launder, and maintain uniforms for workplace use. See Bates Decl.

6   ¶¶ 13–14. Moreover, not all employees are required to wear uniforms, as

7   suggested by Arroyo. *Id.* ¶ 6. The policies as to which employees must wear

8   uniforms differ from facility to facility, and depend in part on the employee's job

9   position. *Id.* ¶¶ 6–7, 12–13. . . . Bates' declaration is bolstered by the declarations

10  of numerous IPC employees, some stating that they are required to wear uniforms

11  and IPC pays for them, some stating that they are not required to wear uniforms

12  but voluntarily rent uniforms from the third-party vendor via paycheck deduction,

13  and some stating that they wear their street clothes. See Def.'s Compendium Exhs.

14  11–64.

15      If IPC's version of events is accurate, then Arroyo's § 2802 claim simply

16  makes no sense. Arroyo does not suggest that § 2802 is violated when an

17  employee voluntarily decides to rent a uniform which is not required as a

18  condition of employment. Nor does she address in any meaningful way IPC's

19  substantial evidence that IPC pays for uniforms when they are required, and that

20  the $7.50 deduction reflects only voluntary uniform rental costs.

21  (Order re Class Cert. 5–6, ECF No. 48.)

22      For the sake of completeness, IP has re-attached those class member declarations to this

23  motion for summary judgment.  However, for the sake of brevity, IP will not repeat all of its

24  arguments that the Court has already ruled on.

25  **C.**      **A Reimbursement PAGA "Class" Does Not Exist and Would Be**

26           **Unmanageable**

27      In addition, even if Plaintiff's first cause of action for expense reimbursement survives

28  summary judgment, the court should dismiss her PAGA claim, because it is not manageable and

there is no evidence of a defined group of "aggrieved employees." The Court may dismiss PAGA claims where the circumstances make the PAGA claim unmanageable. *See Ortiz v. CVS Caremark Corp.*, No. C-12-05859, 2014 WL 1117614, at *4 (N.D. Cal. March, 18, 2014). For example, a court struck PAGA claims as unmanageable where "the alleged Labor Code violations rel[ied] on unique characteristics of Plaintiff's experience . . . rather than on policies or practices common to "aggrieved employees" across California, in three different markets, in varying jobs, and with varying job duties." *Amiri v. Cox Commc'ns California, LLC*, 272 F. Supp. 3d 1187, 1194 (C.D. Cal. 2017). A PAGA claim is also unmanageable where the Plaintiff has failed to adequately identify the "aggrieved individuals." *Salazar v. McDonald's Corp.*, No. 14-CV-02096, 2017 WL 88999, at *9 (N.D. Cal. Jan. 5, 2017) (striking Plaintiffs' representative PAGA claim where the aggrieved employees were not defined with particularity).

A failure to reimburse claim is not manageable where an individual inquiry is necessary to determine if the expense was required. In *Ortiz*, like here, the plaintiff attempted to represent a class and act as a PAGA representative on an expense reimbursement claim. *Ortiz*, *supra*, 2014 WL 1117614, at *4. The Court had previously denied class certification on the reimbursement claim because "Plaintiffs' unreimbursed mileage claim would require individualized inquiries about whether the claimed expenses were necessary and incurred in direct consequence of the discharge of the employee's duties, whether the employee actually sought reimbursement from Defendants for the expenses and whether Defendants reimbursed the employee for the expense." *Id.* For the same reasons, the court found the reimbursement PAGA claim unmanageable and granted a later motion to strike. *Id.*

Plaintiff's PAGA claim based on Labor Code section 2802 is unmanageable, and there is no evidence of a defined group of "aggrieved employees." Thus, Plaintiff's PAGA claim should be stricken because it relies on Plaintiff's unique experience and would require an individualized inquiry to determine which employees were owed reimbursement. Indeed, this Court declined to certify a class as to Plaintiff's first cause of action because "for *each* individual who falls within the proposed class definition . . . the trier of fact would have to determine (a) whether a uniform was required and (b) whether IPC improperly charged the employee for uniform

expenses via the $7.50 deduction."  (Order re Class Cert. 7:7–11, ECF No. 48.)  This would not have been manageable on a class-wide basis and certainly would not be manageable on an individual basis.  Accordingly, even if Plaintiff's first cause of action survives as an individual claim, summary judgment is still proper as to her third cause of action for penalties under PAGA as a purportedly aggrieved employee.

