1
2
3    **UNITED STATES DISTRICT COURT**
4    **NORTHERN DISTRICT OF CALIFORNIA**
5    **SAN JOSE DIVISION**
6
7    ELISA ARROYO,                                Case No.  17-cv-06211-BLF
8                     Plaintiff,
                                                  **ORDER DENYING PLAINTIFF'S**
9         v.                                      **REQUEST FOR CONTINUANCE**
                                                  **UNDER FEDERAL RULE OF CIVIL**
10   INTERNATIONAL PAPER COMPANY,                 **PROCEDURE 56(d); AND GRANTING**
                                                  **IN PART AND DENYING IN PART**
11                   Defendant.                   **DEFENDANT'S MOTION FOR**
                                                  **SUMMARY JUDGMENT**
12
                                                  [Re:  ECF 51, 52]
13
14
15        Plaintiff Elisa Arroyo ("Arroyo") asserts individual claims, a certified class claim, and a
16   representative PAGA[1] claim against Defendant International Paper Company ("IPC") for alleged
17   failures to reimburse uniform expenses and provide accurate wage statements.  Following this
18   Court's order granting in part and denying in part Arroyo's motion for class certification, the
19   following claims are at issue:  Claim 1 for failure to reimburse uniform expenses in violation of
20   Cal. Lab. Code § 2802 (individual); Claim 2 for failure to provide accurate wage statements in
21   violation of Cal. Lab. Code § 226 (class); Claim 3 for civil penalties under PAGA; and Claim 4
22   for violation of California's Unfair Competition Law ("UCL") (individual).
23        IPC seeks summary judgment on all claims.  Arroyo opposes the summary judgment
24   motion and, in the alternative, requests a continuance pursuant to Federal Rule of Civil Procedure
25   56(d) to take additional discovery.  IPC contends that the requested continuance is unwarranted
26   because Arroyo has not shown that she diligently pursued discovery.
27
28   _____
     [1] Private Attorneys General Act, Cal. Lab. Code §§ 2698 *et seq*.

For the reasons discussed below, the request for a continuance is DENIED. The motion for summary judgment is GRANTED as to the class claim (Claim 2), GRANTED IN PART AND DENIED IN PART as to the PAGA claim (Claim 3) and DENIED as to the individual claims (Claims 1 and 4).

## I.    BACKGROUND

Arroyo worked for IPC and its predecessor, Weyerhaeuser, from November 1998 through February 2017. Arroyo Dep. 18:2-10, Def.'s Compendium Exh. 8, ECF 51-2. IPC manufactures paper, boxes, bags, and other paper-based products. Bates Decl. ¶ 6, Def.'s Compendium Exh. 11, ECF 51-2. IPC owns twenty-six different facilities across California. *Id*. ¶ 4. Those facilities previously were owned by different companies, each of which had its own policy regarding use of uniforms and its own method of timekeeping. *Id*.; Scharff Decl. ¶ 5, Def.'s Compendium Exh. 9, ECF 51-2. As a result, the uniform policies and timekeeping methods differ among IPC's California facilities. Bates Decl. ¶ 6; Scharf Decl. ¶ 5.

*Uniforms*

Some of IPC's facilities have handbooks that include a uniform policy, some use a stand-alone written uniform policy, and some do not have a formal written policy for uniforms. Bates Decl. ¶ 12, Def.'s Compendium Exh. 11, ECF 51-2. Employees who are required to wear a uniform by IPC are provided with the uniform at no cost to them. Bates Decl. ¶ 13. IPC pays a third party vendor such as Cintas to provide and maintain those employees' uniforms. *Id.* Employees who are not required to wear a uniform by IPC may voluntarily rent a uniform from the third party vendor by having the rental expense deducted from their paychecks. *Id*. Employees who voluntarily rent uniforms may cancel uniform service at any time. *Id.* ¶ 14.

In 2008, IPC took over the Salinas facility where Arroyo had worked since 1998; prior to that time the Salinas facility was operated by Weyerhaeuser. Bates Decl. ¶ 8; Arroyo Decl. ¶ 2, ECF 40-2. It does not appear that the Salinas facility ever had a formal uniform policy. Arroyo testified that when she began working for Weyerhaeuser in 1998, her supervisor told her to wear a coverall-style uniform to protect her from hot wax from the Cascader machine. Arroyo Dep. 30:10-31:5, Def.'s Compendium Exh. 8, ECF 51-2. The Cascader was one of the machines on

which Arroyo worked, both for Weyerhaeuser and for IPC. *Id.* 18:16-19:3, 31:2-16. "The 'Cascader' is named as such because wax cascades from the machine onto specialty boxes for those clients who have requested a wax coating." Bates Decl. ¶ 10, Def.'s Compendium Exh. 11, ECF 51-2. *Id.* Arroyo testified that other employees wore street clothes while working on the Cascader. Arroyo Dep. 32:1-14. However, she believed she had to wear a uniform while working on the Cascader to prevent her street clothes from becoming caked with wax, and to avoid getting burned. *Id.* 24:12-24, 33:11-34:12.

Arroyo completed a payroll deduction authorization form when she worked for Weyerhaeuser. Arroyo Dep. Exh. 8, Def.'s Compendium Exh. 8, ECF 51-2. The form authorized a "continuing uniform service deduction" for each pay period. *Id.* Arroyo was fitted for and provided with uniforms by third party vendor Cintas. Arroyo Dep. 21:24-22:7. Cintas maintained and cleaned the uniforms. *Id.* When IPC took over the Salinas facility, Arroyo continued to use the uniforms provided by Cintas, and the uniform service deduction continued to be made from her paychecks. *Id.* 22:8-22. Arroyo understood that she could cancel the uniform service at any time but she never did so. *Id.* 31:20-22, 34:21-24. Arroyo always wore a uniform at work, even when working on machines other than the Cascader, that is, machines that did not involve hot wax. *Id.* 22:23-23:2, 34:2-20.

*Timekeeping*

Fifteen of IPC's California facilities, including the Salinas facility where Arroyo worked, used the Workbrain timekeeping system during the relevant period. Bates Decl. ¶ 3. Below is an exemplar of a wage statement generated using Workbrain.

| EARNINGS | RATE | HRS. CURR | CURR | YTD |
|---|---|---|---|---|
| Regular Hours | 20.3700 | 64.70 | 1,318.01 | 4,149.77 |
| Overtime Premium | 10.1850 | 0.75 | 7.64 | 8.68 |
| Holiday | 20.3700 | 8.00 | 162.96 | 162.96 |
| Paid Sick Hrs Taken-Hrly | 20.8700 | 8.00 | 166.96 | 500.88 |
| LumpSumPay-NonGrUpNonPen | 0.0000 | 0.00 | 0.00 | 744.00 |
| TOTAL | | | 1,655.57 | 5,566.29 |

Arroyo Dep. Exh. 1, Def.'s Compendium Exh. 8, ECF 51-2. According to IPC, this wage statement shows that the employee's regular rate of pay is $20.37 per hour; the employee's overtime pay is the regular rate plus a premium of $10.185 per hour; the employee worked a total of 64.70 hours in the pay period; of the 64.70 hours worked in the pay period, 0.75 hours were overtime hours; and the total salary earned in the pay period is $1,655.57. Arroyo contends that the wage statement is confusing, and that an employee looking at the statement would not know that the 64.70 figure in the box at the intersection of "Regular Hours" and "HRS. CURR" reflects the total hours – regular *and* overtime – worked for the pay period, and would not know that the overtime rate was the rate listed for "Regular Hours" *plus* the rate listed for the "Overtime Premium."

> *This Lawsuit*

Arroyo filed this action in the Monterey County Superior Court on September 27, 2017, asserting multiple wage and hour violations against IPC on behalf of a putative class of California employees. *See* Notice of Removal, Exh. A, ECF 1. IPC removed the action to federal district court under the Class Action Fairness Act of 2005 ("CAFA"). *See* Notice of Removal, ECF 1. Arroyo immediately filed a first amended complaint as of right. *See* FAC, ECF 9. After two rounds of motion practice, Arroyo filed the operative third amended complaint ("TAC"), containing four claims for relief. *See* TAC, ECF 38. Those claims are: (1) failure to reimburse uniform expenses in violation of Cal. Lab. Code § 2802; (2) failure to provide accurate wage statements in violation of Cal. Lab. Code § 226; (3) penalties under PAGA; and (4) violations of California's UCL, Cal. Bus. & Prof. Code § 17200 *et seq*.

