Larry W. Lee (State Bar No. 228175)
lwlee@diversitylaw.com
Mai Tulyathan (State Bar No. 316704)
ktulyathan@diversitylaw.com
**DIVERSITY LAW GROUP, P.C.**
515 S. Figueroa St., Suite 1250
Los Angeles, CA 90071
(213) 488-6555
(213) 488-6554 facsimile

WILLIAM L. MARDER, ESQ. (CBN 170131)
**Polaris Law Group**
501 San Benito Street, Suite 200
Hollister, CA 95023
Tel: (831) 531-4214
Fax: (831) 634-0333
bill@polarislawgroup.com

Dennis S. Hyun (State Bar No. 224240)
dhyun@hyunlegal.com
**HYUN LEGAL, APC**
515 S. Figueroa St., Suite 1250
Los Angeles, CA  90071
(213) 488-6555
(213) 488-6554 facsimile

Attorneys for Plaintiff and the Class

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELISA ARROYO, as an individual and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>INTERNATIONAL PAPER COMPANY, a New York corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.: 5:17-cv-06211-BLF<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:   December 8, 2022<br>Time:   9:00 A.M.<br>Dept.:   3 |

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on December 8, 2022, at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 3 of the United States District Court for the Northern District of California, San Jose Division, located at 280 South 1st Street, San Jose, CA 95113, before the Honorable Beth Labson Freeman, Plaintiff Elisa Arroyo ("Plaintiff") will and hereby does move the Court for an Order (1) granting final approval of the proposed class action settlement; (2) approving Class Counsel's application for attorneys' fees in the amount of $1,000,000.00 (one-third of the Gross Settlement Amount) and reimbursement of costs in the amount of $30,764.05; and (3) approving Plaintiff's request for an enhancement award of $10,000.00.

Given that this is a Motion for Final Approval of a settlement reached with Defendant International Paper Company ("Defendant"), Plaintiff has been informed that Defendant will not oppose this Motion.

This Motion is based upon this Notice, the attached Memorandum of Points and Authorities, the accompanying Declarations of Larry W. Lee, Mai Tulyathan, Dennis S. Hyun, William L. Marder, Kevin Lee of Phoenix Settlement Administrators, and Elisa Arroyo, any oral argument of counsel, the complete files and records in the above-captioned matter, and such additional matters as the Court may consider.


 DATED: November 3, 2022              DIVERSITY LAW GROUP, P.C.


                                     By:____/s/ Larry W. Lee_____
                                            Larry W. Lee
                                            Mai Tulyathan
                                     Attorneys for Plaintiff and the Class

## TABLE OF CONTENTS

**Page**

I.   INTRODUCTION..................................................................................................... **8**

II.  SUMMARY OF ARGUMENT ............................................................................. **9**

III. THE SETTLEMENT PROCESS HAS BEEN DUTIFULLY ADHERED TO AND SUCCESSFULLY CARRIED OUT............................................................................. **9**

    A.   Dissemination of Class Notice ............................................................... **9**

    B.   CAFA Notice ........................................................................................... **9**

IV.  OVERVIEW OF ISSUES AND ARGUMENT ................................................ **10**

V.   LITIGATION HISTORY ................................................................................... **10**

VI.  THE SETTLEMENT ............................................................................................ **13**

VII. THE SETTLEMENT EXCEEDS THE STANDARDS FOR FINAL APPROVAL...... **15**

    A.   The Strength of Plaintiff's Case Supports Settlement ........................ **15**

    B.   Risks, Expense, and Duration of Continued Litigation Support Settlement.......... **16**

    C.   The Extent of Discovery Favors Settlement ........................................ **16**

    D.   The Recommendations of Counsel Favor Approval of the Settlement ................ **17**

    E.   The Class Has Responded Favorably to the Proposed Settlement ........................ **18**

    F.   The Procedure Through Which the Settlement Was Achieved Supports Final Approval ......................................................................................................... **18**

VIII. THE REQUESTED ATTORNEYS' FEES AND COSTS SHOULD BE APPROVED......................................................................................................... **20**

    A.   The Percentage Awarded Should Mimic the Market ......................... **24**

    B.   The Lodestar Calculation "Cross-Check"........................................... **27**

        1.   Plaintiff's Counsel's Lodestar is Reasonable ........................... **28**

    C.   The Court Should Approve the Request for Reimbursement of Costs.................. **29**

IX.  PLAINTIFF'S ENHANCEMENT SHOULD BE APPROVED ........................ **30**

X.   THE ADMINISTRATOR'S COSTS SHOULD BE APPROVED ................................. **31**

XI.  CONCLUSION .................................................................................................... **31**

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>**TABLE OF AUTHORITIES**</u>

<u>**Page(s)**</u>

**State Cases**

*Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504 (2018) ...................................................... 16

*Ketchum vs. Moses*, 24 Cal. 4th 1122, 1133 (2001) ................................................................. 29

*Laffitte v. Robert Half Int'l*, 1 Cal. 5th 480, 503 (2016) .......................................................... 22

*Laffitte v. Robert Half Int'l., Inc.* (2014) 231 Cal.App.4th 860, 871 ............................................. 23

*Melvyn Letuligasenoa, et al. v. International Paper Co., et al.* (Santa Clara County Superior
    Court, Case No. 1-13-cv-254154)..................................................................................... 11, 13

*Munoz v. BCI Coca-Cola Bottling Co. of Los Angeles*, 186 Cal. App. 4th 399, 412 (2010) ....... 30

*Vo v. Las Virgenes Municipal Water Dist.*, 79 Cal. App. 4th 440, 447 (2000) ............................ 29

**Federal Cases**

*Andrew Hill v. International Paper Co.* (United State District Court, Eastern District of
    California, Case No. 1:21-cv-00029-NONE-SKO) ................................................................. 13

*Armstrong v. Board of Sch. Dirs.*, 616 F.2d 305, 325 (7th Cir. 1980).......................................... 17

*Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) .......................................................................... 21

*Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)........................................................ 20, 21, 29

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979)................................................... 17

*Brotherton v. Cleveland*, 141 F. Supp. 2d 907, 913-14 (S.D. Ohio 2001) ................................... 31

*Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 773 (11th Cir. 1991)....................... 21, 24

*Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116, 128 (1885) ................................................... 21

*Chambers v. Whirlpool Corp.*, No. CV111733FMOJCGX, 2016 WL 5922456, at *10 (C.D. Cal.
    Oct. 11, 2016) ..................................................................................................................... 22

*Chun–Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010) ..... 15, 17, 18, 19

*Churchill Vill. LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir .2004)........................................... 18

*Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) ................................................ 15

*Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) ................................................................ 31

*Dyer v. Wells Fargo Bank, N.A.*, 2014 WL 5369395, at *3 (N.D. Cal. Oct. 22, 2014).... 16, 17, 18

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

*Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) .......................... 17

*Emmons v. Quest Diagnostics Clinical Labs., Inc*., No. 113CV00474DADBAM, 2017 WL
    749018, at *7 (E.D. Cal. Feb. 27, 2017) ............................................. 23

*Enter. Energy Corp. v. Columbia Gas Transmission Corp*., 137 F.R.D. 240, 251-252 (S.D. Ohio
    1991) ................................................................................. 31

*Farmers Ins. Exch. v. Law Offices of Conrado Joe Sayas, Jr*., 250 F.3d 1234, 1236 (9th Cir.
    2001) ................................................................................. 22

*Florida v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990)....................................... 21

*Glass v. UBS Fin. Servs*., No. C-06-4068, 2007 U.S. Dist. LEXIS 8476, at *51-52 (N.D. Cal. Jan.
    27, 2007) ......................................................................... 20, 31

*Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1026 (9th Cir. 1998) .......................... 15, 19

*In re Activision Sec. Litig.,* 723 F. Supp. 1373, 1378 (N.D. Cal. 1989) ..................... 21

*In re Dun & Bradstreet Credit Servs. Customer Litig*., 130 F.R.D. 366, 374 (S.D. Ohio 1990) . 31

*In re Mego Fin. Corp. Sec. Litig*., 213 F.3d 454, 459 (9th Cir. 2000)........................ 17