## IX.   CONCLUSION

This case attempts to saddle a company with penalties upon penalties—despite the diligent work of its payroll compliance team—for an extension of a statutory requirement that is not supported under California law.  The reality is that there are multiple ways to "show" the same information to employees on their wage statements.  IP's method complies with Labor Code § 226.  Thus, summary judgment is proper.  Furthermore, even if this Court is inclined to agree with Plaintiff's theory of liability, summary judgment should still be granted as to the class claims both because there exists a good faith dispute, and because the class was not injured by any supposed violation.  Likewise, IP is entitled to summary judgment as to Plaintiff's individual claim for expense reimbursement because she was not required to wear or launder a uniform with a third party as part of her job.  The deductions (which she authorized) were for a service provided by a third-party vendor through IP as a courtesy to employees like Plaintiff who preferred wearing a uniform and having it laundered.  Finally, Plaintiff's third and fourth causes of action are derivative of her first two causes of action which fail as a matter of law, her third cause of action under PAGA would likewise be unmanageable, and her fourth cause of action is improper as a class claim because the Class cannot recover penalties as restitution.  Accordingly, Defendant respectfully requests the Court grant Defendant's Motion for Summary Judgment as to each and every cause of action.

DATE: October 3, 2019                              Respectfully submitted,

                                                  **FISHER & PHILLIPS LLP**

                                  By:     /s/ Aaron F. Olsen
                                          Danielle Hultenius Moore
                                          Aaron F. Olsen
                                          Megan E. Walker
                                          Attorneys for International Paper Company

**CERTIFICATE OF SERVICE**

I, the undersigned, am employed in the County of San Diego, State of California.  I am over the age of 18 and not a party to the within action; am employed with the law offices of Fisher & Phillips LLP and my business address is 4747 Executive Drive, Suite 1000, San Diego, California, 92121.

On October 3, 2019 I served the foregoing document entitled **DEFENDANT INTERNATIONAL PAPER COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT PURSUANT TO FRCP 56; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** on all the appearing and/or interested parties in this action by placing ☐ *the original* ☒ *a true copy* thereof enclosed in sealed envelope(s) addressed as follows:

| | |
|---|---|
| Larry W. Lee (SBN 228175) | Telephone: (213) 488-6555 |
| Kristen M. Agnew (SBN 247656) | Facsimile: (213) 488-6554 |
| Nicholas Rosenthal (SBN 268297) | E-Mail: lwlee@diversitylaw.com; |
| DIVERSITY LAW GROUP, P.C. | kagnew@diversitylaw.com; |
| 515 South Figueroa Street, Suite 1250 | nrosenthal@diversitylaw.com |
| Los Angeles, California  90071 | Co-Counsel for Plaintiff and Proposed Class and Collective Members |
| | |
| William L. Marder (SBN 170131) | Telephone: (831) 531-4214 |
| POLARIS LAW GROUP LLP | Facsimile: (831) 634-0333 |
| 501 San Benito Street, Suite 200 | E-Mail: bill@polarislawgroup.com |
| Hollister, California  95023 | Co-Counsel for Plaintiff and Proposed Class and Collective Members |
| | |
| Dennis S. Hyun (SBN 224240) | Telephone: (213) 488-6555 |
| HYUN LEGAL, APC | Facsimile: (213) 488-6554 |
| 515 South Figueroa Street, Suite 1250 | E-Mail: dhyun@hyunlegal.com |
| Los Angeles, California  90071 | Co-Counsel for Plaintiff and Proposed Class and Collective Members |

☒   **[by ELECTRONIC SUBMISSION]** - I served the above listed document(s) described via the United States District Court's Electronic Filing Program on the designated recipients via electronic transmission through the CM/ECF system on the Court's website.  The Court's CM/ECF system will generate a Notice of Electronic Filing (NEF) to the filing party, the assigned judge, and any registered users in the case. The NEF will constitute service of the document(s). Registration as a CM/ECF user constitutes consent to electronic service through the court's transmission facilities.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed October 3, 2019 at San Diego, California.

| Amanda Funkhouser | By: | *[signature]* |
|---|---|---|
| Print Name | | Signature |