Arroyo sought certification of three classes: (a) all non-exempt manufacturing employees who were employed by IPC in the State of California at any time from September 27, 2013, through the present, and who paid for uniform expenses (the "Expense Reimbursement Class"); (b) all non-exempt employees who were employed by IPC in the State of California and who were paid overtime wages at any time from January 27, 2017, through the present (the "Wage Statement Class"); and (c) all non-exempt employees who were employed by IPC in the State of California and who were provided wage statements containing payment for overtime wages that were created

4

from data from the Workbrain system at any time from January 27, 2017, through the present (the "Workbrain Wage Statement Sub-Class").

On April 4, 2019, the Court issued an order granting in part and denying in part Arroyo's motion for class certification. *See* Order Granting in Part and Denying in Part Plaintiff's Motion for Class Certification, ECF 48. The Court granted certification as to Claim 2 for violation of § 226 and Claim 4 for violation of the UCL, to the extent those claims are based on wage statements generated by the Workbrain system, and it otherwise denied certification. *See id.* at 12. In her opposition to the present motion for summary judgment, Arroyo clarifies that Claim 4 for violation of the UCL is not based on wage statement violations under Cal. Labor Code § 226, but only on business expense violations under Cal. Labor Code § 2802 and related code sections. *See* Opp. at 26, ECF 52. Accordingly, Claim 4 for violation of the UCL is an individual claim only.

## II.    DISCUSSION

IPC seeks summary judgment on all claims. Arroyo opposes the motion for summary judgment and, in the alternative, seeks a continuance under Federal Rule of Civil Procedure 56(d) for the purpose of conducting additional discovery. Arroyo also objects to evidence submitted by IPC in support of its motion. The Court addresses Arroyo's Rule 56(d) motion and evidentiary objections before turning to the merits of IPC's summary judgment motion.

### A.    Rule 56(d) Motion for Continuance

IPC's motion for summary judgment relies in part on the declaration of Jan Scharff, who worked for IPC in various capacities over the years, most recently as IPC's Global Payroll, Compliance and Project Lead. *See* Scharff Decl. ¶ 2, Def.'s Compendium Exh. 9, ECF 51-2. Scharff's declaration is offered by IPC to prove its good faith belief that its wage statements complied with § 226. Arroyo asserts that she was completely surprised by the Scharff declaration because IPC never disclosed Scharff as a witness in its initial or supplemental disclosures as required under Federal Rule of Civil Procedure 26. Arroyo requests that if the Court is inclined to grant summary judgment for IPC based on a finding of good faith, the Court grant a continuance to permit Arroyo to depose Scharff on the issue of good faith and to take other relevant discovery. IPC opposes the request for a continuance, arguing that Arroyo's assertion that IPC failed to

disclose Scharff in violation of Rule 26 is disingenuous given that Scharff was identified as IPC's person most knowledgeable ("PMK") with respect to all wage statement topics and was deposed by Arroyo on January 7, 2019.

Rule 56(d) provides in relevant part that: "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). "The burden is on the party seeking additional discovery to proffer sufficient facts to show that the evidence sought exists, and that it would prevent summary judgment." *Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1161 n.6 (9th Cir. 2001). The party seeking additional discovery also must demonstrate that he or she acted diligently to pursue discovery in the past. *See id.* The district court's ruling on a request for a continuance is reviewed for abuse of discretion. *See id.* "[T]he district court does not abuse its discretion by denying further discovery if the movant has failed diligently to pursue discovery in the past." *Id.* (internal quotation marks and citation omitted). "Stated another way, [the appellate court] will only find that the district court abused its discretion if the movant diligently pursued its previous discovery opportunities, and if the movant can show how allowing additional discovery would have precluded summary judgment." *Id.* (internal quotation marks and citation omitted).

The Court finds that Arroyo has not shown diligence in pursing discovery. While Arroyo claims that Scharff was not disclosed as a witness in IPC's disclosures or supplemental disclosures, Arroyo does not deny that Scharff was identified as IPC's PMK *and deposed* in January 2019. "Under FRCP 26(a), a party's initial disclosures must identify witnesses who are 'likely to have discoverable information . . . that the disclosing party may use to support its claims or defenses.'" *Nuance Commc'ns, Inc. v. ABBYY Software House*, No. C 08-02912 JSW MEJ, 2012 WL 2838431, at *1 (N.D. Cal. July 10, 2012) (quoting Fed. R. Civ. P. 26(a)). "There is also an affirmative obligation to supplement these initial disclosures 'in a timely manner' if they become incomplete or incorrect." *Id.* (quoting Fed. R. Civ. P. 26(e)(1)(A)). "Supplementation, however, is not mandatory if the additional or corrective information has been made known to the

other parties during the discovery process or in writing." *Id.* (internal quotation marks, citation, and alteration omitted). Arroyo's counsel, Larry W. Lee, concedes that "[o]n January 7, 2019, Plaintiff took the deposition of Jan Scharff, who was designated as Defendants' Rule 30(b)(6) corporate representative witness on topics related to Defendants' policies and practices on the issue of wage statements as to the class, including what information appears on the wage statements and deductions made from wage statements." Lee Decl. ¶ 2, ECF 52-1. Given that Scharff was identified as IPC's PMK with respect to wage statements, and Schraff's deposition was actually taken by Arroyo *ten month*s before IPC filed its summary judgment motion, the Court finds no merit in Arroyo's contention that IPC breached its disclosure obligations with respect to Scharff.

Mr. Lee represents that Arroyo limited her deposition of Scharff, and has limited all other discovery, to class certification issues. *See* Lee Decl. ¶¶ 2-4. Mr. Lee states that "[a]side from topics related to class certification, Plaintiff has not yet conducted discovery relating to the merits of her claims." Lee Decl. ¶ 4. Mr. Lee suggests that it would be unfair for the Court to grant summary judgment for IPC without first granting Arroyo an opportunity to depose Scharff and take other merits discovery.

Arroyo's failure to take any merits discovery to date is inexplicable. The Court did not phase discovery in this case. The case schedule was set at the Initial Case Management Conference on March 29, 2018 and was memorialized in a Case Management Order issued on the same date. *See* Case Management Order, ECF 21. The Case Management Order clearly set the "Last Day to Hear Dispositive Motions" for November 7, 2019. *See id.* Under long-settled standards governing summary judgment, Arroyo was on notice that if IPC were to meet its initial burden on summary judgment, she would have the burden to "designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). Arroyo similarly was on notice that, as the non-moving party, she would have the burden at summary judgment to "come forth with evidence from which a jury could reasonably render a verdict" in her favor. *Id.* Under these circumstances, Arroyo's failure to take merits discovery during Scharff's deposition – or *any* merits discovery – prior to the scheduled

summary judgment hearing date shows a complete lack of diligence.

At the hearing, Arroyo's counsel argued that the Court should excuse the failure to take merits discovery and grant the requested Rule 56(d) continuance because an adverse summary judgment ruling would be binding not only on Arroyo but also on the certified class. Counsel suggested that the Court has a "fiduciary duty" to protect the rights of absent class members. Arroyo has not cited, and the Court has not discovered, any authority for the proposition that the diligence requirement for Rule 56(d) relief does not apply when the non-diligent party is the representative of a certified class. The Court's obligation runs to *both* sides in this litigation, and Arroyo has not presented any factual or legal basis for forcing IPC to rebrief and relitigate its summary judgment motion because Arroyo chose to delay merits discovery. When the Court asked at the hearing whether Arroyo would be willing to bear the expense her lack of diligence would cost IPC in the event a continuance were granted, Arroyo's counsel stated that Rule 56(d) did not require Arroyo to bear that cost. When the Court asked why Arroyo had not filed a request to modify the case schedule at any point between issuance of the class certification order in April 2019 and the October 2019 deadline to file summary judgment motions, Arroyo's counsel was unable to offer a satisfactory explanation. Under these circumstances, the Court finds that Arroyo's inability to present evidence to controvert Scharff's declaration is entirely of Arroyo's own making and was entirely preventable.