*In re Omnivision Techs., Inc*., 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008)................... 18

*In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378-79 (9th Cir. 1995).......................... 21

*In re Prudential Ins. Co. of America Sales Practice Litigation*, 106 F. Supp. 2d 721 (D.N.J.
    2000) ................................................................................. 27

*Internal Improvement Fund Trs. v. Greenough*, 105 U.S. 527, 532 (1881) .................. 21

*Joel A. v. Giuliani*, 218 F.3d 132, 138 (2nd Cir. 2000) .................................... 15

*Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988) ............................. 17

*Lao v. H&M Hennes & Mauritz*, N.D. Cal. Case No. 16-cv-00333-EJD (Dkt. No. 166) ........... 23

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) .................... 19

*Magadia v. Wal-Mart Assocs., Inc*., 384 F. Supp. 3d 1058 (N.D. Cal. 2019) ................. 26

*Mangold v. Cal. Public Utils. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995) ............... 22

*Mills v. Elec. Auto-Lite Co*., 396 U.S. 375 (1970)......................................... 20

*Moore v. Verizon Commc'ns Inc.*, 2013 WL 4610764, at *5 (N.D. Cal. Aug. 28, 2013) ........... 16

*Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) ......................... 27

*Officers for Justice v. Civil Service Comm'n of City and. County of San Francisco*, 688 F.2d 615, 625 (9th. Cir. 1982) ................................................................................................. 18, 19

*Pallas v. Pacific Bell*, 1999 WL 1209495, at *6 (N.D. Cal. July 13, 1999) .............................. 18

*Ramirez v. Walgreen*, N.D. Cal. Case No. 18-cv-03921-EJD (Dkt. No. 34) ............................ 23

*Reed v. General Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983) ......................................... 17

*Reilly v. Recreational Equipment, Inc.*, N.D. Cal. 3:18-cv-07385-LB ...................................... 23

*Rodriguez v. Nike Retail Servs., Inc.*, 2022 WL 254349, at *6 (N.D. Cal. Jan. 27, 2022) ..... 24, 28

*Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009) .......................................... 19

*Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 165 n.2 (1939) ................................................. 21

*Stanton v. Boeing Co.*, 327 F.3d 938, 975 (9th Cir. 2003) ...................................................... 30

*Stetson v. West Publishing Corp.*, Case No. 13-57061, at *11 (9th Cir. May 11, 2016) ........ 21, 27

*Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299-300 (N.D. Cal. 1995) ............. 31

*Villalpando v. Exel Direct Inc.*, No. 3:12-CV-04137-JCS, 2016 WL 7740854, at *2 (N.D. Cal. Dec. 12, 2016) ...................................................................................................................... 23

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) ...................................... 22, 28

*Williams v. MGM-Pathe Communications Co.*, 129 F.3d 1026, 1027 (9th Cir.1997) ............... 20

*Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983) ............................................... 17, 19

*Zepeda v. Ulta Salon, Cosmetics & Fragrance, Inc.*, E.D. Cal. Case No. 1:17-cv-00853-DAD-EPG (Dkt. No. 55) ................................................................................................................ 23

**Statutes**

Cal. Bus. & Prof. Code § 17200 ...................................................................... 11, 12, 13

Labor Code § 1194 ........................................................................................... 11, 12, 29

Labor Code § 1197 ................................................................................................. 11, 12

Labor Code § 1197.1 .............................................................................................. 11, 12

Labor Code § 1198 ....................................................................................................... 12

Labor Code § 201 ......................................................................................................... 12

Labor Code § 202 ......................................................................................................... 12

Labor Code § 218.5 ...................................................................................................... 29

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Labor Code § 226 .......................................................................................................... 12

Labor Code § 226(a) ............................................................................................. 10, 11, 12

Labor Code § 226(e) ..................................................................................................... 29

Labor Code § 226.7 ....................................................................................................... 12

Labor Code § 2698, *et seq.* ................................................................................... 11, 12

Labor Code § 2699(g)(1) ............................................................................................... 29

Labor Code § 2802 ................................................................................................ 10, 11, 12

Labor Code § 2802(c) ..................................................................................................... 29

Labor Code §§ 221-224 .................................................................................................. 10

Labor Code § 510 .......................................................................................................... 11

**Other Authorities**

*4 Newberg on Class Actions* § 11.24 (4th Ed. & Supp. 2002) ....................................... 19

*Newberg on Class Actions,* § 14.6 .......................................................................... 21, 24

Class Action Fairness Act of 2005 ................................................................................... 9

*Manual for Complex Litigation* (Fourth) § 21.6 (2004) ......................................... 9, 18

*Manual For Complex Litigation* (Fourth) § 30.42 ........................................................ 19

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff Elisa Arroyo ("Plaintiff") seeks final approval of a substantial class-wide settlement reached between Plaintiff and International Paper Company ("Defendant" or "IP") (Plaintiff and Defendant collectively, the "Parties").  Plaintiff also seeks an order approving Class Counsel's application for attorneys' fees in the amount of $1,000,000.00 (one-third of the Gross Settlement Amount of $3,000,000.00), reimbursement of litigation costs in the amount of $30,764.05, and Plaintiff's application for an enhancement award of $10,000.00.  This request was set forth in the Notice of Class Action Settlement ("Class Notice") mailed to all Class Members. Moreover, the settlement documents, including the Settlement Agreement, were uploaded and made available to putative class members on the Administrator's website. (Declaration of Kevin Lee "(K. Lee Decl.") ¶ 5).  As set forth in the Stipulation and Settlement Agreement of Class Action Claims (Dkt. No. 80-2) ("Settlement Agreement" or "Settlement") between the Parties, Defendant has agreed to not object to the requests sought herein.

On July 28, 2022, the Court entered an Order Granting Plaintiff's Motion for Preliminary Approval of Class Action Settlement (Dkt. No. 85) ("Preliminary Approval Order").  The Parties now seek this Court's final approval of the settlement.

The settlement requires Defendant to pay the Gross Settlement Amount of Three Million Dollars ($3,000,000.00), a sum which represents a substantial recovery for the members of the Class.  **Again, this settlement is non-reversionary, such that no monies will revert back to Defendant**.  (Settlement Agreement ¶¶ I.R, I.S.)  As such, there was no claims process involved. Class Members were given an opportunity to object or opt-out of the settlement.  As of the date of this filing, there have been zero (0) opt outs and objections to the settlement.  (K. Lee Decl.") ¶¶ 3-9.)  Accordingly, this shows that all Class Members have reacted favorably to the settlement as there is a **100% participation rate and not a single objection from the 3,692 member Class** as of the date of this filing.  Moreover, all of the Court's orders concerning dissemination of the Class Notice have been followed.

Based thereon, Plaintiff respectfully requests that final approval be granted in its entirety.

## II. SUMMARY OF ARGUMENT

As previously detailed in Plaintiff's Motion for Preliminary Approval of Class Action Settlement (Dkt. No. 80), this case was vigorously litigated for several years, including numerous dispositive motions and discovery.

The detailed terms of the settlement are set forth in the Settlement Agreement (Dkt. No. 80-2) and Amendment to Stipulation and Settlement Agreement of Class Action Claims (Dkt. No. 84) ("Settlement Agreement Amendment") entered into by the Parties and previously provided to this Court.  Pursuant to the settlement terms, Defendant will pay the entirety of the Gross Settlement Amount of $3,000,000.00 without any reversion to itself.

The proposed settlement meets the criteria for final approval, which are set forth in the *Manual for Complex Litigation, Fourth*, and is well within the range of what would be fair, reasonable, and adequate in this case.  Thus, Plaintiff requests that the Court take the final step in the approval process – granting the requested final approval of the settlement which is sought herein.

## III. THE SETTLEMENT PROCESS HAS BEEN DUTIFULLY ADHERED TO AND SUCCESSFULLY CARRIED OUT

### A. Dissemination of Class Notice

As noted above, preliminary approval was granted on July 28, 2022.  At that time, Phoenix Settlement Administrators ("Settlement Administrator") was appointed by the Court as the Settlement Administrator.  The Parties, through the work of the Settlement Administrator, have complied with this Court's orders concerning dissemination of the class notice.  (K. Lee Decl. ¶¶ 3-9.)