The party opposing summary judgment "cannot complain if it fails to pursue discovery diligently before summary judgment." *Brae Transp., Inc. v. Coopers & Lybrand*, 790 F.2d 1439, 1443 (9th Cir. 1986); *see also In re Fu*, 739 F. App'x 432, 434-35 (9th Cir. 2018) ("It is not an abuse of discretion to deny a Rule 56(d) motion when the moving party failed to pursue discovery diligently earlier in the litigation."). Because it is apparent from this record that Arroyo "failed diligently to pursue discovery in the past," *see Chance*, 242 F.3d at 1161 n.6, Arroyo's request for a continuance of the summary judgment motion pursuant to Rule 56(d) is DENIED.

**B.      Arroyo's Evidentiary Objections**

Arroyo raises a number of objections to evidence submitted by IPC in support of its summary judgment motion. Those objections are not well-taken for the reasons discussed below.

### 1. IPC's Exhibits 3-5 (DLSE and DOL Materials)

Arroyo objects to IPC's Exhibits 3, 4, and 5, which are publications of the U.S. Department of Labor and California Department of Industrial Relations indicating that the overtime rate properly may be displayed as a "premium" equaling one-half the regular rate of pay. Arroyo does not challenge the authenticity of the documents or dispute that documents of this type generally may be considered by the Court. She asserts that the documents should be stricken pursuant to Federal Rule of Evidence 402 on relevance grounds. However, the documents are relevant to the issue for which they are cited, as they constitute examples of instances in which the overtime rate has been described by state and federal regulators as a "premium" of one-half the regular rate of pay. The objections to IPC's Exhibits 3, 4, and 5 are OVERRULED.

### 2. IPC's Exhibit 9 (Scharff Decl.)

Arroyo objects to and seeks to exclude Scharff's declaration based on IPC's asserted failure to disclose Scharff earlier in the litigation. That objection is without merit for the reasons discussed above in connection with Arroyo's Rule 56(d) motion. Arroyo also objects to various portions of Scharff's declaration for lack of foundation, lack of personal knowledge, and lack of relevance. However, paragraphs 4 and 12 lay a foundation for Scharff's statements by explaining where she acquired her knowledge; paragraphs 7-10 discuss Scharff's presence at the March 2011 meeting and show her personal knowledge of the results of that meeting; and paragraphs 8-11 are relevant to the issues in this case because they bear on IPC's assertion that it had a good faith belief that its wage statements complied with Cal. Lab. Code § 226. Arroyo's objections to the Scharff declaration are OVERRULED.

### 3. IPC's Exhibit 10 (Scharff Notes)

Arroyo objects to Scharff's notes from the March 2011 meeting as irrelevant. The notes are relevant to IPC's assertion that it had a good faith belief that its wage statements complied with Cal. Lab. Code § 226. Arroyo also contends that the notes should be stricken, or that she should be given leave to take discovery regarding the notes, because they were not disclosed earlier. IPC's counsel has submitted a declaration stating that the notes were not discovered by counsel until late August 2019 and were produced to Arroyo in early September 2019. *See* Olsen

Suppl. Decl. ¶ 5, ECF 53-1. The notes total only two pages. *See id.* Under these circumstances, the Court finds that IPC met its obligations to supplement its disclosures in a timely fashion. Arroyo did not seek a continuance of the summary judgment hearing as a result of the disclosure of the notes. Arroyo's objections to the Scharff notes are OVERRULED.

### 4. IPC's Exhibit 12 (HR Email)

Arroyo objects to an email sent between two of IPC's Human Resources representatives, indicating that optional uniform services can be cancelled at any time. Arroyo asserts that although the email is authenticated by Derrick A. Bates, Bates lacks sufficient personal knowledge because he was not the sender or recipient of the email. However, Bates is IPC's Regional Human Resources Manager, and in that role he has knowledge of the email which is maintained as a business record. Arroyo's objections to the email are OVERRULED.

### 5. IPC's Exhibits 13-65 (Employee Declarations)

Finally, Arroyo objects to IPC's Exhibits 13 through 65, which are declarations of IPC's employees. Arroyo argues that these employees were not disclosed in IPC's initial or supplementary disclosures; they are inherently biased; they are boilerplate and conclusory; and they are irrelevant. Arroyo acknowledges that the Court accepted the declarations as evidence at class certification, but she re-asserts her evidentiary objections to the declarations to preserve the record for appeal. The objections are not well-taken. The declarations were provided to Arroyo in January 2019. There is no indication that the declarations are not credible. And although Arroyo is correct that injury under § 226(e) is evaluated under an objective standard, the employees' subjective experiences bear on the objective reasonableness of the parties' competing views of the wage statements. Arroyo's objections to the employees' declarations are OVERRULED.

### C. IPC's Motion for Summary Judgment

IPC contends that it is entitled to summary judgment on all of Arroyo's claims. IPC first addresses the class claim for failure to provide accurate wage statements in violation of Cal. Lab. Code § 226, then Arroyo's individual claims for failure to reimburse uniform expenses in violation of Cal. Lab. Code § 2802 and the UCL, and finally the PAGA claim. Arroyo asserts that summary judgment is not warranted with respect to any of the claims. The Court addresses the parties'

arguments in turn after setting forth the applicable legal standard.

### 1. Legal Standard

"A party is entitled to summary judgment if the 'movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *City of Pomona v. SQM North America Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). "The moving party initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle*, 627 F.3d at 387. "Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial." *Id.* "[T]he non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* "The court must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor." *City of Pomona*, 750 F.3d at 1049. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id.* (internal quotation marks and citation omitted).

### 2. Class Claim for Inaccurate Wage Statements (Claim 2)

Claim 2 alleges that IPC failed to provide accurate wage statements in violation of Cal. Lab. Code § 226(a)(2) and (a)(9). The Court granted class certification as to Claim 2 to the extent the claim is based on wage statements generated by the Workbrain system. *See* Order Granting in Part and Denying in Part Plaintiff's Motion for Class Certification, ECF 48.

California Labor Code § 226 provides in relevant part that: "An employer, semimonthly or at the time of each payment of wages, shall furnish to his or her employee, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately if wages are paid by personal check or cash, an accurate itemized statement in writing showing . . . (2) total hours worked by the employee, . . . and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee." Cal. Lab. Code § 226(a).

"An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a)" may to recover the greater of actual damages or

statutory penalties. Cal. Lab. Code § 226(e)(1). An employee is deemed to suffer injury if the employer fails to provide accurate and complete information as required by § 226(a) and "the employee cannot promptly and easily determine" the required information from the wage statement alone. Cal. Lab. Code § 226(e)(2)(B). The statute defines "promptly and easily determine" to mean "a reasonable person would be able to readily ascertain the information without reference to other documents or information." Cal. Lab. Code § 226(e)(2)(C).

"Thus, a claim for damages under Section 226(e) requires a showing of three elements: (1) a violation of Section 226(a); (2) that is "knowing and intentional"; and (3) a resulting injury." *Willner v. Manpower Inc.*, 35 F. Supp. 3d 1116, 1128 (N.D. Cal. 2014). IPC asserts that Arroyo cannot establish any of these elements. First, IPC contends that Arroyo cannot show a violation of § 226(a)(2) or (a)(9) because the wage statements contain all required information. Second, IPC argues that any violation of § 226 was not "knowing and intentional." Third, IPC contends that Arroyo cannot show that the asserted violations of § 226(a) caused injury to her or class members. Arroyo argues that the record evidence is sufficient to preclude a finding for IPC on each of the three elements.