The Class Notice was mailed to 3,692 individuals utilizing the data provided by Defendant.  (K. Lee Decl. ¶¶ 3-9.)  As of the date of this filing, 11 Class Notices have been returned as undeliverable as updated addresses could not be obtained notwithstanding skip-traces being performed.  (*Id.* ¶¶ 6-7.)

### B. CAFA Notice

Pursuant to the Class Action Fairness Act of 2005 (the "CAFA"), Defendant provided

notice of the proposed settlement to the appropriate federal and state agencies on March 24, 2022.

## IV.    OVERVIEW OF ISSUES AND ARGUMENT

Plaintiff alleges that, as with all other non-exempt employees of Defendant in the State of California, she was required to work off-the-clock before she clocked in and after she clocked out for work.  Defendant did not pay Plaintiff and other non-exempt employees any applicable overtime wages in connection with the time spent working off-the-clock.  Plaintiff also alleges that she and other employees were not provided complete, off-duty meal and rest breaks.  Moreover, Plaintiff alleges that she and other non-exempt employees received inaccurate wage statements in violation of Labor Code § 226(a).  In addition to Defendant's failure to accurately list the total hours and hourly rates, Defendant also failed to accurately list the overtime and regular rates and hours on wage statements issued to Plaintiff and the Class.  Specifically, when Defendant paid Plaintiff and other employees' overtime, Defendant listed the incorrect overtime rate of pay at 1/2 of the regular rate of pay. Instead, the overtime rate should have been listed at the correct overtime rate of 1.5x the regular rate for any hours over 40 hours in a workweek, or 8 hours in a workday. Defendant also violated Labor Code § 226(a) by double-counting the overtime and regular hours worked, resulting in an incorrect listing of total hours worked.  Defendant also violated Labor Code §§ 221-224, and 2802, with respect to Plaintiff and the Class.  Specifically, Defendant failed to reimburse Plaintiff and the Class for all business-related expenses, including without limitation, the costs of cleaning and maintaining uniforms.  Finally, Defendant would deduct monies from the wages of Plaintiff and the Class for uniforms.  This item would appear as a deduction for "Uniform Local" on the wage statement and for Plaintiff, she was charged $7.50 on her wage statements for this item.  Defendant denies that it engaged in any alleged unlawful conduct and maintains that it has complied with California law.  Further, Defendant contends that it would have prevailed on the merits at trial.

## V.    LITIGATION HISTORY

On September 27, 2017, Plaintiff filed a class action complaint against Defendant in the Monterey County Superior Court, on behalf of herself and a proposed class consisting of "all

non-exempt manufacturing employees who were employed by Defendants in the State of California at any time from September 27, 2013, through the present." The initial complaint alleges the following causes of action: (1) violation of Cal. Labor Code §§ 1194, 1197, and 1197.1; (2) violation of Cal. Labor Code §§ 510 and 1194; (3) violation of Cal. Labor Code § 2802; (4) violation of Cal. Labor Code § 226(a); (5) violation of Cal. Labor Code § 2698, *et seq.* ("PAGA"); and (6) violation of Cal. Bus. & Prof. Code § 17200, et seq. Dkt. No. 1 at pg. 14.

On October 27, 2017, the Action was removed to the United States District Court for the Northern District of California, Case No. 5:17-cv-06211-BLF. Dkt. No. 1. Plaintiff subsequently filed a First Amended Complaint on November 30, 2017, modifying the start date of the proposed class period to January 31, 2017. Dkt. No. 9. On January 12, 2018, Defendant filed a motion to dismiss Plaintiff's First Amended Complaint alleging (1) Plaintiff's First Amended Complaint did not contain sufficient facts to support each cause of action, and (2) Plaintiff's fourth and fifth causes of action for failure to provide accurate wage statements were released by the settlement in *Melvyn Letuligasenoa, et al. v. International Paper Co., et al.* (Santa Clara County Superior Court, Case No. 1-13-cv-254154). Dkt. No. 11. On May 30, 2018, Judge Freeman ordered Plaintiff's causes of action four and five dismissed to the extent each claim sought damages and penalties for the time period prior to January 27, 2017 (the end of the release period in the *Letuligasenoa* settlement), except as to the portion of Plaintiff's PAGA claim based on the alleged practice of failing to reimburse uniforms. Dkt. No. 26.

Plaintiff filed a Second Amended Complaint on June 19, 2018, modifying the start date of her fourth and fifth causes of action to conform with the Court's order. Dkt. No. 28. On July 3, 2018, Defendant filed a motion to dismiss Plaintiff's Second Amended Complaint on the ground that Plaintiff did not allege sufficient facts to constitute each cause of action. Dkt. No. 29. On October 2, 2018, Judge Freeman granted Defendant's motion to dismiss in part with leave to amend. Dkt. No. 37. On October 23, 2018, in conformity with the Court's Order on Defendant's motion to dismiss, Plaintiff filed a Third Amended Complaint dismissing claims related to minimum and overtime wages owed. Dkt. No. 38. The Third Amended Complaint alleges the following causes of action: (1) violation of Cal. Labor Code § 2802; (2) violation of Cal. Labor

1    Code § 226(a); (3) violation of Cal. Labor Code § 2698, *et seq.*; and (4) violation of Cal. Bus. &
2    Prof. Code § 17200, *et seq*. Dkt. No. 38.

3        On April 4, 2019, the Court granted Plaintiff's Motion for Class Certification with
4    respect to Plaintiff's causes of action for violation of Labor Code § 226(a) and Business and
5    Professions Code § 17200, *et seq. See* Dkt. No. 48. Judge Freeman granted in part and denied in
6    part Plaintiff's Motion for Class Certification. Dkt. No. 48. The Court granted class certification
7    as to causes of action two and four to the extent those claims were based on wage statements
8    generated by the Workbrain system. *Id.* As such, this court certified the following class: "All
9    non-exempt employees who were employed by International Paper Company, a New York
10   corporation, in the State of California and who were provided wage statements containing
11   payment for overtime wages which were created from data from the Workbrain system at any
12   time from January 27, 2017, through the present." *Id.* at p. 12. Judge Freeman denied Plaintiff's
13   request to certify her first cause of action for a violation of California Labor Code § 2802. *Id.*

14       On October 13, 2019, Defendant moved for summary judgment against the certified class
15   claim for violation of Labor Code § 226 and against the aggrieved employees for violation of
16   Labor Code § 2802 under PAGA. Dkt. No. 51. On February 24, 2020, the Court granted
17   Defendant's Motion for Summary Judgment as to Plaintiff's class claim for violation of Labor
18   Code § 226(a), denied summary judgment as to Plaintiff's individual claim for violation of Labor
19   Code § 2802 and Business and Professions Code § 17200, *et seq*., and granted in part and denied
20   in part summary judgment as to Plaintiff's cause of action for violation of PAGA. Dkt. No. 59;
21   *Arroyo v. Int'l Paper Co.*, No. 17-CV-06211-BLF, 2020 WL 887771, at *1 (N.D. Cal. Feb. 24,
22   2020).

23       Around nine months later, on December 4, 2020, Plaintiff Andrew Hill filed a class
24   Complaint against Defendant International Paper Company. Similar to the original claims in the
25   Arroyo Action, Hill alleged the following causes of action (1) violation of California Labor Code
26   § 1198; (2) violation of California Labor Code § 226.7; (3) violation of California Labor Code §
27   226.7; (4) violations of California Labor Code §§ 1194, 1197, and 1197.1; (5) violation of
28   California Labor Code §§ 201 and 202; (6) violation of California Labor Code § 226(a); and (7)

**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

violation of California Business & Professions Code §§ 17200, et seq. (the "*Hill* Action").
Defendant removed the Hill Action to the United States District Court for the Eastern District of
California on January 7, 2021. On March 10, 2021, Defendant filed a Notice of Related Cases in
the *Hill* Action identifying the *Arroyo* and *Letuligasenoa* actions as related. On March 19, 2021,
Defendant filed a Notice of Pendency Under Local Rule 3-13 notifying this Court of the related
action currently pending before the United States District Court for the Eastern District of
California entitled *Andrew Hill v. International Paper Co.* (United State District Court, Eastern
District of California, Case No. 1:21-cv-00029-NONE-SKO). Dkt. No. 62. Defendant contends
that this settlement applies to the *Hill* Action based on Defendant's contention that both actions
allege identical factual predicates, which will be an issue for the *Hill* Court to determine.