Before turning to the parties' arguments with respect to these elements, the Court addresses IPC's more general argument that its wage statements satisfy the statute's purpose. "The Legislature enacted section 226 to ensure an employer documents the basis of the employee compensation payments to assist the employee in determining whether he or she has been compensated properly." *Soto v. Motel 6 Operating, L.P.*, 4 Cal. App. 5th 385, 390 (2016). IPC argues that *Soto* illustrates that § 226 is not a "labeling" statute, and that there is no single way to satisfy its requirements. *See* Def.'s Motion at 13, ECF 51. As *Soto* recognized, however, § 226(a) contains "nine separate categories that *must* be included on wage statements." *Id.* at 391. It is Arroyo's contention that two of those nine categories are not included in IPC's wage statements. The Court's first step in evaluating IPC's summary judgment motion with respect to § 226, then is to determine whether IPC has established that its wage statements contain the two categories Arroyo claims are not included in the wage statements – § 226(a)(2) and (a)(9).

### a. Statutory Violation

#### i. § 226(a)(2) – Total Hours Worked

As stated above, § 226(a)(2) requires that an employer provide "an accurate itemized statement in writing showing . . . (2) total hours worked by the employee." Arroyo asserts that IPC's wage statements do not satisfy § 226(a)(2), because it would not be apparent to an employee viewing IPC's wage statements how many hours were worked during the pay period. Arroyo argues that it would be natural for an employee to think that adding the number of regular hours shown in the "HRS. CURR" column with the number of overtime hours shown in that column would result in the total hours worked. That would be incorrect, however, because the "Regular Hours" shown in the "HRS. CURR" column *are* the total hours worked. Arroyo argues that because it is not clear from the face of the wage statements that "Regular Hours" worked is the same as the total hours worked, the wage statements do not show the total hours worked as required by § 226(a)(2).

Both parties treat the issue of compliance as a legal question for the Court. That approach is consistent with the cited decisions, in which courts addressing § 226(a) claims determined as a matter of law whether the wage statements contained the information required by the statute. *See, e.g., Willner*, 35 F. Supp. 3d at 1128 ("Upon review of the materials submitted by Manpower, the Court concludes that the statements at issue do not contain the requisite [information required by § 226(a)]."); *McKenzie v. Fed. Exp. Corp.*, 765 F. Supp. 2d 1222, 1229 (C.D. Cal. 2011) ("Accordingly, the Court finds that FedEx violated Section 226(a)(2) by failing to state the 'total hours worked by [an] employee' in its wage statements.").

IPC contends that its wage statements comply with § 226(a)(2), relying on *Morgan v. United Retail Inc.*, 186 Cal. App. 4th 1136 (2010). The issue presented in *Morgan* was whether § 226(a)(2) was satisfied by a wage statement that separately listed the regular and overtime hours worked during a pay period, but did not list the total hours worked during the pay period. The court found that the statute does not define the terms "showing" or "total hours worked" and therefore that the terms should be given their ordinary meaning. *Id.* at 1146. The court turned to the dictionary to ascertain that the ordinary, usual meaning of the verb "show" is "'to cause or

permit to be seen,' 'to offer for inspection,' or 'to make evident or apparent: serve as the means to reveal or make visible.'" *Id.* Similarly, the court determined that the ordinary, usual meaning of the adjective "total" is "'of or relating to something in its entirety,' 'viewed as an entity: complete in all details,' or 'constituting an entire number or amount.'" *Id.* "Based on the plain and commonsense meaning of these words," the court concluded that § 226(a)(2) was satisfied where the defendant's "wage statements accurately listed the total number of regular hours and the total number of overtime hours worked by the employee during the pay period." *Id.* at 1147.

The *Morgan* court rejected the plaintiff's argument that the wage statements were non-compliant because they did not contain a separate line showing the total of all hours worked, concluding that "[t]he employee could simply add together the total regular hours figure and the total overtime hours figure shown on the wage statement to arrive at the sum of hours worked." Morgan, 186 Cal. App. 4th at 1147. The court determined that "[t]here is nothing in the plain language of section 226 to support Morgan's argument that wage statements which accurately list the total regular hours and overtime hours worked during the pay period must also contain a separate category with the sum of those two figures." *Id.*

*Morgan* is distinguishable from the present case in a critical respect. In *Morgan* it was apparent from the face of the wage statements that the total hours worked was the sum of the regular and overtime hours worked, such that an employee easily could determine the total hours worked during the pay period by doing simple math. In that circumstance, the *Morgan* court held, the absence of a separate line doing the math – that is, providing the sum of the regular and overtime hours – did not render the wage statements non-compliant. In the present case, however, the total hours worked is *not* the sum of the regular hours and overtime hours shown in the "HRS. CURR" column of IPC's wage statements. Instead, the "Regular Hours" hours worked *include* the overtime hours worked. Thus, in the exemplar provided above, an employee taking the approach described in *Morgan* – adding 64.7 regular hours and 0.75 overtime hours to obtain the total hours worked – would double-count the 0.75 overtime hours. IPC does not explain how an employee would be able to tell from the face of its wage statements that the "Regular Hours" worked includes the overtime hours worked, or that the "Regular Hours" worked equals the total

hours worked.  Thus, IPC's reliance on *Morgan* is misplaced.

Arroyo argues that *McKenzie v. Fed. Exp. Corp.* is a more analogous case.  In *McKenzie*, the defendant's wage statements listed three categories of hours: "OvrTimePrm," "Overtime," and "Reg Earn," and did not list the total hours worked during the pay period.  The number of overtime hours was listed twice, once in the "OvrTimePrm" category and once in the "Overtime" category.  The defendant argued that the wage statements complied with § 226(a)(2), citing *Morgan* for the proposition that the failure to include a separate line for total hours worked did not render the wage statements non-compliant.  *McKenzie*, 765 F. Supp. 2d at 1229.  The *McKenzie* court pointed out that "[u]nlike *Morgan*, the total regular and overtime hours listed in FedEx's wage statements, when added together, do not sum up to the total hours worked by the employee during the pertinent time period."  *Id.*  The district court found that without the additional information, not disclosed on the wage statements, that overtime hours were listed twice, "an employee cannot simply arrive at the sum of hours worked."  *Id.* (internal quotation marks and citation omitted).  The district court concluded:  "Thus, the *Morgan* rationale, which contemplates that an employee can determine his or her total hours worked by summing up the figures on a wage statement without need to reference any other time records or other documents, does not apply to FedEx's somewhat idiosyncratic wage statement."  *Id.*

This Court agrees with Arroyo that the present case is more like *McKenzie* than *Morgan*.  An employee viewing IPC's exemplar wage statement could not determine the total number of hours worked during the pay period without the additional information, not disclosed on the wage statement, that the "Regular Hours" figure includes the separately listed "Overtime Premium" hours such that the "Regular Hours" worked *are* the total hours worked.

IPC asserts that the Ninth Circuit "declined to apply the analysis of *McKenzie*" in *Hernandez v. BCI Coca-Cola Bottling Co.*, 554 F. App'x 661 (9th Cir. 2014).  In *Hernandez*, the Ninth Circuit affirmed the district court's grant of summary judgment for the defendant, concluding that an employee could determine the number of overtime hours worked during the pay period by subtracting regular hours from total hours.  *Id.* at 662.  Similarly, the Ninth Circuit concluded that an employee could add the two component overtime rates on the wage statements

to determine his overall overtime rate. *Id.* The Ninth Circuit distinguished *McKenzie*, noting that the *McKenzie* wage statements did not provide a line item for total hours worked, whereas the wage statements in the case before it "provided such a line item, allowing Hernandez to do the math to determine the § 226(a)-required information." *Id.* This Court does not read *Hernandez* as declining to apply *McKenzie*, but rather as distinguishing *McKenzie*. The present case is not distinguishable from *McKenzie* on the same grounds found in *Hernandez*. The wage statements in the present case do not provide a line item for total hours worked or otherwise indicate that that the "Regular Hours" figure represents the total hours worked.

After reviewing *Morgan*, *McKenzie*, *Hernandez*, and the other cases cited by the parties, the Court concludes that IPC has failed to establish as a matter of law that its wage statements show the total hours worked as required by Cal. Lab. Code § 226(a)(2).

### ii. § 226(a)(9) – Hourly Rates

Under § 226(a)(9), an employer must provide "an accurate itemized statement in writing showing . . . (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee." Cal. Lab. Code § 226(a). Arroyo asserts that IPC's wage statements do not satisfy § 226(a)(9) because it lists the overtime rate as one-half the hourly rate instead of one and one-half times the hourly rate. As reflected in the exemplar set forth above, IPC's wage statements contain lines identifying the rate for "Regular Hours" as $20.37 per hour, and identifying the "Overtime Premium" as $10.185 per hour.