## VI.    THE SETTLEMENT

The Settlement terms were summarized in detail in the Motion for Preliminary Approval,
and Plaintiff respectfully incorporates those arguments herein so as to avoid unnecessary
duplication. The specific terms of the settlement are set forth in the Settlement Agreement and
the Order Granting Motion for Preliminary Approval of Class Settlement. (Dkt. No. 85). The
principal terms are:

a.    Settlement Class is "all individuals who worked for International Paper Company
in the State of California as non-exempt hourly employees during the Class Period [January 27,
2017 and June 30, 2021]"

b.    The Settlement Class is releasing:

All wage-and-hour claims, demands, rights, liabilities, costs,
penalties, interest, attorney's fees, and causes of action that Plaintiff
and the other Participating Class Members are releasing in
exchange for the consideration provided for by this Agreement are
all claims in the Complaint, the PAGA notice, and all claims that
could have been pled arising out of similar operative facts, conduct,
and/or omissions including but not limited to claims for (1) unpaid
reimbursements; (2) wage statement violations; (3) unpaid wages,
including minimum wages, regular wages, overtime and double
overtime wages; (4) failure to provide meal periods or meal period
premiums; (5) failure to provide rest periods or rest period
premiums; (6) failure to timely pay all wages due upon separation
of employment; (7) failure to maintain and provide accurate

records; (8) unfair business practices premised on alleged violations of the California Labor Code; (9) penalties under the California Private Attorneys General Act ("PAGA"). The Released Claims do not cover or include (1) claims for Workers' Compensation, (2) claims for unemployment or disability payments, (3) claims for discrimination, retaliation or harassment under Title VII or California's Fair Employment and Housing Act (4) tort claims, or (5) any other claims that cannot be released as a matter of law.

(Settlement Agreement at ¶ I.DD.).

c.      Defendant will pay the Gross Settlement Amount of $3,000,000.00.  This sum includes payments made to the settlement class members, settlement administration costs, awards of attorneys' fees and costs, and the class representative enhancement award.

d.      The sum available for use as payments to class members after the settlement administration costs, awards of attorneys' fees and costs, and the class representative enhancement award shall be referred to as the Net Settlement Amount.  Defendant agrees that it shall pay the entirety (100%) of the Net Settlement Amount.  **In other words, the settlement is non-reversionary, meaning that no funds will revert back to Defendant.**

e.      No claim forms were necessary for any class member to participate in the settlement and receive their share of the settlement.  Thus, any class member who does not opt-out in connection with this settlement will automatically receive his/her share of the settlement proceeds.  On average, each class member will receive approximately a payment of $484.05.  (K. Lee Decl. ¶ 13). The highest individual settlement payment to be paid will be approximately $812.01. (*Id.*)

f.      Any remaining monies from uncashed checks will be paid to California State Bar – Justice Gap Fund.  (Addendum, Dkt. No. 85).

g.      All of this Court's orders in connection with the settlement administration process have been followed.  (*See generally* K. Lee Decl. filed herewith).

The settlement represents a compromise between the positions and evaluations of the two sides to this controversy.  Clearly, there were significant disagreements between the Parties as to the facts and the law.

//

1

**VII.    THE SETTLEMENT EXCEEDS THE STANDARDS FOR FINAL APPROVAL**

2          Federal Rule of Civil Procedure 23(e) provides that any compromise of a class action

3    must receive Court approval.  The court has broad discretion to grant such approval and should

4    do so where the proposed settlement is "fair, adequate, reasonable, and not a product of

5    collusion."  *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1026 (9th Cir. 1998); *Joel A. v. Giuliani*,

6    218 F.3d 132, 138 (2nd Cir. 2000).  In determining whether a proposed settlement should be

7    approved, the Ninth Circuit has a "strong judicial policy that favors settlement, particularly

8    where complex class action litigation is concerned."  *Class Plaintiffs v. Seattle*, 955 F.2d 1268,

9    1276 (9th Cir. 1992).

10          The fairness, reasonableness, and adequacy of any class action settlement depends on

11   "the relative strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of

12   further litigation; the risk of maintaining class action status throughout the trial; the amount

13   offered in settlement; the extent of discovery completed and the stage of the proceedings; the

14   experience and views of counsel; ... and the reaction of class members to the proposed

15   settlement."  *Hanlon* 150 F.3d at 1026.  Here, as set forth in the Motion for Preliminary

16   Approval and discussed below, the factors for final approval of this settlement have been

17   established.

18          **A.    The Strength of Plaintiff's Case Supports Settlement**

19          This factor is generally satisfied when plaintiffs must overcome barriers to make their

20   case.  *Chun–Hoon v. McKee Foods Corp*., 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010).

21          Here, the Settlement affords fair relief to the Class, while avoiding significant legal and

22   factual battles, especially at trial, that otherwise may have prevented the Class from obtaining

23   any recovery at all.  Although Plaintiff's attorneys believe the claims are meritorious, they are

24   experienced and realistic, and understand that the outcome of a trial, and the outcome of any

25   appeals that would inevitably follow if the class prevailed at trial, are inherently uncertain in

26   terms of both outcome and duration.  Indeed, this Court already dismissed Plaintiff's donning

27   and doffing and wage statement claims pursuant to Defendant's motions to dismiss and summary

28   judgment.  After years of litigation, the Parties were able to reach this settlement.  Plaintiff

asserts that this settlement is fair, adequate and reasonable, as it provides concrete relief to the Settlement Class without having to proceed to trial and appeal on these issues.

Finally, even if a violation could be established, as to the PAGA claim, this Court has complete discretion to decrease any applicable penalties that could be assessed.  Indeed, just recently, the California Court of Appeals upheld a decision wherein PAGA penalties were reduced by 90%.  *Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504 (2018).

Therefore, this factor favors settlement.  See *Dyer v. Wells Fargo Bank, N.A.*, 2014 WL 5369395, at *3 (N.D. Cal. Oct. 22, 2014) (factor favors final approval where "[p]laintiffs acknowledge that, if the settlement is not approved, they will encounter significant obstacles in establishing their claims"); see *also Moore v. Verizon Commc'ns Inc.*, 2013 WL 4610764, at *5 (N.D. Cal. Aug. 28, 2013) (finding that the relative strength of plaintiffs' case favored settlement because plaintiffs admitted they would face hurdles in proving liability and damages).

### B.     Risks, Expense, and Duration of Continued Litigation Support Settlement

"Difficulties and risks in litigating weigh in favor of approving a class settlement."  *Dyer*, 2014 WL 5369395, at *3 (citation omitted).  In addition to the obstacles set forth above, even if Plaintiff had prevailed at trial, there was a likelihood that Defendant would have appealed the verdict.  Thus, the risks, expense, and duration of continued litigation favor final approval of the settlement. *See Dyer*, 2014 WL 5369395, at *3 ("This factor supports final approval of this settlement because, without a settlement, Plaintiffs would risk recovering nothing after a lengthy and costly litigation.").

### C.     The Extent of Discovery Favors Settlement

As mentioned, Class Counsel conducted significant investigation and discovery in furtherance of the prosecution of this action.  (Declaration of Larry W. Lee ("Lee Decl.") ¶¶ 3-6.) This investigation and discovery included, among other things: (a) inspection and analysis of thousands of pages of documents, including class time and payroll records, produced by Defendant throughout the course of litigation and in connection with mediation; (b) conducting depositions of Defendant's FRCP 30(b)(6) Corporate Representatives, on a myriad of topics relating to the underlying claims; and (c) extensively researching and litigating the substantive

issues in this case at class certification and summary judgment. (*Id*.) To evaluate the damages and penalties, Plaintiff reviewed time and payroll data and class list for the entire class, which was provided to Plaintiff through formal discovery and litigation. (Lee Decl. ¶¶ 3-6.) In connection with mediation, Plaintiff was provided with updated time and payroll data for the entire class, including data regarding the number of class members, number of shifts worked, number of employees who have separated from employment, and the hourly rates of pay for class members. (*Id*. ¶ 5.) Plaintiff then analyzed and calculated maximum exposure of damages and penalties applicable to the entire class for the class period. (*Id*.)