IPC argues that its wage statements comply with § 226(a)(9), citing publications of the U.S. Department of Labor and California Department of Industrial Relations indicating that the overtime rate properly may be displayed as a "premium" equaling one-half the regular rate of pay. *See* Def.'s Compendium Exhs. 3-5, ECF 51-2. IPC also argues that it is appropriate to calculate overtime hours by applying the regular (base) rate of pay to all hours worked and then adding an "Overtime Premium" of one-half the regular (base) rate for overtime hours worked.

Arroyo argues that a federal district court in this Circuit rejected identical arguments in *Wright v. Renzenberger, Inc.*, No. CV 13-6642 FMO (AGRx), 2018 WL 1975076 (C.D. Cal. Mar. 8, 2018). In *Wright*, the plaintiffs asserted that the defendant's wage statements violated §

16

226(a)(9) because they listed the overtime rate as "one-half of the effective hourly rate, even though the rate at which overtime hours were actually paid was one and one-half times the regular hourly rate." *Id.* at *9. "The wage statements also included overtime hours worked in the 'regular' earnings line." *Id.* The defendant argued that it properly could calculate overtime pay by calculating the regular rate of pay for all hours worked, and then adding an overtime premium of one-half the regular rate of pay for overtime hours worked. *See id.* While the district court agreed that the defendant properly could calculate overtime pay under the method described, the court noted that "plaintiffs do not challenge defendant's method of calculating overtime pay." *Id.* at *10. "Rather, plaintiffs challenge[d] defendant's method for *displaying* the workers' rates on their pay stubs as required by Labor Code § 226(a)(9)." *Id.* The district court found that the wage statements neither showed the accurate overtime rate of pay nor showed the accurate number of hours worked at the regular rate of pay. *See id.* at *11.

IPC asserts that *Wright* is distinguishable because the employer in that case compensated workers using both a base pay rate and a piece rate. IPC contends that that unique way of compensating employees resulted in wage statements that did not accurately show the hourly rates or the piece rates. That distinction did not play into the *Wright* court's analysis of the § 226(a)(9) issue discussed above. *See Wright*, 2018 WL 1975076, at *11. The *Wright* court concluded in a straightforward fashion that the defendant "failed to meet the requirements of Labor Code § 226 because its pay stubs do not make the overtime rate or actual number of hours worked at the regular hourly rate 'evident or apparent' to the employee."

However, this Court disagrees with the *Wright* court's conclusion that the overtime rate is unclear where the statements list an "Overtime Premium" of one-half the regular rate of pay, rather than an "Overtime Rate" of one and one-half the regular rate of pay. The exemplar wage statement clearly states the "Regular Hours" rate of $20.37 per hour, and directly underneath that states the "Overtime Premium" of $10.185 per hour. The Court finds as a matter of law that this information is sufficient to show the overtime rate as required by § 226(a)(9).

IPC cites *Maldonado v. Epsilon Plastics, Inc.*, 22 Cal. App. 5th 1308 (2018) for the proposition that listing an incorrect overtime rate does not constitute a violation of § 226(a)(9). In

*Maldonado*, the defendant employer adopted an alternative workweek schedule under which employees worked a 12-hour day and were paid for 10 hours at the regular rate of pay and 2 hours of overtime. *See Maldonado*, 22 Cal. App. 5th at 1312. After a bench trial, the trial court concluded that the alternative work schedule had not been properly adopted, and that the employer's failure to pay overtime for the 9th and 10th hours of work subjected it to liability for unpaid overtime, interest, waiting time penalties, inaccurate wage statement penalties, and attorney's fees. *See id.* The state appellate court reversed the inaccurate wage statement penalties, noting that "the pay stubs were accurate in that they correctly reflected the hours worked and the pay received." *Id.* at 1336. The appellate court held that the fact that the employer's pay scheme "ultimately turned out to be invalid mandates that the employees receive unpaid overtime, interest, and attorney's fees," but "does not mandate that they also receive penalties for the wage statements which accurately reflected their compensation under the rates at which they had worked at the time." *Id.* at 1337. *Maldonado* has no bearing on the present case. Arroyo does not claim that she was paid the wrong rate. Her claim is that the pay statement did not accurately reflect the correct overtime rate. However, as discussed above, that claim is without merit for reasons unrelated to *Maldonado*.

The Court concludes as a matter of law that IPC's wage statements show the applicable overtime rate as required by Cal. Lab. Code § 226(a)(9).

### b. "Knowing and Intentional"

Liability arises under § 226(e) only where an employee suffers "injury as a result of a *knowing and intentional* failure by an employer to comply with subdivision (a)." Cal. Lab. Code § 226(e)(1) (emphasis added). IPC asserts that any violations of § 226(a) were not knowing and intentional, because IPC had a good faith belief that its Workbrain wage statements were in compliance with § 226(a). Arroyo contends that there is no good faith defense to liability under § 226(e), and that IPC's violations of § 226(a) were knowing and intentional within the meaning of the statute.

### i. Legal Standard

"Courts have diverged over the degree of intentionality required to establish a violation of

§ 226." *Stafford v. Brink's, Inc.*, No. CV-14-1352-MWF (PLAx), 2014 WL 12586066, at *5 (C.D. Cal. Aug. 5, 2014). The statute itself provides little guidance, stating: "For purposes of this subdivision, a 'knowing and intentional failure' does not include an isolated and unintentional payroll error due to a clerical or inadvertent mistake." Cal. Lab. Code § 226(e)(3). The statute also directs that "[i]n reviewing for compliance with this section, the factfinder may consider as a relevant factor whether the employer, prior to an alleged violation, has adopted and is in compliance with a set of policies, procedures, and practices that fully comply with this section." *Id.* Two lines of cases have developed regarding the correct interpretation of the "knowing and intentional" language in § 226(e), as discussed below.

In one of the most recent decisions to address the issue, *Magadia*, the court concluded that "[t]he majority view is that an employer's good faith belief that it is not violating the California Labor Code precludes a finding of a knowing and intentional violation." *Magadia v. Wal-Mart Assocs., Inc.*, 384 F. Supp. 3d 1058, 1082 (N.D. Cal. 2019) (collecting cases). The *Magadia* court, as well as several other courts in this district, have found the "knowing and intentional" requirement of California Labor Code § 226 to be akin to the "willfulness" requirement of California Labor Code § 203. *See Utne v. Home Depot U.S.A., Inc.*, No. 16-CV-01854-RS, 2019 WL 3037514, at *6 (N.D. Cal. July 11, 2019) ("[T]he 'knowing and intentional' standard applicable to Section 226 is closely related to the 'willfulness' standard which governs Section 203."); *Magadia*, 384 F. Supp. 3d at 1081 (discussing relationship between "knowing and intentional" standard under § 226 and "willful" standard under § 203; *Woods v. Vector Mktg. Corp.*, No. C-14-0264 EMC, 2015 WL 2453202, at *4 (N.D. Cal. May 22, 2015) ("The similarity between 'knowingly and intentionally' under Section 226 and 'willfully' under Section 203 with respect to their incorporation of a good faith dispute defense is consistent with the Labor Code generally for several reasons.").

Section 203 imposes waiting time penalties when an employer "willfully fails to pay" wages upon termination of employment. Cal. Lab. Code § 203(a). The California Code of Regulations provides that "a good faith dispute that any wages are due will preclude imposition of waiting time penalties under Section 203." Cal. Code Regs. tit. 8, § 13520. In *Utne*, the court

observed that, "Given the similarity between these two governing standards, it is only logical that the good faith defense would apply to both Sections, not merely to Section 203." *Utne*, 2019 WL 3037514, at *6. In *Woods*, the court opined that "[i]t would seem ironic if the good faith dispute defense applied to Section 203, which involves failure to timely pay wages, but not to Section 226, which involves inaccurate wage statements." *Woods*, 2015 WL 2453202, at *4 n.3. The *Woods* court reasoned that "[i]f anything, failure to pay wages would seem to warrant lesser tolerance of defenses than failing to provide accurate wage statements." *Id*.