Courts have held that such discovery is sufficient for parties to make an informed decision regarding the adequacy of the settlement. *See, e.g.*, *Dyer*, 2014 WL 5369395, at *3 (parties' participation in written discovery, depositions, witness interviews, and formal mediation favors an informed settlement); *Chun-Hoon*, 716 F. Supp. 2d at 848 ("true value of the class claims is well-known and class counsel possess a sufficient understanding of the issues involved and the strengths and weaknesses of the case"); *see also In re Mego Fin. Corp. Sec. Litig*., 213 F.3d 454, 459 (9th Cir. 2000) (formal discovery not necessary where the parties have sufficient information to make an informed decision about settlement).

### D.    The Recommendations of Counsel Favor Approval of the Settlement

The recommendations of experienced counsel should be given considerable weight. *Boyd v. Bechtel Corp*., 485 F. Supp. 610, 622 (N.D. Cal. 1979); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), ("[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight."); *Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988); *Reed v. General Motors Corp*., 703 F.2d 170, 175 (5th Cir. 1983); *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983), *Armstrong v. Board of Sch. Dirs*., 616 F.2d 305, 325 (7th Cir. 1980).

Lead counsel for Plaintiff has broad experience litigating employment class actions. (Lee Decl. ¶¶ 11-15; Declaration of Mai Tulyathan ("Tulyathan Decl.") ¶¶ 6-9; Declaration of Dennis S. Hyun ("Hyun Decl.") ¶¶ 3-6; Declaration of William L. Marder ("Marder Decl.") ¶¶ 3-11.) They support this settlement as a fair and reasonable settlement which is in the best interest of

the settlement class.  (Lee Decl. ¶¶ 7-8; Tulyathan Decl. ¶¶ 2-5; Hyun Decl. ¶¶ 7-9; Marder Decl. ¶¶ 12-13.)  Therefore, this factor favors approval of the settlement.  *See Dyer*, 2014 WL 5369395, at *3 (recommendation of plaintiffs' counsel supports approval of settlement); *Chun-Hoon*, 716 F. Supp. 2d at 848 (same).

### E.    The Class Has Responded Favorably to the Proposed Settlement

"[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that" the settlement is favorable to class members.  *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008), *see Pallas v. Pacific Bell*, 1999 WL 1209495, at *6 (N.D. Cal. July 13, 1999) ("The greater the number of objectors, the heavier the burden on the proponents of settlement to prove fairness.").

Here, as of the date of this filing, **not a single class member out of 3,692 individuals has objected or opted out** of this settlement.  (K. Lee Decl. ¶¶ 8-9.)  In other words, this settlement has a 100% participation rate.  (*Id.*)  Thus, the absence of any objections or opt-outs strongly support the fairness of the settlement.  *See Churchill Vill. LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir .2004) (approving settlement with 45 objections and 500 opt-outs from a 90,000-person class, representing .05% and .56% of the class, respectively); *Dyer*, 2014 WL 5369395, at *4 (strong support from class in favor of approving settlement where only three of 8,695 class members opted out); *Chun–Hoon*, 716 F. Supp. 2d at 852 (where 16 of 329 class members opted out, court found that positive class reaction "strongly supports settlement").

### F.    The Procedure Through Which the Settlement Was Achieved Supports Final Approval

The Ninth Circuit has recognized that the factors to be examined at final approval may differ depending on the circumstance of each case.  *Officers for Justice*, 688 F.2d at 625.  Therefore, although not one of the *Officers for Justice* listed factors, the procedures by which the settlement was achieved also strongly support the fairness of the settlement.  *See Chun-Hoon*, 716 F. Supp. 2d at 851 ("To these factors, the court adds as a ninth factor to consider the procedure by which the settlement was arrived at"), citing *Manual for Complex Litigation* (Fourth) § 21.6 (2004).  As noted above, the parties participated in arm's length negotiations,

including three full days of mediation before three different mediators, with the final mediation with Steven J. Rottman, Esq., resulting in this settlement.   This weighs in favor of approval of the settlement.  *See Chun-Hoon*, 716 F. Supp. 2d at 851 (finding that use of formal arm's-length mediation supported approval of settlement agreement).

Further, the Ninth Circuit has shown longstanding support of settlements reached through arm's length negotiation by capable opponents.  In *Rodriguez v. West Publishing Corp*., 563 F.3d 948 (9th Cir. 2009), the Ninth circuit expressly opined that courts should defer to the "private consensual decision of the [settling] parties."  *Id*. at 965, citing *Hanlon*, 150 F.3d at 1027.  The primary reason for deferring to such settlements is the experience of counsel and the participation of a neutral, both of which factors are present here.

The Court in *Rodriguez* found that the settling parties "put a good deal of stock in the product of an arms' length, non-collusive, negotiated resolution, and have never prescribed a particular formula by which that outcome must be tested."  *Rodriguez*, 563 F.3d at 965 (citations omitted).  As the Court explained, "[i]n reality, parties, counsel, mediators, and district judges naturally arrive at a reasonable range for settlements by considering the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of obtaining it, discounted to present value."  *Id*. at 965 (citations omitted).  *See also Williams v. Vukovich*, 720 F.2d 909, 922-923 (6th Cir.1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs"); *4 Newberg on Class Actions* § 11.24 (4th Ed. & Supp. 2002); *Manual For Complex Litigation* (Fourth) § 30.42).

The proposed settlement has no deficiencies.  There is no standard or benchmark for determining whether any given settlement is fair.  "Ultimately the district court's determination is nothing more than 'an amalgam of delicate balancing, gross approximations and rough justice.'"  *Officers for Justice v. Civil Service Comm'n of City and. County of San Francisco*, 688 F.2d 615, 625 (9th. Cir. 1982) (citation omitted).  In making its determination, the Court should weigh the benefits that the settlement will realize for the class against the uncertainty of litigation and the possibility that the class members would obtain no relief in the absence of a settlement. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("it is the very

uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements").

The settlement has been reached after considerable investigation, litigation, negotiation, and involving the mediation efforts of a highly experienced mediator. Each side evaluated the strengths and weaknesses of their case and independently came to the conclusion that this settlement represents a responsible means of addressing the claims of Plaintiff and the Class, as well as Defendant's contention that it would prevail on the merits.

## VIII.    THE REQUESTED ATTORNEYS' FEES AND COSTS SHOULD BE APPROVED

Governing Ninth Circuit law, following the clear instruction of the United States Supreme Court in *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980), establishes that percentage awards are to measure against the entire common fund created in the settlement. In *Glass v. UBS Financial Services, Inc.*, 2007 WL 474936, at *16 (N.D. Cal. Jan 26, 2007), citing to the Ninth Circuit authority, the Court noted:

> The Ninth Circuit has held, however, that the district court must award fees as a percentage of the entire fund, or pursuant to the lodestar method, not on the basis of the amount of the fund actually claimed by the class.

*See also Williams v. MGM-Pathe Communications Co*., 129 F.3d 1026, 1027 (9th Cir.1997).

Moreover, the U.S. Supreme Court consistently has recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Mills v. Elec. Auto-Lite Co*., 396 U.S. 375 (1970). The purpose of this doctrine is largely to avoid unjust enrichment, by spreading the litigation costs proportionally among all the beneficiaries so that the active beneficiary does not bear the entire burden alone. It provides that when a litigant's efforts create or preserve a fund from which others derive benefits, the litigant may require the passive beneficiaries to compensate those who created the fund.

Every United States Supreme Court case that has considered the award of attorney's fees under the common fund doctrine has determined those fees as a percentage of the recovery. *See,*

*e.g.*, *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 773 (11th Cir. 1991) (citing *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984)) (noting that the percentage of recovery method is the appropriate method to award attorney's fees in common fund cases); *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 165 n.2 (1939); *Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116, 128 (1885); *Internal Improvement Fund Trs. v. Greenough*, 105 U.S. 527, 532 (1881).