Courts finding that a good faith belief in compliance precludes liability under § 226 also have relied on "the general understanding of 'knowing and intentional.'" *Magadia*, 384 F. Supp. 3d at 1083. Citing dictionary definitions for the words "knowing" and "intentional," the *Magadia* court concluded that "[k]nowingness and intentionality are scienter requirements." *Id*. The *Magadia* court reasoned that "[t]o adopt an interpretation that would essentially read out any scienter requirement from 'knowing and intentional'" would create tension with the commonly-understood legal meanings of these words." *Id*. In *Boyd*, the court concluded that "[p]enalizing employers who, in good faith but ultimately incorrectly, believe that their employees are exempt, and on this basis do not comply with § 226, is inconsistent with the requirement that a violation be 'knowing and intentional.'" *Boyd v. Bank of Am. Corp.*, 109 F. Supp. 3d 1273, 1308-09 (C.D. Cal. 2015); *see also Stafford*, 2014 WL 12586066, at *5 ("This good faith dispute precludes a finding that any injury was knowing and intentional.").

The other line of cases has "adopted [the view] . . . that the knowing and intentional requirement can be satisfied by simply showing that an employer provided an inadequate wage statement not as a result of clerical error or inadvertent mistake." *Magadia*, 384 F. Supp. 3d at 1082. "To establish that Defendants' violation of § 226(a) was 'knowing and intentional'" under this alternate approach, the plaintiff must demonstrate only that the defendant was "aware of the factual predicate underlying the violations." *Cabardo v. Patacsil*, 248 F. Supp. 3d 1002, 1010 (E.D. Cal. 2017) (internal quotation marks, citation, and alteration omitted). In *Willner*, the court described and applied that approach as follows: "a 'knowing and intentional' violation requires a showing that the defendant knew that facts existed that brought its actions or omissions within the

provisions of section 226(a) – i.e., that Manpower knew that its wage statements did not contain the inclusive dates of the period for which its employees were paid, and knew that they did not contain Manpower's address."  *Willner*, 35 F. Supp. 3d at 1131.  The *Willner* court opined that the plaintiff was "not required to demonstrate that Manpower knew that this conduct, if otherwise proven, was unlawful."  *Id.*; *see also Cabardo*, 248 F. Supp. 3d at 1010 ("However, Plaintiffs are not required to demonstrate that Defendants knew their conduct was unlawful.").

Courts adopting this approach have found that "[w]hether the employer knew it was violating section 226(a) is irrelevant."  *Novoa v. Charter Commc'ns, LLC*, 100 F. Supp. 3d 1013, 1027-28 (E.D. Cal. 2015) (internal quotation marks and citation omitted) (collecting cases).  Those courts have characterized arguments based on good faith as "a mistake of law defense" that "stands contrary to the often repeated legal maxim:  ignorance of the law will not excuse any person, either civilly or criminally."  *Id.* (internal quotation marks and citation omitted); *see also Cabardo*, 248 F. Supp. 3d at 1010.  They also reasoned that considering the employer's good faith is "not consistent with the text of § 226(e) itself," noting that under § 226(e)(3) factfinders may consider whether the employer has adopted a set of policies that comply with § 226.  *Cabardo*, 248 F. Supp. 3d at 1010; *see also Troester v. Starbucks Corp.*, 387 F. Supp. 3d 1019, 1030 (C.D. Cal. 2019), *order clarified on reconsideration*, No. CV 12-07677-CJC (PJWx), 2019 WL 2902487 (C.D. Cal. May 21, 2019); *Novoa*, 100 F. Supp. 3d at 1028.  This statutory language would be irrelevant, the argument goes, if an employer could avoid liability by establishing a good faith belief in compliance with the statute.  *See Troester*, 387 F. Supp. 3d at 1030; *Cabardo*, 248 F. Supp. 3d at 1010.  The courts that have found an employer's good faith irrelevant to the "knowing and intentional" element also have noted that while the California Code of Regulations expressly provides that a good faith belief in compliance precludes liability under § 203, no such provision exists with respect to § 226.  *See Troester*, 387 F. Supp. 3d at 1030.

This Court finds persuasive those decisions holding that an employer's good faith belief that it is in compliance with § 226 precludes liability under that statute.  While courts adopting the contrary view disapprove of "read[ing] a good faith defense into" § 226(e), *see Novoa*, 100 F. Supp. 3d at 1029, it appears to this Court that failing to consider the employer's good faith belief

would read *out* of § 226(e) the mental state implicated by the phrase "knowing and intentional."

### ii.        Analysis

IPC contends that its good faith belief that its wage statements complied with § 226 precludes liability under the statute. IPC submits the declaration of Jan Scharff, who worked for IPC in various payroll capacities from 1998 to 2018, when she retired. Scharff Decl. ¶ 2, Def.'s Compendium Exh. 9, ECF 51-2. From April 2017 to November 2018, Scharff was IPC's Global Payroll, Compliance and Project Lead. *Id.* Her responsibilities included ensuring that employees were paid correctly. Scharff Decl. ¶ 3. To that end, Scharff purchased a copy of the American Payroll Association's text book and desk reference; signed up to receive newsletters and email alerts from the American Payroll Association about changes to payroll requirements; and received legal updates regarding wage statements from IPC's third party payroll vendor. Scharff Decl. ¶ 4.

In 2011, Scharff organized an internal audit of IPC's compliance with wage statement requirements for California and New York. Scharff Decl. ¶¶ 7-11. Scharff and other IPC employees attended a meeting on March 30, 2011 to discuss those states' requirements, including requirements found in California Labor Code § 226. Scharff Decl. ¶ 7. Scharff and the other meeting members compared each requirement of § 226 to IPC's Workbrain wage statements to determine whether IPC's Workbrain wage statements were in compliance. Scharff Decl. ¶ 8. Scharff had a printed copy of § 226 at the meeting, and she added a hand-written checkmark to each requirement as the meeting members determined that it was satisfied by the Workbrain wage statements. Scharff Decl. ¶ 10; Scharff Notes, Def.'s Compendium Exh. 10, ECF 51-2. The meeting members determined that the Workbrain wage statements were not in compliance with § 226(a)(6), after which Scharff worked with IPC's third party payroll provider to bring the wage statements into compliance by including the pay period start and end dates. Scharff Decl. ¶ 8; Scharff Notes. The meeting members determined that the Workbrain wage statements complied with all other requirements of § 226. Scharff Decl. ¶ 9. Scharff believed, and still believes, that the Workbrain wage statements comply with § 226(a)(2) by including the total number of hours worked in the box at the intersection of "Regular Hours" and "HRS. CURR." *Id.* Scharff also believed, and still believes, that the Workbrain wage statements comply with § 226(a)(9) by

showing the overtime rate as an extra one-half rate on top of the regular hourly rate.  Scharff Decl. ¶ 10.

Scharff states that as far as she knows, there were never any complaints from IPC employees claiming that they did not understand "Regular Hours" to equal the total hours worked, or claiming that they did not understand their overtime rate.  Scharff Decl. ¶¶ 9-10.  Scharff indicates that "to the extent Ms. Arroyo is now complaining that she did not understand" her wage statements, "she would be the only person I have ever heard make that complaint."  Scharff Decl. ¶¶ 9-10.  Scharff states that to her knowledge, Arroyo never made any such complaints during her employment at IPC.  Scharff Decl. ¶¶ 9-10.  Scharff represents that in all of her experience doing payroll, she has never seen any indication in a text book, treatise, newsletter, or legal alert suggesting that the way IPC shows the total hours worked and the overtime rate of pay is improper for California.  Scharff Decl. ¶ 12.  Likewise, the third party payroll vendors that IPC used never raised concerns regarding IPC's compliance with § 226.  *Id.*

Scharff's declaration and meeting notes are sufficient to meet IPC's initial burden on summary judgment to show that it had a good faith belief that it was in compliance with § 226.  As discussed above, a good faith belief that it was in compliance would preclude IPC's liability under § 226.  The burden thus shifts to Arroyo to come forward with evidence that IPC did not have a good faith belief that it was in compliance with § 226.  Arroyo has not satisfied this burden.  As discussed above in connection with Arroyo's motion for a continuance pursuant to Rule 56(d), Arroyo took no merits discovery prior to the summary judgment hearing date even though she had one and one-half years to conduct discovery in anticipation of IPC's summary judgment motion.  *See* Case Management Order, ECF 21 (reflecting that on March 29, 2018 the Court issued a case schedule setting the last day for summary judgment hearing on November 7, 2019).  Because Arroyo has no evidence to controvert IPC's showing of good faith, IPC is entitled to summary judgment on Arroyo's wage statement claims on the basis that any violation of § 226 was not "knowing and intentional."