The Ninth Circuit has also recognized a "ground swell of support for mandating a percentage-of-the-fund approach in common fund cases." *Florida v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990); *see also In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378-79 (9th Cir. 1995) (affirming attorney's fee of 33% of the recovery). Although the Ninth Circuit has typically found that 25% of the common fund is "benchmark," numerous courts in the Ninth Circuit have awarded higher amounts. *See Stetson v. West Publishing Corp.*, Case No. 13-57061, at *11 (9th Cir. May 11, 2016). The twenty-five percent benchmark may be adjusted upward or downward depending on the circumstances presented by the particular case. Indeed, the Ninth Circuit and district courts therein have routinely permitted recovery in the amount of 33.33%, 40% and even up to 50% of the common fund. *See, e.g.*, *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989) (listing Ninth Circuit cases).

Seeking a fee based on a percentage of the gross recovery, which is what Class Counsel is seeking here, is appropriate and even desirable in cases like this. *See* Newberg on Class Actions, Fourth Edition, vol. 4, p. 556, §14.6 (noting that percentage of the fund awards are preferable because they align the interests of the attorney with the client, as the attorney is not incentivized to bill unnecessary hours to generate a greater fee); *Boeing*, 444 U.S. at 478. Unlike the lodestar method which can encourage class counsel to devote unnecessary hours to generate a substantial fee, under the POR [percentage of recovery] method, the more the attorney succeeds in recovering money for the client, and the fewer legal hours expended to reach that result, the higher dollar amount of fees the lawyer earns. Thus, one of the primary advantages of the POR method is that it is thought to equate the interests of class counsel with those of the class members and encourage class counsel to prosecute the case in an efficient manner.

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

As reiterated by the Ninth Circuit, courts are obligated to apply California law in diversity jurisdiction cases in awarding attorneys' fees. *Farmers Ins. Exch. v. Law Offices of Conrado Joe Sayas, Jr*., 250 F.3d 1234, 1236 (9th Cir. 2001) ("Because this case is based on diversity jurisdiction, we are obligated to apply California state law regarding attorneys' fees."); *Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1047 (9th Cir. 2002); *Mangold v. Cal. Public Utils. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995); *Chambers v. Whirlpool Corp*., No. CV111733FMOJCGX, 2016 WL 5922456, at *10 (C.D. Cal. Oct. 11, 2016) ("[i]n diversity actions…, the Ninth Circuit **applies state law to determine the right to fees and the method for calculating fees**") (emphasis added).

As this case was removed to this Court pursuant to diversity jurisdiction, Plaintiff respectfully submits that California law should govern this Court's analysis. The California Supreme Court clarified its stance on common fund cases, ruling –

> "We join the overwhelming majority of federal and state courts in holding that when class action litigation established a monetary fund for the benefit of the class members, and the trial court in its equitable powers awards class counsel a fee out of that fund, the court may determine the amount of a reasonable fee by choosing an appropriate percentage of the fund created."

*Laffitte v. Robert Half Int'l*, 1 Cal. 5th 480, 503 (2016). Explaining its ruling, the Court further held that "[t]he recognized advantages of the percentage method – including relative ease of calculation, alignment of incentives between counsel and the class, a better approximation of market conditions in a contingency case, and the encouragement it provides counsel to seek an early settlement and avoid unnecessarily prolonging litigation – convince us the percentage method is a valuable tool that should not be denied by our trial courts." *Id.* (internal citations omitted); *see also Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1047.

Based on this rationale, the California Supreme Court in *Laffite* affirmed a fee award representing one-third of the fund and rejected the objections of putative class members to this award. *Laffitte*, 1 Cal.5th at 506. Further, this was based on a lodestar amount that required a multiplier of 2.13. *Id*. at 487. As the Court held, only when the multiplier is "extraordinarily high or low [should] the trial court [] consider whether the percentage method should be adjusted so as to bring the imputed multiplier within a justifiable range." *Id*. at 505. Moreover,

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

in the *Laffitte* intermediate court decision, the court observed that "33 1/3 percent of the common fund is consistent with, and in the range of, awards in other class action lawsuits." *Laffitte v. Robert Half Int'l., Inc.* (2014) 231 Cal.App.4th 860, 871.

Numerous district courts have followed *Laffitte* in awarding 1/3 of the common fund. Indeed, District Judge Edward Davila in *Ramirez v. Walgreen*, N.D. Cal. Case No. 18-cv-03921-EJD (Dkt. No. 34) and *Lao v. H&M Hennes & Mauritz*, N.D. Cal. Case No. 16-cv-00333-EJD (Dkt. No. 166), followed *Laffitte* in awarding Plaintiff's counsel (the same counsel as in the instant case) 1/3 of the common fund of $1.15 million based on a multiplier of 1.32 and $3.8 million based on a negative multiplier, respectively. Magistrate Judge Laurel Beeler in *Reilly v. Recreational Equipment, Inc.*, N.D. Cal. 3:18-cv-07385-LB, also awarded Plaintiff's counsel 1/3 of the common fund of $5 million based on a multiplier of 2.7.

Additionally, the Northern District Court in *Villalpando v. Exel Direct Inc.*, No. 3:12-CV-04137-JCS, 2016 WL 7740854, at *2 (N.D. Cal. Dec. 12, 2016), cited *Laffitte* when awarding 33% of the common fund:

> Plaintiffs' fee request of $ 4,500,000 represents one-third of the Settlement Fund, which is reasonable under both applicable law, and in light of the contingent risk, Counsel's documented lodestar, the complex and protracted nature of the case, and strong result for the Class.

*Id*.

Further, the Eastern District Court in *Zepeda v. Ulta Salon, Cosmetics & Fragrance, Inc.*, E.D. Cal. Case No. 1:17-cv-00853-DAD-EPG (Dkt. No. 55), followed *Laffitte*, in awarding 1/3 of the common fund of $3.4 million, or $1,133,333.33 in attorneys' fees applying a multiplier of 1.328. (Dkt. No. 55 at 12-14). In so holding, the Court reiterated that "[i]n a diversity action such as this, federal courts apply state law both to determining the right to fees and the method of calculating them." *Id.*; *see also Emmons v. Quest Diagnostics Clinical Labs., Inc*., No. 113CV00474DADBAM, 2017 WL 749018, at *7 (E.D. Cal. Feb. 27, 2017) (following *Laffitte* in awarding 33% of the common fund; "[t]he California Supreme Court recently held that the percentage-of-fund method of calculating attorneys' fees survives in California courts").

Finally, this Court in *Rodriguez v. Nike Retail Servs., Inc*., 2022 WL 254349, at *6 (N.D. Cal. Jan. 27, 2022), approved 1/3 of the common fund "especially in light of the significant amount of work Class Counsel performed in this case, including for the appeal to the Ninth Circuit, and the excellent results achieved during a time when California law was unsettled."  *Id*. Here, Plaintiff's counsel respectfully submits that this case was also heavily litigated, with adverse rulings from this Court.  Based on the lengthy litigation history, Plaintiff respectfully requests 1/3 of the common fund in this case.

### A.    The Percentage Awarded Should Mimic the Market

*Newberg on Class Actions*, Fourth Edition, vol. 4, p. 560, § 14.6 contains an interesting discussion of the concept of a marketplace analysis and why it is so valuable in determining a percentage award:

> [Goodrich and Silver]…suggest that fee awards should be consistent with contingent fee arrangements negotiated in non-class litigation:
> The percentage method is consistent with and is intended to mirror practice in the private marketplace where contingent fee attorneys typically negotiate percentage fee arrangements with their clients. As Judge Posner emphasized in *In re Continental Illinois Securities Litigation*s, "[t]he object in awarding a reasonable attorney's fee…is to simulate the market...The class counsel are entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client." In non-class litigations, one-third contingency fees are typical. In their concurring opinion in Blum, Justices Brennan and Marshall observed that "[i]n tort suits, an attorney might receive one-third of whatever the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery."
> If named plaintiffs have agreed to pay a one-third contingent fee, that is powerful evidence of a reasonable fee. One of the best ways to demonstrate the value of counsel's work to the class is to review the consideration agreed to be paid by the named plaintiffs in their contracts. If the named plaintiffs have employed their counsel by contingent fee agreements that obligated them to pay one-third of the recovery, it would indeed be inequitable for the members of the class, who will enjoy the benefits of this settlement without incurring the risks of bringing the claim, to pay less than the named plaintiffs.