### c.    Resulting Injury

The third element of a claim under § 226 is injury resulting from the statutory violation.

23

An employee is deemed to suffer injury if the employer fails to provide accurate and complete information as required by § 226(a) and "the employee cannot promptly and easily determine" the required information from the wage statement alone. Cal. Lab. Code § 226(e)(2)(B). The statute defines "promptly and easily determine" to mean "a reasonable person would be able to readily ascertain the information without reference to other documents or information." Cal. Lab. Code § 226(e)(2)(C). "For purposes of section 226(e), a plaintiff is 'injured' if the accuracy of any of the items enumerated in § 226(a) [including the hourly rate] cannot be ascertained from the four corners of the wage statement." *Raines v. Coastal Pac. Food Distributors, Inc.*, 23 Cal. App. 5th 667, 676 (2018) (internal quotation marks and citation omitted). "An actual injury is shown where there is a need for both additional documentation and additional mathematical calculations in order to determine whether Plaintiffs were correctly paid and what they may be owed." *Id.* (internal quotation marks and citation omitted). "In contrast, where the deficiency in the wage statement could be corrected by 'simple math,' there is no actual injury." *Id.*

### i. § 226(a)(2)

IPC contends that a reasonable employee viewing its wage statements easily could determine the total number of hours worked as required under § 226(a)(2). As discussed above in section II.C.2.a, the total hours worked is not readily ascertainable from the four corners of the wage statement. The wage statements in the present case do not provide a line item for total hours worked or otherwise indicate that that the "Regular Hours" figure represents the total hours worked.

IPC submits declarations of numerous class members stating that they were able to read and understand their wage statements. *See* Declarations, Def.'s Compendium Exh. 15. IPC also points to Arroyo's deposition testimony, in which she initially stated that she understood the 64.7 "Regular Hours" shown on the exemplar wages statement to represent the total hours worked during the pay period. *See* Arroyo Dep. 39:2-40:25, Def.'s Compendium Exh. 8, ECF 51-2. After a break in the deposition, however, Arroyo testified that she did not understand the "Regular Hours" to be the total hours worked. *See* Arroyo Dep. 56:4, 58:7-59:13, 60:15-17, Def.'s Compendium Exh. 8, ECF 51-2. IPC acknowledges that injury is measured by a reasonable

24

person standard, but it argues that the ability of class members to understand the wage statements is evidence of what a reasonable employee would understand. Arroyo argues that because the standard is an objective one, evidence of what she and class members understood is irrelevant.

"[T]he standard to establish 'injury' under section 226(e) is whether '*a reasonable person* would be able to readily ascertain the information without reference to other documents or information,' and not whether *the plaintiff or each putative class member* was able to readily ascertain the information without reference to other documents or information." *Stafford*, 2015 WL 12699458, at *7 (citing Cal. Labor Code § 226(e)(2)(C), emphasis in original). "Naturally, the more that Defendant is able to offer to demonstrate that most employees were not confused about the pay period start date, the more likely a factfinder is to conclude that a reasonable person would have been able to readily ascertain the relevant pay period start date from the wage statement." *Id.* at *10. Under this standard, the Court finds IPC's evidence that numerous employees understood the wage statements to be relevant to the issue of injury. However, given Arroyo's testimony that she did not understand the wage statements to show total hours worked, and the Court's conclusion that IPC has not established that the total number of hours worked is readily ascertainable from the four corners of the wage statement, there is at least a factual dispute whether the asserted violations of § 226(a)(2) resulted in injury to Arroyo and the class within the meaning of the statute.

### ii. § 226(a)(9)

There is no such factual dispute with respect to the asserted violations of § 226(a)(9), however. An employee easily could add the regular rate of pay, displayed as $20.37 per hour, with the overtime premium, displayed as $10.185, to determine that the overtime rate of pay is $30.555. The Court concludes no reasonable trier of fact viewing this wage statement could find that a reasonable employee would not understand that the overtime rate is one and one-half times the regular rate of pay.

### d. Conclusion re Wage Statement Claims

IPC has demonstrated that it is entitled so summary judgment on Arroyo's claims for violations of § 226(a)(2) and (a)(9) because IPC had a good faith belief that it was in compliance

with § 226 and therefore it could not have committed a knowing and intentional violation of the statute. IPC has demonstrated its entitlement to summary judgment on the § 226(a)(9) claim on the additional grounds that Arroyo cannot establish a statutory violation or resulting injury.

IPC's motion for summary judgment on Claim 2, asserting violations of Cal. Lab. Code § 226(a)(2) and (a)(9) on behalf of the class, is GRANTED.

### 3. Individual Claims for Failure to Reimburse (Claims 1 and 4)

Claim 1 alleges that IPC failed to reimburse Arroyo for uniform expenses in violation of Cal. Lab. Code § 2802. Claim 4 alleges violations of California's UCL based on the asserted failure to reimburse. The Court denied class certification for these claims, so they are individual claims asserted only on behalf of Arroyo.

### i. Claim 1 – Violation of Cal. Labor Code § 2802

California Labor Code § 2802 provides in relevant part that "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties." Cal. Lab. Code § 2802(a). "The elements of a claim under Section 2802 are: (1) the employee made expenditures or incurred losses; (2) the expenditures or losses were incurred in direct consequence of the employee's discharge of his or her duties, or obedience to the directions of the employer; and (3) the expenditures or losses were reasonable and necessary." *McLeod v. Bank of Am., N.A.*, No. 16-CV-03294-EMC, 2017 WL 6373020, at *5 (N.D. Cal. Dec. 13, 2017). "[A]n employee's failure to submit a request for reimbursement does not waive his or her rights under Section 2802." *Id.* "Rather, when the employer knows or has reason to know that the employee has incurred an expense, then it has the duty to exercise due diligence and take any and all reasonable steps to ensure that the employee is paid for the expense." *Id.* (internal quotation marks, citation, and alteration omitted).

It is undisputed that the first element is satisfied, as a $7.50 deduction for uniform service was made from Arroyo's paychecks. IPC's motion thus turns on the second element, whether Arroyo's expenditures on uniform service were incurred in direct consequence of the discharge of her duties *or* obedience to the directions of IPC; and the third element, whether the expenditures

were reasonable and necessary.

With respect to the second element, IPC presents evidence that it did not require Arroyo to wear a uniform. Several other employees at the Salinas facility where Arroyo worked stated that they were not required to wear a uniform for work and therefore wore their own clothes or voluntarily paid for uniform services from Cintas. *See* Declarations, Def.'s Compendium Exhs. 13-20, ECF 51-2. Arroyo testified that one of her coworkers did not wear a uniform when he worked on the Cascader. Arroyo Dep. 31:23-34:1, Def.'s Compendium Exh. 8, ECF 51-2. This evidence goes only to the issue of whether Arroyo's uniform expenditures were incurred in obedience to the directions of IPC. The evidence does not speak to the alternative aspect of the second element, whether Arroyo's uniform expenditures "were incurred in direct consequence of the discharge of her duties." Arroyo testified that she wore a uniform to prevent her street clothes from being covered with wax and to prevent getting burned. *See* Arroyo Dep. 24:12-24, 33:11-34:12, Def.'s Compendium Exh. 8, ECF 51-2. IPC dismisses this testimony as evidence that Arroyo merely preferred to wear a uniform without disputing Arroyo's statements that had she not worn a uniform she risked being burned or having her clothing ruined. IPC thus has failed to meet its initial burden on summary judgment. IPC has not demonstrated that Arroyo's uniform expenses were not incurred in direct consequence of the discharge of her duties.