The complex and heavily litigated nature of this litigation, and its successful result lead to the clear conclusion that the fee request herein is reasonable.  In *Camden I Condominium Association, Inc., v. Dunkel*, 946 F. 2d 768 (11th Cir. 1991), the court identified various factors

24

to be considered in arriving at a common fund fee determination. Each of the factors is now briefly addressed.

1.     The time and labor required – this is overwhelmingly established in this motion, based upon the work involved, and the supporting attorney declarations and time charts submitted;

2.     The novelty and difficulty of the questions involved – this case involved novel and difficult questions of evolving law, including the knowing and intentional element for wage statement violations;

3.     The skill requisite to perform the legal services properly – this goes hand in hand with the first and second factors. Plaintiff's counsel was able to litigate this case effectively and ultimately achieved a very good result for the class because of Plaintiff's counsel's experience in litigating wage and hour cases;

4.     The preclusion of other employment by the attorney due to the acceptance of the case – the case required and demanded attorney time on both sides. The result of this scheduling was that Class Counsel could have spent such time on numerous other matters while this litigation was ongoing. Indeed, Plaintiff's counsel took numerous class member depositions, briefed and argued numerous motions, and zealously represented Plaintiff and the Class;

5.     The customary fee – as discussed above, courts have approved an award of 33.33% of the Gross Settlement Amount (including this Court), which is the standard percentage pursuant to California law;

6.     Whether the fee is fixed or contingent – this matter was clearly contingent without any sort of fixed or guaranteed fees for Class Counsel. Indeed, Plaintiff's counsel's sole payment was based on contingency fee and no fixed guaranteed costs would have received unless Plaintiff's counsel were successful in this litigation;

7.     Time limitation imposed by the client or the circumstances – although the client did not impose any time limitations, Class Counsel invested a significant amount of time in this case;

8.     The amount involved and results obtained – this is discussed above;

9.     The experience, reputation and ability of the attorney – as evidenced by the supporting declarations, Class Counsel has been designated and certified as class counsel in numerous other matters, including in the Northern District;

10.     The nature and length of the relationship with the client – this does not apply; and

11.     Awards in similar cases – similar cases were identified in the section above.

As the Court is well aware, Plaintiff's counsel has diligently and zealously litigated this case over several years, including successfully appealing dismissal of this case, fighting against numerous attempts by Defendant to rebut the claims and defeat class certification.  Significant risks were assumed by Plaintiff's counsel in litigating this case.  Plaintiff's counsel's lodestar cross check also supports the award of the 33.33% percentage fee given that their lodestar cross check results in a negative multiplier!

Moreover, as this Court knows, Plaintiff's attorneys heavily and aggressively litigate numerous wage and hour class actions on behalf of workers throughout the State of California – all cases of which are on a contingency fee basis.  *See, e.g.*, *Rodriguez v. Nike Retail Servs., Inc*., 928 F.3d 810, 818 (9th Cir. 2019); *Magadia v. Wal-Mart Assocs., Inc*., 384 F. Supp. 3d 1058 (N.D. Cal. 2019).  For example, in *Magadia*, Plaintiff's counsel litigated that case for several years, including trying the case to a successful $102 million judgment on behalf of the class.  Walmart appealed and prevailed, such that Plaintiff's counsel lost their judgment and were not reimbursed any costs or attorneys' fees.  As such, employment class actions present significant risks.  Nevertheless, Plaintiff's counsel zealously represent workers notwithstanding the potential for losing cases, or not being reimbursed attorneys' fees and costs for years of tireless litigation.

The fee sought relates to all efforts expended by Class Counsel for the complete handling of the class/representative action, including any additional work remaining to be performed by Class Counsel in securing final Court approval of the Settlement, and later following through to ensure that the Settlement is fairly administered and fully implemented.

A significant amount of work on the part of Class Counsel went into achieving this resolution.  Based upon the factors relating to approval of percentage of the fund fee awards, class counsel submit that the effort and result justify the requested percentage fee requested.  As

a secondary "cross-check" to the percentage of the common fund award, class counsel are also providing this Court with a time and task chart, which breaks down the tasks and time spent by each firm, so that the Court can conduct a lodestar analysis.

Plaintiff's attorneys' time and task charts show in this case that Plaintiff's counsel lodestar through completion of settlement administration is $904,925.00 which results in a 1.1 multiplier of the requested amount.

**B.    The Lodestar Calculation "Cross-Check"**

It has been noted that it is sometimes helpful to courts to "cross-check" a percentage award by employing a lodestar with a multiplier analysis.  While the lodestar method is generally considered inappropriate in a common fund case where real cash benefits (as opposed to coupons or non-monetary benefits) are made available to class members, its use can provide further validation of the appropriateness of the percentage award approach.  *See In re Prudential Ins. Co. of America Sales Practice Litigation*, 106 F. Supp. 2d 721 (D.N.J. 2000).  Such is the case here.

The declarations of Class Counsel evidence the fact that they devoted approximately 960.7 hours of time to this litigation to date.  (Lee Decl. ¶¶ 16-18, Exh. A; Tulyathan Decl. ¶¶ 10-12, Exh. A; Hyun Decl. ¶¶ 10-12, Exh. A; Marder Decl. ¶¶ 14-16, Exh. A.)  These hours are summarized in the time and task charts that are attached to Plaintiff's counsel's declarations.  And, to the extent that any argument is made that the time spent was duplicative, the way in which Plaintiff's counsel work is for each attorney to handle a task and for the other attorneys to review and revise the work, which is identical to the way defense firms staff and handle cases.  More importantly, as recently noted by the Ninth Circuit in *Stetson v. West Publishing Corp.*, Case No. 13-57061, at *13 (9th Cir. May 11, 2016), "some amount of duplicative work is 'inherent in the process of litigating over time.'"  (Citing *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008)).

In addition, as explained above, Class Counsel expect to expend an additional 70 hours through the final approval hearing, including on matters such as preparing the Motion for Final Approval, attending the final approval hearing, and further conferring with class members

regarding the case status.  (Lee Decl. ¶ 17; Tulyathan Decl. ¶ 11; Hyun Decl. ¶ 11; Marder Decl. ¶ 15.)  Thus, Class Counsel will have expended 1,030.7 hours through completion of settlement administration.

Applying the various hourly rates of the law firms and lawyers who dedicated their efforts to this matter, a lodestar of $904,925.00 is established for the amount of work spent through final approval and for post-approval administration of the settlement.  (Lee Decl. ¶¶ 16-18, Exh. A; Tulyathan Decl. ¶¶ 10-12, Exh. A; Hyun Decl. ¶¶ 10-12, Exh. A; Marder Decl. ¶¶ 14-16, Exh. A.)  The percentage award sought by Class Counsel, if converted to the lodestar method, would entail a modest multiplier of approximately 1.1.  In the Ninth Circuit, **positive** multipliers "ranging from one to four are frequently awarded…when the lodestar method is applied." _Vizcaino v. Microsoft Corp._, 290 F.3d 1043, 1051 n. 6 (9th Cir.) .  Again, in _Spann_, the Court granted a 3.07 multiplier.  This Court also approved of a 1.17 multiplier in _Rodriguez_, 2022 WL 254349, at *6.  Thus, as set forth in the Introduction to this motion, the fee application is supported whether by the cross-check lodestar/multiplier method discussed herein, or by the percentage of the common fund discussed in the preceding sections.

### 1.    Plaintiff's Counsel's Lodestar is Reasonable

The hourly rates employed by Class Counsel, as declared to in the attorney declarations, are reasonable.  Plaintiff's attorneys are entitled to the hourly rates charged by attorneys of comparable experience, reputation, and ability for similar litigation.  The background and experience of Plaintiff's counsel are fully set forth in the declarations filed in support of this motion.  The basic hourly rates listed for each firm are fair, and representative of the combination of years of experience and the clear successes they have had in the past in connection with class action litigation.  The time and task charts summarize the total hours devoted to the matter by the various law firms, along with the hourly rates as set forth in the supporting declarations, and the total billed.  (Lee Decl. ¶¶ 16-18, Exh. A; Tulyathan Decl. ¶¶ 10-12, Exh. A; Hyun Decl. ¶¶ 10-12, Exh. A; Marder Decl. ¶¶ 14-16, Exh. A.)