With respect to the third element, that the expenditures or losses were reasonable and necessary, "California courts have found that necessity is by nature a question of fact and that the reasonableness of any given expenditure must turn on its own facts." *Nguyen v. Wells Fargo Bank*, No. 15-CV-05239-JCS, 2016 WL 5390245, at *9 (N.D. Cal. Sept. 26, 2016) (internal quotation marks, citation, and alteration omitted). "Consequently, summary judgment on the question of whether an expenditure is necessary for the purposes of section 2802 is only appropriate where the facts are undisputed and no conflicting inferences are possible." *Id.* That is not the case here. Arroyo's testimony that she wore a uniform to avoid getting burned or having her clothing caked with hot wax gives rise to a reasonable inference that the uniform was a necessary and reasonable expenditure.

IPC's motion appears to be based on a view that Arroyo is entitled to reimbursement of

uniform expenses only if IPC required her to wear a uniform. However, the "argument that there is a bright-line rule that only expenses that are officially required can be considered 'necessary' does not square with the case law." *Nguyen*, 2016 WL 5390245, at *9. Thus, it is appropriate to deny "summary judgment on the question of whether the expenses were 'necessary,' even though there was no express policy requiring employees to incur these expenses." *Id.*

Because IPC has failed to meet its initial burden, IPC's motion for summary judgment on Claim 2, asserting violation of Cal. Lab. Code § 2802 on behalf of Arroyo individually, is DENIED.

### ii. Claim 4 – Violation of California's UCL

Claim 4 asserts that IPC engaged in unfair and unlawful business practices in violation of California's UCL, Cal. Bus. & Prof. Code §§ 17200, *et seq*. The UCL claim is based on IPC's alleged failure to reimburse uniform expenses in violation of Cal. Lab. Code § 2802 and related statutory sections.

IPC contends that because it is entitled to summary judgment on Arroyo's individual claim for violation of Cal. Lab. Code § 2802, it likewise is entitled to summary judgment on her derivative UCL claim. *See Aleksick v. 7-Eleven, Inc.*, 205 Cal. App. 4th 1176, 1185 (2012) ("When a statutory claim fails, a derivative UCL claim also fails."). As discussed above, IPC is not entitled to summary judgment on Arroyo's § 2802 claim.[2]

Accordingly, IPC's motion for summary judgment on Claim 4, asserting violation of California's UCL on behalf of Arroyo individually, is DENIED.

### 4. PAGA Claim (Claim 3)

Claim 3 is a representative action under PAGA seeking civil penalties for IPC's alleged failure to provide accurate wage statements in violation of Cal. Lab. Code § 226 and alleged failure to reimburse business expenses in violation of Cal. Lab. Code § 2802. IPC argues that because the PAGA claim is derivative of substantive Claim 1 (business expenses) and Claim 2

---

[2] IPC also argues that it is entitled to summary judgment on Arroyo's UCL claim to the extent it is asserted on behalf of the class based on alleged violations of Cal. Lab. Code § 226. Arroyo clarifies in her opposition that she does not assert a UCL claim based on § 226. *See* Opp. at 26, ECF 52.

(wage statements), summary judgment on the PAGA claim is appropriate to the same extent that summary judgment is appropriate on the substantive claims. IPC also argues that it is entitled to summary judgment on the PAGA claim to the extent it is based on failure to reimburse business expenses under § 2802, because Arroyo has not identified a group of aggrieved employees with respect to that claim. Arroyo argues that certain elements of a direct claim under § 226 need not be proved to maintain a PAGA claim for violation of § 226, and that she is not required to identify a group of aggrieved employees to survive summary judgment on her PAGA claim for violation of § 2802.

### a. PAGA Claim for Violation of § 226

As discussed above, IPC is entitled to summary judgment on Arroyo's § 226(a)(2) claim only because IPC has established a good faith belief that it complied with § 226, which precludes a finding that any violation of the statute was "knowing and intentional." The grant of summary judgment based on a determination that Arroyo cannot establish a "knowing and intentional" violation of § 226 does not entitle IPC to summary judgment on Arroyo's PAGA claim for violation of § 226(a)(2), however. "[A] representative PAGA claim for civil penalties for a violation of section 226(a) does not require proof of injury or a knowing and intentional violation." *Raines*, 23 Cal. App. 5th at 670; *see also Lopez v. Friant & Assocs., LLC*, 15 Cal. App. 5th 773, 784 (2017) ("Because section 226(e)(1) sets forth the elements of a private cause of action for damages and statutory penalties, its requirement that a plaintiff demonstrate 'injury' resulting from a 'knowing and intentional' violation of section 226(a) is not applicable to a PAGA claim for recovery of civil penalties.").

IPC is entitled to summary judgment on Arroyo's § 226(a)(9) claim on the additional grounds that Arroyo cannot establish a statutory violation or resulting injury. Because Arroyo cannot establish a statutory violation of § 226(a)(9), she cannot maintain a PAGA claim under § 226(a)(9).

Accordingly, IPC's motion for summary judgment on the PAGA claim is GRANTED to the extent the claim is based on violation of § 226(a)(9) but DENIED to the extent the claim is based on violation of § 226(a)(2).

### b.     PAGA Claim for Violation of § 2802

IPC has not established its entitlement to summary judgment on Arroyo's § 2802 claim and thus its argument that judgment on the § 2802 claim requires judgment on the PAGA claim does not apply.  With respect to IPC's alternative argument that it is entitled to summary judgment because Arroyo has not identified a group of aggrieved employees, IPC has not cited any case holding that a PAGA representative must identify a group of aggrieved employees to survive summary judgment.

IPC argues that the PAGA claim for violation of § 2802 would be unmanageable because it would require individualized determinations whether each employee is entitled to reimbursement. IPC relies on cases dismissing or striking PAGA claims as unmanageable.  *See, e.g., Ortiz v. CVS Caremark Corp.*, No. C-12-05859 EDL, 2014 WL 1117614, at *4 (N.D. Cal. Mar. 19, 2014) (dismissing PAGA claim as unmanageable); *Amiri v. Cox Commc'ns California, LLC*, 272 F. Supp. 3d 1187, 1194 (C.D. Cal. 2017) (striking PAGA claim as unmanageable).  While it ultimately may determine that the PAGA claim for violation of § 2802 is unmanageable, IPC has not shown that is an appropriate issue for summary judgment, and the Court is not prepared to make that decision based on the single page of briefing IPC devoted to the issue in its motion. The Court therefore will deny IPC's motion for summary judgment on the PAGA claim without prejudice to reassertion of the manageability argument at trial.

The Court notes that at the hearing, Arroyo's counsel asked the Court to consider the case *Williams v. Superior Court*, 3 Cal. 5th 531 (2017), which was not cited in the briefs, on the issue of manageability.  *Williams* addressed the appropriate scope of discovery in a PAGA claim and therefore is not relevant to the issues before this Court on summary judgment.

IPC's motion for summary judgment on the PAGA claim, to the extent based on violation of § 2802, is DENIED.

//

//

//

//

### III.  ORDER

For the foregoing reasons,

(1)  Arroyo's motion for a continuance pursuant to Federal Rule of Civil Procedure 56(d) is DENIED.

(2)  IPC's motion for summary judgment is GRANTED as to Claim 2 (class claim), GRANTED IN PART AND DENIED IN PART as to Claim 3 (PAGA claim), and DENIED as to Claims 1 and 4 (individual claims).

(3)  Following this ruling, the claims remaining for trial are:

a.  Claim 1 for failure to reimburse business expenses in violation of Cal. Lab. Code § 2802 (individual claim);

b.  Claim 3 for PAGA penalties based on alleged violations of Cal. Lab. Code §§ 226(a)(2) and 2802; and

c.  Claim 4 for violation of California's UCL based on alleged violation of Cal. Lab. Code § 2802 and related code sections (individual claim).

(4)  This order terminates ECF 51.

Dated:  February 24, 2020

_____
BETH LABSON FREEMAN
United States District Judge