As discussed in their supporting declarations, Class Counsel are a group of well-experienced litigators, including class action litigation.  (Lee Decl. ¶¶ 11-15; Tulyathan Decl. ¶¶

6-9; Hyun Decl. ¶¶ 3-6; Marder Decl. ¶¶ 3-11.)   Under California law, counsel are entitled to compensation for all hours reasonably spent on the matter.  *Ketchum vs. Moses*, 24 Cal. 4th 1122, 1133 (2001).  Reasonableness of hours is assessed by "the entire course of the litigation, including pretrial matters, settlement negotiations, discovery, litigation tactics, and the trial itself...."  *Vo v. Las Virgenes Municipal Water Dist*., 79 Cal. App. 4th 440, 447 (2000).  In addition, the attached time and task charts clearly reflect the many hours which were necessarily spent on the case.

In the Litigation History section above, the nature and extent of the proceedings held throughout this litigation were set forth in detail.  Without repeating the same, it is incorporated herein.  The total hours and billings thus generated are all supported herein.  In sum, it is submitted that the reasonableness of Plaintiff's lodestar is manifest.  In the present case, Class Counsel's lodestar exceeds the requested amount and thus, heavily favors granting of 33.33% fees in this case.

Whether analyzed under the percentage of the fund approach, which is the dominant view, or via the cross-check approach under the loadstar/multiplier approach, the fees are fully supported.  This entire case has been litigated from the onset, demanded an extraordinary effort on the part of Class Counsel, and further required substantial costs advanced.

Finally, and as instructed by our Supreme Court and Ninth Circuit law, fees should be awarded off of the total fund created.  It is the creation of the fund, and the opportunity to simply receive one's share, which creates the right to the fee.  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).

### C.    The Court Should Approve the Request for Reimbursement of Costs

The request for reimbursement of costs, in the amount of $30,764.05 is fair and reasonable.  As stated above, the costs are all litigation related costs, which have been detailed in the supporting declaration of Class Counsel.  (Lee Decl. ¶ 19, Exh. B; Marder Decl. ¶ 17, Exh. B; Hyun Decl. ¶ 13, Exh. B.)  The authority for the Court to award costs is the parties' Settlement Agreement and Labor Code §§ 218.5, 226(e), 1194, 2699(g)(1), and 2802(c).  Further, pursuant to the Settlement Agreement, Defendant has agreed not to oppose any request

for reimbursement of costs up to $75,000.00, but the actual costs that are being sought are much less than the amount allotted in the Settlement Agreement.  Pursuant to all of the authority cited above, Plaintiff's counsel should be awarded their costs.

IX.    **PLAINTIFF'S ENHANCEMENT SHOULD BE APPROVED**

Finally, Plaintiff's enhancement is also justified given the duration of the litigation and her availability throughout the litigation to cooperate in producing documents, reviewing documents, preparing and sitting for her deposition. Declaration of Elisa Arroyo ("Arroyo Decl.") ¶ 6.  Plaintiff respectfully requests that the full amount of the service payment be awarded to her for the efforts that she undertook on behalf of the Class Members.  It is commonly held that it is appropriate to recognize the role of the representative plaintiff without whose actions and courage the benefits of the settlement, which are conferred on the class as a whole, would never have been achieved.  The criteria courts may consider in relation to incentive payments include: 1) the risk to the class representative in commencing the suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation; and 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.  *See Munoz v. BCI Coca-Cola Bottling Co. of Los Angeles*, 186 Cal. App. 4th 399, 412 (2010) (citing *Stanton v. Boeing Co*., 327 F.3d 938, 975 (9th Cir. 2003)).  Each of these factors favors the service awards requested in the present case.

Plaintiff is the only representative in this case.  Plaintiff met with her attorneys to provide information regarding the facts involved.  (Arroyo Decl. ¶¶ 6-8.)  Plaintiff also met with her attorneys to discuss the case and facts related to this matter.  (*Id.*)  Plaintiff has made herself available to answer questions and to sign declarations in support of the various motions that have been brought in this case.  (*Id.*)  Plaintiff further prepared for and testify at her deposition.  (*Id.*)

Plaintiff assumed these risks from which the whole Class benefitted.  Class members did not have to file individual lawsuits, nor did they have to bear the risks of payment of fees and costs should they not prevail.  Class members also do not have to face the risk of potential retaliation or risk of future employment, due to Plaintiff's efforts.  In short, Plaintiff sacrificed a

1    significant amount of time, effort, and his own rights in bringing about the benefits to the class.

2        The payment of enhancement awards to successful class representatives is appropriate

3    and the amount of $10,000 to Plaintiff is within the typically accepted range.  *See e.g. Van*

4    *Vranken v. Atlantic Richfield Co*., 901 F. Supp. 294, 299-300 (N.D. Cal. 1995) (incentive award

5    of $50,000); *In re Dun & Bradstreet Credit Servs. Customer Litig*., 130 F.R.D. 366, 374 (S.D.

6    Ohio 1990) (two incentive awards of $55,000, and three incentive awards of $ 35,000);

7    *Brotherton v. Cleveland*, 141 F. Supp. 2d 907, 913-14 (S.D. Ohio 2001) (granting a $50,000

8    Incentive award); *Enter. Energy Corp. v. Columbia Gas Transmission Corp*., 137 F.R.D. 240,

9    251-252 (S.D. Ohio 1991) ($50,000 awarded to each class representative); *Glass v. UBS Fin.*

10   *Servs.*, No. C-06-4068, 2007 U.S. Dist. LEXIS 8476, at *51-52 (N.D. Cal. Jan. 27, 2007)

11   (awarding $25,000 Incentive award in FLSA overtime wages class action); *Cook v. Niedert*, 142

12   F.3d 1004, 1016 (7th Cir. 1998) (affirming $25,000 Incentive award to class representative in

13   ERISA case).  Moreover, a $10,000 service payment represents a mere **0.33%** of the Gross

14   Settlement Amount.  For such reasons, Plaintiff respectfully requests that this Court find the

15   enhancement payment amount of $10,000 to Plaintiff as fair, reasonable, and adequate and that

16   the enhancement payment be awarded to Plaintiff.

17   **X.    THE ADMINISTRATOR'S COSTS SHOULD BE APPROVED**

18        Here, Phoenix Settlement Administrators dutifully administered the settlement.  (*See*

19   *generally* K. Lee Decl.)  The Agreement provides up to $22,125.00 for Phoenix's cost.

20   (Settlement Agreement § III.I.d).  Plaintiff respectfully requests that the Court award Phoenix its

21   costs in the amount of $22,125.00.

22   **XI.    CONCLUSION**

23        Based on the foregoing, Plaintiff and Class Counsel respectfully request that this Motion

24   be granted in its entirety and grant Plaintiff's counsel's fee request of $1,000,000.00, costs

25   requested in the amount of $30,764.05, class representative enhancement of $10,000.00, and

26   settlement administration costs of $22,125.00.  The Parties have reached this settlement

27   following extensive litigation, ongoing case discussions and arms-length negotiations.  Plaintiff

28   respectfully requests that the Court:

1.      Grant final approval of the proposed settlement;

2.      Order payment from the settlement proceeds to the Settlement Administrator in compliance with the Settlement Agreement;

3.      Order payment from the settlement proceeds to Class Counsel and Plaintiff in compliance with the Settlement Agreement;

4.      Enter the proposed Final Approval Order and Judgment submitted herewith; and

5.      Retain continuing jurisdiction over the implementation, interpretation, and consummation of the settlement.


DATED: November 3, 2022                    DIVERSITY LAW GROUP, P.C.


                                           By:___/s/ Larry W. Lee_____
                                               Larry W. Lee
                                               Mai Tulyathan
                                           Attorneys for Plaintiff and the Class